# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL GRAND, | ) | CASE NO. 1:22-CV-01594 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | **DEFENDANT CHRISTOPHER** |
| CITY OF UNIVERSITY HEIGHTS, *et al.*, | ) | **COONEY'S MOTION TO DISMISS** |
| | ) | |
| Defendants. | ) | |

Now comes Defendant Christopher Cooney ("Cooney" or "Defendant") and, pursuant to Fed. R. Civ. P. 12(b)(6), respectfully requests that this Court dismiss Count XVIII of Plaintiff Daniel Grand's ("Grand" or "Plaintiff") First Amended Complaint ("Amended Complaint") in the above-captioned matter, as against Cooney, for failure to state a claim upon which relief can be granted. This Motion to Dismiss ("Motion") is supported by the attached Memorandum in Support.

Dated: July 28, 2023

Respectfully submitted,

*/s/ Christopher S. Battles*
Mark R. Koberna (0038985)
Christopher S. Battles (0100538)
SONKIN & KOBERNA, LLC
3401 Enterprise Parkway, Suite 400
Cleveland, Ohio 44122
Telephone: (216) 514-8300
Facsimile: (216) 514-4467
mkoberna@sklawllc.com
cbattles@sklawllc.com

*Counsel for Defendant Christopher Cooney*

**MEMORANDUM IN SUPPORT**

I.    INTRODUCTION

Plaintiff Daniel Grand submitted, and later withdrew, an application to the City of University Heights Planning Commission for a special use permit to hold religious activities in his home. Defendant Cooney, who lives a few houses away from Plaintiff, felt that the application was improper, and helped organize the sizeable community resistance to Plaintiff's request by circulating a petition, communicating with the Planning Commission, and speaking in opposition during a public hearing on March 4, 2021 ("SUP Hearing"). For these actions—all of which clearly fall within Cooney's First Amendment right to petition his local government—he has been sued in federal court and accused of participating in a wide-ranging, racist civil conspiracy against Plaintiff and the Jewish community at large. The single claim alleged against Cooney in this matter, for violation of 42 U.S.C. § 1983, is offensive, misguided, and wholly unsupported by the "facts" alleged in the Amended Complaint and applicable federal law. Simply put, Cooney is not a proper defendant in this lawsuit, and should be dismissed.

Plaintiff's Amended Complaint raises several obvious questions: Of the hundreds of University Heights residents who opposed Plaintiff's application for a special use permit, or the dozens who spoke in opposition during the SUP Hearing, why is Cooney one of only two private citizens to have been sued in this case? More importantly, why did Plaintiff wait until eight (8) months after filing his initial Complaint—and after the applicable statute of limitations—to allege his vast conspiracy and name Cooney as a defendant? It is because the purpose of Plaintiff's Amended Complaint is to exaggerate the harm and pervasiveness of his claims, and Cooney is an easy target, as a close neighbor and prominent member of the opposition. But in his zeal to brand

Cooney as a figurehead for the forces he believes are against him, Plaintiff has neglected a fundamental rule—his claims must be based on facts, and those facts *must have actually occurred*.

Plaintiff's key allegations against Cooney stem from the SUP Hearing, which was conducted over Zoom; Plaintiff claims that at one point, Cooney "took control" of the hearing from Mayor Michael Brennan, interrupted and obstructed Plaintiff's efforts to present evidence on his behalf, and instructed the Planning Commission to prohibit Plaintiff from speaking. However, a plain viewing of the video from the SUP Hearing, which was incorporated into the Amended Complaint and is available on YouTube, totally discredits Plaintiff's hyperbolic version of events. In reality, Cooney interacted with Plaintiff for a total of fourteen (14) seconds during the SUP Hearing, spoke only two (2) sentences to him, and only interjected because Plaintiff himself was violating the procedural rules of the hearing by offering additional testimony after resting his case. As a matter of law, Plaintiff's allegations related to the SUP Hearing (which are directly contradicted by the video) must be ignored as "visible fiction" for the purposes of this Motion.

Without Plaintiff's fabricated allegations related to the SUP Hearing, the remaining actions taken by Cooney in opposition to Plaintiff's application for a special use permit—collecting signatures for a petition, communicating with the Planning Commission, and testifying in opposition—are properly viewed as those of a concerned citizen exercising his right to participate in the political process. Both the Supreme Court and the Sixth Circuit Court of Appeals have held that these precise types of activities are protected by Cooney's First Amendment right to petition the government, and cannot be the basis for liability under federal law, including § 1983. Further, the specific allegations comprising Plaintiff's civil conspiracy claim are conclusory and unsupported, and fail to allege any material facts that Cooney: (1) shared the conspiracy's purported objective; (2) agreed with its plan; or (3) acted "jointly" with state actors or under color

of law. For these reasons, Plaintiff's § 1983 civil conspiracy claim against Cooney fails as a matter of law and should be dismissed with prejudice.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiff's Amended Complaint

Of the more than 430 paragraphs in Plaintiff's Amended Complaint presented as factual allegations, less than twenty (20) specifically pertain to Cooney, and are therefore relevant to Plaintiff's civil conspiracy claim under 42 U.S.C. § 1983. A brief summary of those allegations is set forth below.

In early 2021, Plaintiff applied to the City of University Heights Planning Commission ("PC") for a special use permit to hold certain religious activities in his home, which is located at 2343 Miramar Boulevard in University Heights. (Am. Complaint ¶¶ 50, 60). A hearing was scheduled to consider Plaintiff's application on March 4, 2021. ("SUP Hearing") (*Id.* ¶ 60). Prior to the SUP Hearing, Cooney helped organize the significant resident opposition to Plaintiff's application. (*Id.* ¶ 66). Specifically, Cooney and his wife gathered signatures for a petition opposing the application, and he communicated with members of the PC. (*Id.* ¶¶ 67–68).

During the SUP Hearing, which was conducted via Zoom and attended by approximately 125 community members, Cooney spoke in opposition to Plaintiff's application for a special use permit. (*Id.* ¶ 73). Several other residents who also spoke in opposition to the application stated that they agreed with the points Cooney had made. (*Id.* ¶ 74). At the end of the hearing, the PC voted to table Plaintiff's application and scheduled a follow-up hearing on March 23, 2021. ("Follow-Up Hearing") (*Id.* ¶¶ 86–87).

Cooney had additional e-mail communications with City of University Heights Law Director Luke McConville prior to the Follow-Up Hearing. (*Id.* ¶ 108). However, Plaintiff

withdrew his application for a special use permit prior to the Follow-Up Hearing, even though the PC had not yet ruled on it. (*Id.* ¶ 110).

### B. The March 4, 2021, Planning Commission Hearing

Plaintiff's Amended Complaint contains several allegations against Cooney related to the events of the SUP Hearing which are complete fabrications and should not be considered or given deference by this Court for the purpose of Cooney's Motion. Specifically, Plaintiff alleges that Cooney "was permitted by [City of University Heights Mayor Michael] Brennan and [Law Director] McConville to take control of the hearing while Grand was speaking and directed Brennan not to allow Grand to speak, and Brennan complied with Defendant Cooney's direction." (Am. Complaint ¶ 76). Plaintiff further alleges that Cooney "commandeered" and "obstructed" the hearing in order to prevent Plaintiff from presenting a petition "which would have provided evidence of a larger body of support for Grand's application." (*Id.* ¶ 394–95). Unfortunately for Plaintiff, the video of the SUP Hearing, which is publicly available on YouTube and incorporated into the Amended Complaint, completely contradicts his characterization of the hearing itself and Cooney's participation therein.

Generally, matters outside the pleadings cannot be considered for the purpose of a motion to dismiss under Rule 12(b)(6), but there are two notable exceptions which both apply here. First, documents attached "to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (*quoting Venture Assoc. v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1993). Second, a court ruling on a motion to dismiss may consider "materials [which] are public records or are otherwise appropriate for the taking of judicial notice." *New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003). When a video considered

5

in this context " 'utterly discredits' [the plaintiff's] version of events," such that "[n]o reasonable person who has viewed the video could" agree with his allegations, the court may "ignore the 'visible fiction' in his complaint." *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386–87 (6th Cir. 2017) (*quoting Scott v. Harris*, 550 U.S. 372, 380–81, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)).

Here, the video of the SUP Hearing is part of Plaintiff's Amended Complaint, as he specifically refers to the video, "incorporate[s it] as if set forth fully herein," and provides a URL to access the video in a footnote. (*See* Am. Complaint ¶ 61 and fn. 1). Further, the allegations against Cooney related to the SUP Hearing are central to Plaintiff's claim, as they are cited as one of several "overt acts" which Cooney purportedly committed as part of a civil conspiracy against Plaintiff. (*Id*. ¶¶ 378, 393–94). Alternatively, as discussed in more detail below, this Court can take judicial notice of certain facts which occurred during the SUP Hearing under Fed. R. Evid. 201(b)(2), as such facts "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

At the beginning of the SUP Hearing, Law Director McConville explicitly stated that all documents which had been received by the PC prior to the hearing—including petitions for and against Plaintiff's application—had already been placed into the record and provided to PC members:

> McCONVILLE: And lastly, I want to note that the City is in receipt of a variety of written materials that have come to the City in the form of petitions and letters, both from residents of the City in favor of and opposed to the proposed applications. Those materials have been provided to Planning Commission members in advance of the hearing, and those items will be included as part of tonight's record. As with any trier of fact, the Planning Commission members are asked to exercise their judgment in determining the relative degree of weight to apply to any particular piece of evidence, document, or testimony.

(SUP Hearing 12:05–12:45). At the conclusion of Plaintiff's case in chief, Law Director McConville reiterated this point to Mayor Brennan, and was echoed by Plaintiff's counsel Ethan Rosenfeld, who then formally rested Plaintiff's case:

> BRENNAN:  But I want to make sure . . .
>
> ROSENFELD:  Fair enough.
>
> BRENNAN:  . . . you have covered everything . . .
>
> ROSENFELD:  Yes.
>
> BRENNAN:  . . . you wish to discuss in your case in chief. You did mention some documents—you haven't covered that. If that's something you wish to present, this would be the time.
>
> McCONVILLE:  Mayor, if I could interject. The documents will be considered part of the record.
>
> BRENNAN:  Okay.
>
> McCONVILLE:  For expediency's sake, it may be helpful to move things along, and then there will be another period where the Commission members may have some questions for the applicant, and that—
>
> ROSENFELD:  I believe that's also appropriate.
>
> BRENNAN:  Yes, okay, very good. Well, then, if you are resting on your case in chief, I would then—I mean, I would want to confirm that you are resting so we can then ask if there's anyone else who wants to speak in favor?
>
> ROSENFELD: Correct.

(SUP Hearing 1:18:21–1:19:10). However, after two other residents spoke in favor of his application, Plaintiff then attempted to submit additional testimony and documents to the PC, despite having already rested his case and despite being repeatedly told that the documents had already been accepted into the record:

> BRENNAN:  I'm sorry, Mr. Diggs, were you asking to be recognized?
>
> DIGGS:  Danny is actually trying to speak. Daniel is trying to speak right now.

7

>BRENNAN:  Yes.
>
>GRAND:  Yes, I am, quickly. I just—one of these—the thing I have—I do have a list of, one, two, three, four, five, six, seven, eight, nine individuals who are immediate neighbors of mine, that live within three or four houses of me, on Miramar, that are in support of it, and that has been submitted to the record—
>
>BRENNAN:  All right, we have it.
>
>GRAND:  It's not a very long—

(SUP Hearing 1:25:58–1:26:28). At this point, Cooney—who had been waiting to speak in opposition to Plaintiff's application—interjected, pointing out that Plaintiff was failing to comply with the procedure established for the SUP Hearing:

>COONEY:  Haven't we—hasn't he already submitted his information?
>
>BRENNAN:  You have—
>
>GRAND:  I'm just stating that there's another nine or ten Miramar neighbors that are also in support of it, besides Mr. Sandok.
>
>COONEY:  You've had your testimonial, I believe.
>
>[CROSSTALK]
>
>BRENNAN:  —I'll handle this.
>
>ROSENFELD:  Thank you, Mr. Grand.
>
>GRAND: Okay, thank you.
>
>BRENNAN:  You have rested your application, your case in chief. We do have the—we do have your filing with those names, so thank you. Okay. And the planning commission members have them as well.

(SUP Hearing 1:26:28–1:26:56). The interaction between Plaintiff and Cooney lasted a total of fourteen (14) seconds. (SUP Hearing 1:26:28–1:26:40).

When Cooney later provided testimony, under oath, in opposition to Plaintiff's application, he made it clear that the residents he spoke on behalf of did not object to Plaintiff's faith or his desire to practice his religion in his home:

> COONEY: I'm speaking on behalf of a significant number of homeowners from Miramar Boulevard and its surrounding area. I want to be clear that our position is that approval for the special use permit is not in the best interest of the City. It has nothing to do with Mr. Grand's faith, or his desire to have a house of assembly. It is mainly about the request for special permit for a business—essentially converting it from a residence to a business. However, the information I will present will be based on the information on his application. But I want to make sure that the opposition is about the variance for that.

(SUP Hearing 1:27:53–1:28:34).

C. *Procedural History*

Plaintiff filed his initial Complaint in this matter against the City of University Heights, Mayor Brennan, and Jeffrey Porter ("Initial Defendants") on September 8, 2022. The Complaint contained 276 factual allegations—a significant number of which concerned Porter, who was dismissed in March 2023—and seventeen causes of action. Plaintiff and the Initial Defendants litigated this case for approximately eight (8) months, established a case management schedule and a protective order, and began conducting written discovery until May 9, 2023, when Plaintiff filed his First Amended Complaint. This seventy-page pleading added eight individual defendants (including Law Director McConville, the five members of the PC, Cooney, and another private citizen who opposed Plaintiff's application for a special use permit), more than 150 additional factual allegations, and three new causes of action, including the singular claim against Cooney for civil conspiracy in violation of 42 U.S.C. § 1983.

9

### III. ARGUMENT

A plain viewing of the March 4, 2021, SUP Hearing video "utterly discredits" Plaintiff's allegations regarding Cooney's conduct during the hearing. Plaintiff Amended Complaint fails to acknowledge that at the time of his interaction with Cooney, Plaintiff was ***violating the procedural rules of the SUP Hearing*** by attempting to offer additional testimony and documentary evidence after he had rested his case in chief. Cooney simply interjected to suggest that Plaintiff was acting out of order. He was never "permitted" by Mayor Brennan or Law Director McConville to "take control of the hearing," and he never "commandeered" the hearing, as he spoke exactly two (2) sentences during his brief interaction with Plaintiff. Further, he did not give any "direction" to Mayor Brennan to prohibit Plaintiff from speaking; in fact, Brennan demonstrated his control of the SUP Hearing by stating that he would "handle" the situation and reminding Plaintiff that he had rested his case. Finally, it is impossible for Cooney to have "obstructed" Plaintiff's attempt to present a petition in favor of his application, as the petition had ***already been received and added to the record by the PC***. In short, no reasonable person viewing the video would agree with Plaintiff's characterization of the SUP Hearing, as set forth in his Amended Complaint. To the extent Plaintiff's allegations against Cooney conflict with the video, they should be disregarded as "visible fiction," and this Court should not consider them, treat them as true, or provide them any deference whatsoever for the purpose of this Motion.

Alternatively, based on the video of the SUP Hearing, "whose accuracy cannot reasonably be questioned," this Court may take judicial notice of the following facts under Fed. R. Evid. 201(b)(2), which "can be accurately and readily determined" from the video:

- All documents submitted prior to the SUP Hearing by Plaintiff were accepted by the PC and considered part of the record.

- At the conclusion of Plaintiff's case in chief, his counsel Ethan Rosenfeld stated that Plaintiff was resting his case.

- After two University Heights residents spoke in favor of Plaintiff's application for a special use permit, he attempted to offer additional testimony and documentary evidence to the PC.

- Mayor Brennan did not at any point formally place Cooney in charge of the SUP Hearing.

- Cooney did not direct Mayor Brennan or Law Director McConville to take any action with regard to Plaintiff during the SUP Hearing.

- Cooney did not prevent Plaintiff's petition, or any other document, from being entered into the record of the SUP Hearing.

With the repudiation of Plaintiff's falsehoods related to the SUP Hearing, he is left with only two general allegations on which to base his § 1983 claim against Cooney for civil conspiracy: (1) Cooney communicated with the PC and Law Director McConville prior to and after the SUP Hearing, (Am. Complaint ¶¶ 67, 108, 389); and (2) Cooney led, organized, and stoked opposition to Plaintiff's application for a special use permit, (*id*. ¶¶ 66, 68, 133, 393). However, neither of these allegations—even if true—are sufficient for a private citizen to be held liable for a violation of § 1983. First, Plaintiff's civil conspiracy claim is based on conclusory and unsupported statements, and he has failed to make the specific and material factual allegations necessary to state the claim as against Cooney. Second, Cooney is immune from liability for his actions, as he was at all times exercising his First Amendment right to petition the government of University Heights. Finally, Plaintiff's civil conspiracy claim is untimely, as it does not comply with the two-year statute of limitations for § 1983 claims in Ohio.

To the extent Plaintiff has any viable arguments in this matter, they should be directed to the defendants who actually have a duty to protect Plaintiff's constitutional rights—not a fellow resident against whom Plaintiff has a personal grudge. For these reasons, as well as those presented

11

below, Plaintiff's Count XVIII against Cooney fails to state a claim upon which relief can be granted and should be dismissed.

    A.    *Legal Standard*

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) "operates to test the sufficiency of the complaint." *Middleton v. Rogers Ltd., Inc.*, 804 F. Supp. 2d 632, 635 (S.D.Ohio 2011). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L. Ed. 2d 868 (2009). A claim should rightfully be dismissed if it appears "beyond doubt that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 726, 724 (6th Cir. 1996).

Although "the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true," *Stuckey v. Online Res. Corp.*, 819 F. Supp. 2d 673, 680 (S.D.Ohio 2011), this rule "is inapplicable to legal conclusions," *Iqbal*, 556 U.S. at 678. The court is not required to give deference to a "[t]hreadbare recital of the elements of a cause of action, supported by mere conclusory statements," *id.*, or "a legal conclusion couched as a factual allegation," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim is not plausible if the facts alleged are 'merely consistent with a defendant's liability.' " *Bondali v. Yum! Brands, Inc.*, 620 Fed. Appx. 483, 488 (6th Cir. 2015) (*quoting Iqbal*, 556 U.S. at 678).

    B.    *Plaintiff's Civil Conspiracy Claim Was Not Filed Within the Two-Year Statute of Limitations.*

As an initial matter, Plaintiff's civil conspiracy claim against Cooney should be dismissed as untimely. Because 42 U.S.C. § 1983 does not contain a specific statute of limitations, federal courts apply "the most analogous [state law] limitations period," which in Ohio is the two-year

12

statute of limitations for personal injury claims. *Bishop v. Children's Ctr. for Dev. Enrichment*, 618 F.3d 533, 536 (6th Cir. 2010) (*citing Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L. Ed. 2d 254 (1985) and R.C. 2305.10). This statute of limitations begins to run when the plaintiff reasonably knew, or should have known, "both his injury and the cause of that injury." *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001).

At the very latest, Plaintiff was aware of the purported deprivation of his constitutional rights on March 23, 2021, the date of the Follow-Up Hearing, when he believed "that his application was doomed" and withdrew it. (Am. Complaint ¶ 110). Further, all Cooney's actions which Plaintiff alleges constituted "overt acts" in furtherance of the purported civil conspiracy took place prior to Follow-Up Hearing. (*Id.* ¶¶ 67–68, 73, 76, 108, 133, 389, 393). Therefore, Plaintiff's civil conspiracy claim accrued no later than March 23, 2021, and he was required to assert the claim on or before March 23, 2023; however, he filed his Amended Complaint on May 9, 2023, approximately six weeks after the close of the limitations period. Therefore, Count XVIII of the Amended Complaint is untimely, and should be dismissed as against Cooney.

      C.     *Plaintiff Has Not Sufficiently Alleged that Cooney Acted "Under Color of State Law" or Willingly Participated in a Conspiracy with City Officials.*

"To state a claim under § 1983, a plaintiff * * * must show that the alleged deprivation [of a constitutional right] was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L. Ed. 2d 40 (1988). The statute typically "does not reach purely private conduct," *Moore v. Paducah*, 890 F.2d 831, 833 (6th Cir. 1989), but a private citizen may be held liable under § 1983 if they "conspire[] with state officials to violate constitutional rights," *Cooper v. Parrish*, 203 F.3d 937, 952 n.2 (6th Cir. 2000), or "willfully participate in joint action with state agents," *Memphis Area Local, Am. Postal Workers Union AFL-CIO v. Memphis*,

13

361 F.3d 898, 905, 86 Fed. Appx. 137 (6th Cir. 2004). The plaintiff must also properly allege the elements of a civil conspiracy:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985). In addition, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff spends nearly five (5) pages of his Amended Complaint attempting to establish a grand conspiracy between the City of University Heights, its officials, and private citizens like Cooney to deprive Plaintiff of his constitutional rights. (Am. Complaint ¶¶ 366–69). However, his allegations regarding the Defendants' conspiratorial objective are completely conclusory and contain no material facts against Cooney—in fact, Plaintiff doesn't even mention him. (*See id.* ¶¶ 370–78). They are precisely the type of vague, unsupported allegations which are insufficient as a matter of law to state a § 1983 claim against Cooney.

According to Plaintiff, Defendants' purported conspiratorial objective is to confine members of the Jewish community to certain parts of University Heights, and to prohibit them from living in neighborhoods near GESU, a large Catholic church. (*Id.* ¶ 370). Setting aside that this allegation is outrageous, and akin to accusing Defendants (one of whom is Jewish) of antisemitism in a federal pleading, Plaintiff has **failed to allege any material facts which tie Cooney to the conspiratorial objective**. Rather, Plaintiff merely concludes, without support, that

14

"[t]he conspirators were in agreement" and "shared in the general conspiratorial objective." (*Id.* ¶¶ 370, 378). By contrast, the Amended Complaint directly alleges that other members of the so-called conspiracy explicitly discussed the objective in written communications. (*Id.* ¶¶ 371–72).[1]

The material facts present here suggest, contrary to Plaintiff's allegations, that Cooney did not share or agree with the purported conspiratorial objective. Cooney testified under oath during the SUP Hearing that his opposition to Plaintiff's application for a special use permit "has nothing to do with Mr. Grand's faith, or his desire to have a house of assembly." Further, it strains credulity that Cooney would be concerned about the migration of Jewish residents across University Heights, as he lives at 2319 Miramar Boulevard—***only a few houses away from Plaintiff***, and in a neighborhood containing significant numbers of Jewish residents.[2] As a matter of law, Plaintiff has failed to allege with specificity that Cooney "shared in the general conspiratorial objective," and his civil conspiracy claim should be dismissed as against Cooney for that reason alone.

Plaintiff's allegations regarding the "single plan" of the conspiracy and the "overt acts" committed by Cooney are similarly conclusory and unsupported. Plaintiff claims that Defendants "devised a plan to prevent Grand from praying in his home," and wanted to make "an example [out of him]" by "weaponizing the municipal authorities against him," (*Id.* ¶ 374–75), but he fails to allege any material facts that Cooney agreed to this plan or acted "jointly" with the City (or that he even could, as a private citizen). Plaintiff alleges that Cooney "facilitated illegal *ex parte* communications between the [PC] and the neighbors," and "corruptly influence[d] or attempt[ed] to influence an official proceeding" in violation of 18 U.S.C. § 1512(c)(2), but he fails to allege

---

[1] One of these alleged communications was written by an unnamed "conspirator," who Plaintiff claims supported the conspiracy's objective. (*See* Am. Complaint ¶ 371). Plaintiff does not explain why this individual was spared from being sued in federal court while Cooney was not, but it is likely because Plaintiff's claim is driven by personal animus rather than a good faith belief that Cooney violated § 1983.
[2] Although Plaintiff does not state Cooney's address in his Amended Complaint, this is another fact of which this Court may take judicial notice under Fed. R. Evid. 201(b)(2). Cooney also states his address during the SUP Hearing.

what these communications were, who made them, why they were illegal, or how Cooney's actions were corrupt. (*Id.* ¶¶ 389–90). And, as discussed above, Plaintiff's allegations that Cooney "commandeered" the SUP Hearing and "prevented Grand from presenting" evidence in favor of his application are false and "utterly discredited" by the video of the hearing. (*Id.* ¶¶ 394–95, 98).

Taken together, Plaintiff's allegations present an extraordinary—and convenient—story in which every individual and governmental entity opposing his efforts to hold religious activities in his home was somehow involved in a coordinated scheme to violate his constitutional rights and somehow contain the Jewish community. However, the law requires more than a good story; to assert a civil conspiracy claim against Cooney under § 1983, Plaintiff must plead with specificity, and allege material facts that Cooney acted "under color of law" and engaged "in joint action with state agents." He has failed to do so here, and therefore Count XVIII of his Amended Complaint should be dismissed as against Cooney.

> D. *Cooney's Actions Are Immunized from Liability by His First Amendment Right to Petition the Government.*

Even if Plaintiff's allegations against Cooney are deemed sufficient to state a claim for civil conspiracy under § 1983, Count XVIII of his Amended Complaint must still be dismissed, as Cooney was at all relevant times acting within his constitutional right to petition the government, and therefore he cannot be held liable under federal law. The First Amendment states that "Congress shall make no law * * * abridging * * * the right of the people * * * to petition the government for a redress of grievances," and applying § 1983 against Cooney in this context would do just that, as he has simply exercised his rights as a concerned citizen of University Heights to oppose Plaintiff's application for a special use permit.

In 1961, the United States Supreme Court first held "that the Sherman Act does not apply to the activities * * * [which] comprised mere solicitation of governmental action with respect to

16

the passage and enforcement of laws." *E. RR. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138, 81 S.Ct. 523, 5 L. Ed. 2d 464 (1961). This holding was motivated by the Supreme Court's concern that "imput[ing] to Congress an intent to invade these freedoms" and weaken "the ability of the people to make their wishes known to their representatives" could "raise important constitutional questions." *Id.* at 137–38. Lower courts, including those in the Sixth Circuit, have applied and expanded what has become known as the "*Noerr-Pennington* doctrine" to protect the right to petition against claims under both federal and state law—including conspiracy claims under § 1983. *Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607 (6th Cir. 1980) (private landowners and their attorney petitioning a city to rezone property); *see also*, *e.g.*, *Campbell v. PMI Food Equip. Group, Inc.*, 509 F.3d 776 (6th Cir. 2007) (company lobbying state and local governments for tax abatement), *John L. v. Adams*, 969 F.2d 228 (6th Cir. 1992) (prisoner petitioning the courts). A private "citizen's right to petition is not limited to goals that are deemed worthy, and the citizen's right to speak freely is not limited to fair comments." *Eaton v. Newport Bd. Of Educ.*, 975 F.2d 292, 298 (6th Cir. 1992).

The Sixth Circuit Court of Appeals has further held that a private citizen's efforts to organize civic opposition—even if based on misinformation—is entitled to First Amendment Protection. In *Stachura v. Truszkowski*, a teacher discharged due to alleged improper teaching methods sued, *inter alia*, the school district, individual members of the school board, and two parents who galvanized public opposition to his curriculum. 763 F.2d 211, 212–13 (6th Dist. 1985). After a jury found in the teacher's favor on his claims, including a civil conspiracy claim against all defendants, the court granted a motion for judgment n.o.v. in favor of Truszkowski, one of the parents, on the basis that her actions were protected by her right to petition under the First Amendment. *Id.* The Sixth Circuit affirmed:

17

> Appellee Truszkowski was responsible for starting the sequence of events * * * [and] organized and transmitted complaints to the School Board * * * alleging improper teaching methods. Various other parents in the community joined her subsequently in vehement and continuing protests, based on unfounded rumors, leading directly to [the teacher's] removal. Although Truszkowski's role was pivotal in initiating these protests, it was made to the public body having charge of the educational system in the community concerned. As such, it was protected, as the District Judge held, by the right to petition encompassed in the First Amendment. * * * While Ms. Truszkowski's role in these events is not a pretty one, we agree with the District Judge that it was a petition addressed to the proper authority and as a consequence, her actions were immunized from this suit by her First Amendment rights.

*Id.*, *see also Eaton* at 297–98 ("[Defendants] were merely exercising their first amendment right to petition the proper governmental body for the removal of Eaton * * * [and] reacted in an understandable way to a racial epithet made in a professional context by an elementary school principal.").

Plaintiff has alleged that Cooney participated in the conspiracy against him by: (1) organizing and leading the residents' opposition to Plaintiff's application for a special use permit, (Am. Complaint ¶¶ 66, 74); (2) communicating with the PC and McConville prior to the SUP Hearing, (*id.* ¶¶ 67, 108, 389, 393); (3) spreading misinformation about Plaintiff's intentions regarding his special use permit, (*id.* ¶¶ 68, 133, 393); and (4) opposing and interrupting Plaintiff during the SUP Hearing, (*id.* ¶¶ 73, 76, 394–95, 398). Stripped of Plaintiff's conclusory and unsupported characterizations, Cooney's actions are precisely the same activities which the federal courts—including the Sixth Circuit in *Stachura*—have deemed to be protected by the First Amendment, as they are "a petition addressed to the proper authority" of the PC, which is "the public body having charge of" Plaintiff's application for a special use permit. The fact that the PC was acting in a "quasi-judicial capacity" does not affect the analysis. *Eaton* at 299.

Neither of the two narrow exceptions to the *Noerr-Pennington* doctrine apply here. First, Plaintiff has not alleged any material facts that Cooney's opposition to Plaintiff's application was

18

a "mere sham," or intended solely to "improper[ly] interfere[] with governmental process." *Westmac, Inc. v. Smith*, 797 F.2d 313, 315–16 (6th Cir. 1986). And while the second "co-conspirator" exception has not yet been directly applied in the Sixth Circuit, it nevertheless is inappropriate here, as Plaintiff has not alleged any material facts that Cooney influenced "a government official or body * * * through some corrupt means." *Video Int'l Prod., Inc. v. Warner-Amex Cable Comms., Inc.*, 858 F.2d 1075, 1083 (5th Cir. 1988). Again, it should be emphasized that while the Amended Complaint accuses Cooney of corruption and influencing the PC, there are no material facts supporting those allegations, and therefore they are not entitled to an assumption of truth for the purpose of Cooney's Motion. At bottom, Cooney was at all relevant times a private citizen and resident of University Heights who exercised his First Amendment right to petition the City and the PC in opposition to Plaintiff's application for a special use permit. Therefore, his actions are immunized from liability under § 1983, and Count XVIII of the Amended Complaint should be dismissed as against Cooney.

## IV. CONCLUSION

For the foregoing reasons, Cooney respectfully requests that this Court dismiss with prejudice Count XVIII of Plaintiff's First Amended Complaint as against Cooney pursuant to Fed. R. Civ. P. 12(b)(6).

**CERTIFICATE OF SERVICE AND COMPLIANCE WITH LOCAL RULE 7.1(f)**

I hereby certify that the foregoing *Defendant Christopher Cooney's Motion to Dismiss* was filed electronically on July 28, 2023. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

I hereby further certify that the Memorandum of Law supporting Cooney's Motion adheres to the page limitations set forth in LR 7.1(f), as this matter has been assigned to the complex case track, and the Memorandum does not exceed thirty (30) pages in length.

*/s/ Christopher S. Battles*
Christopher S. Battles (0100538)

*Counsel for Defendant Christopher Cooney*