UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL GRAND, | ) | CASE NO.: 1:22-CV-01594 |
| | ) | |
| Plaintiff, | ) | JUDGE: BRIDGET MEEHAN BRENNAN |
| | ) | |
| vs. | ) | **UNDERLINE UNIVERSITY HEIGHTS** |
| | ) | **DEFENDANTS' MOTION FOR** |
| CITY OF UNIVERSITY HEIGHTS, | ) | **SUMMARY JUDGMENT** |
| OHIO, et al., | ) | |
| | ) | |
| Defendants | ) | |

Now come Defendants, City of University Heights, Michael Dylan Brennan, Luke McConville, and Paul Siemborski, by and through undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56(c), move this Honorable Court for an order granting them summary judgment and dismissing with prejudice Plaintiff's claims against them, as there exists no genuine issue of material fact and Defendants are entitled to summary judgment as a matter of law. This Motion is supported by the attached Brief in Support and exhibits all of which are attached hereto and fully incorporated herein.

Respectfully submitted,

MAZANEC, RASKIN & RYDER CO., L.P.A.

*s/Zachary W. Anderson*
JAMES A. CLIMER (0001532)
STEVEN K. KELLEY (0023747)
ZACHARY W. ANDERSON (0095921)
100 Franklin's Row
34305 Solon Road
Cleveland, OH 44139
(440) 248-7906
(440) 248-8861 – Fax
Email: jclimer@mrrlaw.com
skelley@mrrlaw.com
zanderson@mrrlaw.com

*Counsel for Defendants City of University Heights, Michael Dylan Brennan, Luke McConville, Paul Siemborski*

**TABLE OF CONTENTS**

I.      STATEMENT OF THE CASE.................................................................................1

II.     STATEMENT OF FACTS ...................................................................................2

        A.      Plaintiff's House of Worship and Special Use Permit Application........................2

        B.      University Heights' Applicable Ordinances .........................................................5

III.    SUMMARY JUDGMENT STANDARD ...........................................................5

IV.     LAW AND ARGUMENT ....................................................................................6

        A.      Plaintiff's Official Capacity Claims are Duplicative Under State and
                Federal Law. .........................................................................................................6

        B.      Defendants Did Not Violate Plaintiff's First Amendment Rights. .........................6

                1.      University Heights' Ordinances are Neutral and Generally
                        Applicable. .................................................................................................. 6

                2.      Defendants Did Not Deprive Plaintiff of His Right to Assembly. ............. 8

                3.      University Heights' Ordinances Are Not a Prior Restraint on
                        Religious Exercise. .................................................................................... 9

        C.      Defendants Did Not Violate Plaintiff's Fourth Amendment Right to be Free
                From Unreasonable Searches.................................................................................10

        D.      Defendants Did Not Violate Plaintiff's Fourteenth Amendment Right to
                Due Process...........................................................................................................11

        E.      Defendants Did Not Violate Plaintiff's Fourteenth Amendment Right to
                Equal Protection....................................................................................................13

                1.      Plaintiff Has Not Alleged or Proven Disparate Treatment in Support
                        of his Equal Protection Claim. ................................................................. 13

                2.      University Heights Has a Rational Basis to Enforce its Ordinances
                        and Plaintiff's Class of One Claim Fails.................................................. 14

        F.      Defendants Did Not Violate RLUIPA. ................................................................15

                1.      University Heights' Ordinances Do Not Impose a Substantial
                        Burden on Religious Exercise.................................................................. 16

2.    Defendants' Ordinances Did Not Treat Plaintiff on Less Than Equal Terms and Did Not Discriminate on the Basis of Religion. ..................... 18

3.    Defendants' Regulations Do Not Totally Exclude or Unreasonably Limit Religious Assembly in the City. ...................................................... 18

G.    Defendants Did Not Violate the FACE Act. ...........................................................18

H.    Plaintiff Cannot Prove Defendants Engaged in Conspiracy. ................................19

I.    The Individual University Heights Officials are Entitled to Qualified Immunity. ...............................................................................................................20

J.    Plaintiff Cannot Maintain a Claim Under the Ohio Constitution. .........................21

K.    Ohio Has Not Recognized Common Law Right to Worship. ................................22

L.    Venue and Jurisdiction are Improper Under the Ohio Public Records Act. ..........22

M.    Mayor Brennan Did Not Invade Plaintiff's Privacy. .............................................23

N.    Plaintiff Cannot Prove Intentional Infliction of Emotional Distress. ....................24

O.    Defendants Did Not Engage in Abuse of Process or Malicious Prosecution. ...............................................................................................................25

P.    Defendants are Entitled to R.C. Chapter 2744 Immunity on All State Law Claims. ...................................................................................................................26

1.    The City of University Heights is Entitled to 2744 Immunity. ................ 26

2.    The Individual University Heights Officials are Entitled to Immunity. ................................................................................................... 28

V.    CONCLUSION ................................................................................................................29

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Albright v. Oliver*, 510 U.S. 266 (1994) ................................................................... 12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ........................................ 6

*Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, ¶ 31 .......................... 29

*Assoc. of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 549 (6th Cir. 2007) ....... 14

*Barrett v. Steubenville City Schools*, 388 F.3d 967, 970 (6th Cir. 2004) ..................... 20

*Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) ..................................... 19

*Bell v. City of Cleveland*, 2009 WL 541320, *3 (N.D. Ohio 2009) .............................. 27

*Bowen v. Roy*, 476 U.S. 693, 703 (1986) ...................................................................... 7

*California v. Ciraolo*, 476 U.S. 207, 213 (1986) ......................................................... 11

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................. 5

*Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991) ............................................... 10

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531-532 (1993) ............. 9

*City of Chicago*, 157 F.Supp.2d 903, 915 (N.D. Illinois 2001) ..................................... 8

*Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 762 (7th Cir. 2003) ........ 16

*CLUB v. City of Chicago*, 157 F.Supp.2d 903, 915 (N.D. Illinois 2001) ...................... 8

*County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) .......................................... 12

*Criss v. Springfield Tp.*, 56 Ohio St.3d 82, 84 (1990) ................................................. 29

*Davis v. United States*, 328 U.S. 582, 593-94 (1946) .................................................. 11

*Dia v. City of Toledo*, 937 F.Supp. 673, 677 (N.D. Ohio 1996) ................................... 10

*Doe v. Dayton City School Dist. Bd. of Educ.*, 137 Ohio App. 3d 166, 169 (2d Dist. 1999) ....... 27

*Durbin v. Ohio State Highway Patrol*, 84 Ohio App.3d 693 (10th Dist.) ..................... 24

*Faith Baptist Church v. Waterford Twp.*, 522 F. App'x. 322, 327 (6th Cir. 2013) ........ 6

*Farm Labor Organizing Commt. v. Ohio State Hwy. Patrol*, 308 F.3d 523, 533-34 (6th Cir. 2002) .................................................................................................................... 13

*Field v. Summit Cty. Child Support Agency*, 72 N.E.3d 165, 170 (9th Dist. 2016) ....... 6

*Foster v. Michigan*, 573 F. App'x 377, 390 (6th Cir. 2014) .......................................... 6

*Frazier v. City of Kent*, 2005-Ohio-5413 (9th Dist.) ..................................................... 27

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225–26, 110 S.Ct. 596 (1990) ............. 10

*Gillette v. United States*, 401 U.S. 437, 452 (1971) ...................................................... 7

*Graham v. Connor*, 490 U.S. 386, 395 (1989) .............................................................. 12

*Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 557, 2000-Ohio-486 .... 26

*Hagedorn v. Cattani*, 715 Fed.Appx. 499, 508-10 (6th Cir. 2017) ............................. 22

*Harris v. Bornhorst*, 513 F.3d 503, 520 (6th Cir. 2008) .............................................. 25

*Harris v. City of Akron*, 20 F.3d 1395, 1402-03 (6th Cir. 1994) ................................. 12

*Howard v. Miami Twp. Fire Div.*, 119 Ohio St.3d 1, 4 (2008) ..................................... 27

*Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991) ..................................................................................................... 20

*In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 937 (6th Cir. 2014) ................................................................................................................... 22

*Jackson v. City of Cleveland*, 925 F.3d 793, 818 (6th Cir. 2019) ................................. 20

*Katz v. United States*, 389 U.S. 347, 360 (1967) ......................................................... 11

*Knox v. Hetrick*, 2009-Ohio-1359 (8th Dist.) ............................................................. 24

iii

*Kyllo v. United States*, 533 U.S. 27, 33 (2001) .......................................................................... 11

*Leathers v. Medlock*, 499 U.S. 439 (1991) .................................................................................. 8

*Living Water Church of God v. Charter Tp. of Meridian*, 258 Fed.Appx. 729, 733 (6th Cir. 2007) .......................................................................................................................... 15, 16, 17

*Livingston Christian Schools v. Genoa Charter Twp.*, 858 F.3d 996 (6th Cir. 2017) ...... 16, 17, 18

*Maggio v. Warren*, 2006-Ohio-6880 at ¶¶ 37–38, 43 (11th Dist.) ............................................ 28

*McCloud v. Testa*, 97 F.3d 1536, 1553 (6th Cir. 1996) ............................................................. 20

*Miller v. City of Xenia*, 2002-Ohio-1303 (2nd Dist.) ................................................................ 24

*Moran v. Lewis*, 2018-Ohio-4423, ¶ 11 (8th Dist) ................................................................... 24

*O'Malley v. Briggs*, 475 U.S. 335, 341 (1986) ........................................................................ 20

*Paterek v. Village of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) ........................................... 13

*Paugh v. Hanks*, 6 Ohio St.3d 72, 78 (1983) ...................................................................... 24, 25

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ...................................................................... 20

*Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1223 (6th Cir. 1992) .................................... 13

*Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431-32 (6th Cir. 2002) ..................................... 12

*Pray v. Sandusky*, 49 F.3d 1154, 1157 (6th Cir. 1995) ............................................................ 21

*Provens v. Stark County Board of Mental Retardation & Development Disabilities*, 64 Ohio St.3d 252, 261 (1992) ................................................................................................ 21

*Reichle v. Howards*, 566 U.S. 658, 664 (2012) ....................................................................... 21

*Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48 (1986) ..................................................... 10

*Richardson v. Twp. of Brady*, 218 F.3d 508, 512-13 (6th Cir. 2000) ...................................... 13

*Rudd v. City of Norton Shores, Michigan*, 977 F.3d 503, 517 (6th Cir., 2020) ........................ 19

*Salupo v. Fox, Inc.*, 2004-Ohio-149, ¶ 25 (8th Dist.) ............................................................. 24

*Saucier v. Katz*, 533 U.S. 194, 201 (2001) ............................................................................. 21

*Schamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir.) ........................................................ 6

*Siefert v. Hamilton County*, 951 F.3d 753, 767-68 (6th Cir. 2020) .......................................... 19

*Sims v. Cleveland*, 2009-Ohio-4722, ¶ 15 (8th Dist.) .............................................................. 27

*Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) ....................................................... 19

*Sustin v. Fee*, 69 Ohio St.2d 143 (1982) ................................................................................. 23

*Szefcyk v. Kucirek*, 2016-Ohio-171, ¶ 11 (9th Dist.) ............................................................... 28

*Thompson v. Buckeye Joint Vocational Sch. Dist.*, 2016-Ohio-2804 at * 8 (5th Dist) ................. 6

*TriHealth, Inc. v. Board of Com'rs Hamilton County*, 430 F.3d 783, 790 (6th Cir. 2005) .......... 14

*Triomphe Investors v. City of Northwood*, 49 F.3d 198, 202-04 (6th Cir. 1995) ....................... 12

*Trussell v. Gen. Motors Corp.*, 53 Ohio St.3d 142, 559 N.E.2d 732, 735 (1990) ...................... 25

*United States v. O'Brien*, 391 U.S. 367 (1968) ................................................................... 9, 10

*Village of Belle Terre v. Boraas*, 416 U.S. 1 (1974) ................................................................. 8

*Walls v. Toledo*, 2008-Ohio-4274 (6th Dist.) ......................................................................... 24

*Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005) .................................................. 14

*Washington v. Glucksberg*, 521 U.S. 702, 719-720 (1997) ...................................................... 12

*Wellons v. Northwest Airlines, Inc.*, 25 Fed.Appx. 214, 220 (6th Cir. 2001) ............................ 13

Westchester Day Sch. v. Vill. of Mamaroneck, 417 F.Supp.2d 477, 544 (S.D.N.Y.2006) ........... 16

*White v. Pauly*, 137 S. Ct. 548, 551 (2017) ............................................................................ 21

*Yaklevich v. Kemp, Schaeffer & Rowe, Co.*, 68 Ohio St.3d 294, 298, 1994-Ohio-503 ............... 25

*Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374 (1983) ........................................................ 24

iv

**Statutes**

18 U.S.C. § 248 ................................................................................................ 18, 19

42 U.S.C. § 2000 ...................................................................................................... 15

Fed. R. Civ. P. 56(a) ................................................................................................ 5

R.C. 149.43 ......................................................................................................... 22, 23

R.C. 2744.01 ...................................................................................................... 26, 27

R.C. 2744.03 ...................................................................................................... 26, 28

**Other Authorities**

UHCO 1274.01 ....................................................................................... 5, 7, 9, 10, 15

## **LOCAL RULE 7.1(F) CERTIFICATION**

Defendants City of University Heights, Michael Brennan, Luke McConville, and Paul Siemborski certify that the aforementioned case has been placed on the Complex Track per Court Order and that the memorandum adheres to the page limitation specifications of Local Rule 7.1(f) of the U.S. District Court of the Northern District of Ohio.

## MEMORANDUM IN SUPPORT

### I.  STATEMENT OF THE CASE

Plaintiff Daniel Grand filed a Complaint on September 8, 2022, naming as defendants the City of University Heights, Michael Dylan Brennan (hereinafter "Mayor Brennan"), and Jeffrey Porter. Subsequently, on May 9, 2023, Plaintiff filed his First Amended Complaint, adding Defendants Luke McConville (hereinafter "Law Director McConville"), Paul Siemborski and several others, while removing Jeffrey Porter. Then, after engaging in discovery and taking depositions, Plaintiff voluntarily dismissed all defendants except University Heights, Mayor Brennan and Law Director McConville and Paul Siemborski. Finally, on January 2, 2024, Plaintiff filed his Second Amended Complaint (hereinafter the "Complaint") for the sole purpose of asserting his Due Process claims under the Fourteenth rather than the Fifth Amendment.

The Complaint arises from Plaintiff's publicized announcement that he intended to establish a shul or synagogue in his home, beginning in January 2021. After the City notified Plaintiff that conducting a house of worship or shul would require a special use permit ("SUP"), Plaintiff applied for the SUP. A hearing was held on March 4, 2021, wherein Plaintiff's counsel presented Plaintiff's proposal for the SUP. A decision on the matter was tabled and a future hearing was scheduled to consider Plaintiff's SUP on March 23, 2021. On March 23, prior to the meeting, Plaintiff withdrew his application.

In his Second Amended Complaint, Plaintiff attempts to assert the following claims:

1.  42 U.S.C. § 1983 First Amendment Free Exercise of Religion;
2.  42 U.S.C. § 1983 First Amendment Freedom of Assembly;
3.  42 U.S.C. § 1983 First Amendment Prior Restraint;
4.  42 U.S.C. § 1983 Fourth Amendment Unreasonable Search;
5.  42 U.S.C. § 1983 Fourteenth Amendment Due Process of Law;
6.  42 U.S.C. § 1983 Fourteenth Amendment Equal Protection of the Law (Religious Discrimination);

1

7. 42 U.S.C. § 1983 Fourteenth Amendment Equal Protection of the Law (Class of One);
8. 42 U.S.C. § 2000cc(a) RLUIPA "Substantial Burden";
9. 42 U.S.C. § 2000cc(b)(1) RLUIPA "Equal Terms";
10. 42 U.S.C. § 2000cc(b)(2) RLUIPA "Non-Discrimination"
11. 42 U.S.C. § 2000cc(b)(3) RLUIPA "Unreasonable Limitation";
12. Ohio Constitution, Article I, Section 7 Freed of Religious Exercise;
13. Ohio Common Law Right to Worship;
14. ORC 149.43(C)(1)(b) Ohio Public Records Law;
15. Ohio Common Law Invasion of Privacy;
16. 18 U.S.C. § 248 FACE Act;
17. Ohio Common Law Intentional Infliction of Emotional Distress;
18. 42 U.S.C. § 1983 Civil Conspiracy;
19. Ohio Common Law Abuse of Process; and,
20. Ohio Common Law Malicious Prosecution

Defendants are entitled to summary judgment dismissal of all claims against them with prejudice for the following reasons:

- Plaintiff's official capacity claims are duplicative;

- Plaintiff has failed to allege or prove sufficient facts to maintain his claims;

- Plaintiff's federal law claims fail as a matter of law because no Constitutional rights or federal statutes were violated;

- The individual Defendants are entitled to qualified immunity on all § 1983 claims;

- Plaintiff's state law claims fail on the merits; and,

- Defendants are immune from the state law claims based on R.C. Chapter 2744 immunity.

## II.   STATEMENT OF FACTS

### A.   Plaintiff's House of Worship and Special Use Permit Application

Plaintiff moved to University Heights in 2017. Deposition of Daniel Grand, hereinafter "Plaintiff's Depo.", relevant portions attached as Exhibit A, at 29:7-9. Prior to moving to University Heights, Plaintiff lived in New York City where he bought and sold real estate and owned a property violation removal company called Violation Removed, Inc for over a decade.

*Id.* at 9:6-21:13. In conducting his property violation removal business, Plaintiff was involved with multiple administrative departments and even attended administrative tribunal hearings on behalf of clients, representing their interests in these matters. *Id.* at 21:24-29:6.

As an adherent to Orthodox Judaism, Plaintiff attends worship services three to four times daily. *Id.* at 45:19-46:9. Plaintiff does not restrict his religious practice to one synagogue. *Id.* at 46:10-47:4. Instead he is free to attend any synagogue or minyan (essentially a quorum for a prayer group) around him. *Id.* As described by Plaintiff: "I don't think you understand. When you want to pray, it's like a library. If there are 10 libraries and you want to go get a book, you don't necessarily have to go to that library that you always go to. If the other one's closer, you go to the closer library." *Id.* at 46:23-47:4.

Plaintiff first owned a home on Silsby Road in University Heights where he was very close to the synagogues he attended. *Id.* at 56:6-8. He then relocated to 2343 Miramar Boulevard in 2019. *Id.* at 8:14-9:5; 55:25-56:13. After his move to Miramar and throughout his time in University Heights, Plaintiff has been able to attend daily prayers in accordance with his beliefs. *Id.* at 51:20-52:18.

After moving to Miramar, Plaintiff decided that he wanted to establish a shul in his home so that he would have less of a distance to travel on the Sabbath. *Id.* at 56:23-57:20. Shortly after Plaintiff was approached by an individual suggesting that he hold services in his home, Plaintiff sent an email to a group inviting them to come to his Miramar address and attend a "shul" named the Shomayah Tefillah Beis Hakeneset and introducing "our Rabbi - Rabbi Rosskam." *Id.* at 84:16-87:5; Shomayeh Tefillah Invitation, attached hereto as Exhibit B. The email further states: "[a]nd [p]lease spread the word to whomever you feel might be interested in coming." *Id.*

3

Around that same time, the City heard about the planned shul and mailed Plaintiff a cease and desist letter to prevent any violation of the City's codified ordinances regarding operation of "a religious place of assembly and/or operation as a shul or synagogue . . ." in residential districts. *Id.* at 102:25-103:21; January 21, 2021 Cease and Desist Letter, attached hereto as Exhibit C. In response to this letter, Plaintiff emailed Mayor Brennan providing information and requesting an SUP "to use the space as a place for people to come and pray with me in my home." *Id.* at 113:9-116:3; January 22, 2021 SUP Application, attached hereto as Exhibit D.

As the neighbors surrounding Plaintiff's home became aware of the anticipated shul on their street, Plaintiff sent them a letter, claiming that he intended to operate an "informal" prayer group in his home and told his neighbors that "the city informed me that zoning ordinances allowed for a 'synagogue' or 'shul' (same word in Yiddish) with a "Special Use Permit." Plaintiff's Depo, Exhibit A, at 97:3-1-101:12; March 3, 2021 Letter to Neighbors, attached hereto as Exhibit E.

In response to Plaintiff's request for an SUP, a hearing was scheduled for March 4, 2021 with the University Heights Planning Commission to consider Plaintiff's application. *Id.* at 116:4-15; 278:24-25. Plaintiff attended that meeting with counsel and presented his application for an SUP to allow a shul within his home on Miramar Boulevard. *Id.* at 123:25-132:17. The Planning Commission hearing was over three hours long.  At the conclusion of the hearing the decision on the permit was tabled and the matter was reset to March 23, 2021. *Id.*; Deposition of Paul Siemborski, relevant portions attached hereto as Exhibit F, at 60:1-20; 107:2-15; Deposition of April Urban, relevant portions attached hereto as Exhibit G, at 23:16-24:8. Prior to the March 23 hearing, Plaintiff withdrew his application for an SUP. Plaintiff's Depo., Exhibit A, at 135:3-138:22; March 23, 2021 Withdrawal Email, attached hereto as Exhibit H.

B.      University Heights' Applicable Ordinances

Plaintiff's home at 2343 Miramar Boulevard is within a "U-1 – One Family Residence District" as provided by the University Heights Codified Ordinances ("UHCO"). Permitted uses of such properties are included within UHCO Section 1250. UHCO Section 1274.01 permits "houses of worship … including churches, temples, synagogues, religious organizations, parish houses and parochial schools" to be located in residential districts of the city under certain conditions and after issuance of an SUP.  UHCO 1274.01 (d) provides in pertinent part:

> (d)   A Special Use Permit for any use described in this section shall be applied for and shall be issued on the recommendation of the Planning Commission, subject to any reasonable conditions the Planning Commission may impose uniformly in similar circumstances, for any permitted location, after the applicant demonstrates to the Planning Commission by clear and convincing evidence that the provisions of this chapter will be met and that the special use will not impair surrounding property values or uses, vehicular parking and pedestrian or traffic conditions, lighting glare at night, noise pollution to others or other applicable criteria in the Planning and Zoning Code, and will not be otherwise contrary to the public health, safety and welfare.
>
> (1)   The Planning Commission may hold public hearings on any such application to the extent it deems reasonable, but not more than ninety days after the filing of the application and after compliance with all submissions or revisions thereof required under Section 1274.04.
>
> (2)   The recommendation of the Planning Commission shall be subject to the approval of a majority of Council. A denial by the Planning Commission may be appealed to Council by applicant's filing a written appeal within 15 days of such denial. The appeal shall be heard by Council within 45 days of the filing thereof.

III.   **SUMMARY JUDGMENT STANDARD**

Summary Judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the movant informs the court of the basis for a motion for summary judgment, the opponent bears the burden of coming forward with evidence to show the existence of a genuine issue of material fact on each element necessary to prove his or her case.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  A mere scintilla of evidence is insufficient to meet this burden, instead there

must be evidence on which the jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).

## IV.    LAW AND ARGUMENT

### A.    Plaintiff's Official Capacity Claims are Duplicative Under State and Federal Law.

Plaintiff has filed claims against the City of University Heights, as well as Mayor Brennan in his individual and official capacities. *See* Pl. Second Am. Compl. However, the Sixth Circuit has previously stated that "a section 1983 action against a city official in his or her official capacity is treated as an action against the [governmental agency] itself." *Schamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir.). Accordingly, naming an individual in his or her official capacity in a suit where the governmental entity is also named is superfluous. *Foster v. Michigan*, 573 F. App'x 377, 390 (6th Cir. 2014) (citing *Faith Baptist Church v. Waterford Twp*., 522 F. App'x. 322, 327 (6th Cir. 2013.  The same principle applies under Ohio law.  *Field v. Summit Cty. Child Support Agency*, 72 N.E.3d 165, 170 (9th Dist. 2016) (quoting *Thompson v. Buckeye Joint Vocational Sch. Dist.*, 2016-Ohio-2804 at * 8 (5th Dist).

### B.    Defendants Did Not Violate Plaintiff's First Amendment Rights.

In his first three causes of action, Plaintiff alleges that the Defendants deprived him of his rights to free exercise of his religion as well as his freedom of assembly and placed prior restraints on his protected religious expression and exercise under the First Amendment. (Pl. Compl. ¶¶ 432-438). Plaintiff is unable to prove that he was deprived of constitutionally protected rights, therefore his claims should be dismissed.

#### 1.    University Heights' Ordinances are Neutral and Generally Applicable.

For cases invoking the constitutional protection for the free exercise of religion, the Supreme Court has established "the general proposition that a law that is neutral and of general

applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531-532 (1993). Regarding neutrality, "the protections of the Free Exercise Clause pertain if the law at issue discriminated against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Id.* at 532. "To determine the object of a law, we must begin with its text, for the minimum requirement of neutrality is that a law not discriminate on its face. A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context." *Id*. at 533. Beyond facial neutrality, "[t]he [Free Exercise] Clause 'forbids subtle departures from neutrality,' and 'covert suppression of particular religious beliefs.'" *Id.* at 534, quoting *Gillette v. United States*, 401 U.S. 437, 452 (1971); *Bowen v. Roy*, 476 U.S. 693, 703 (1986).

Here, UHCO 1274.01 is neutral and of general applicability. Indeed, although Plaintiff claims it is a discriminatory tool impeding his ability to practice his religion, the purpose and application of the law is explicit on its face.

> This chapter is established in order to permit, under special circumstances and conditions, uses which foster the most desirable use of the land in the City; which insure compatibility and stability with existing and proposed adjacent uses; and which harmonize and integrate into the existing zoning and use plans those special uses authorized under special permit recommended by the Planning Commission as approved by Council in the U-1, U-2 and U-4 residential districts.

University Heights Codified Ordinances 1274.01 (a).

Far from discriminating against religions or among religious uses, the law *permits* certain religious and other uses in areas of the city where they would not otherwise be allowed if the applicable criteria spelled out in the ordinance are met. Indeed, the ordinance does not merely apply to houses of worship, but also facilities for the physical, behavioral, or mental health care of citizens, senior housing and care facilities, residential behavioral health care facilities, conversions

7

to condominiums, and office, research, and high-tech production facilities. University Heights Codified Ordinances 1274.01 (b)(1-7).

In his Complaint, Plaintiff alleges that Defendants have, by virtue of enforcing their codified ordinances, conspired to forbid him from praying in his home without first obtaining an SUP. Pl. Second Am. Compl. ¶¶ 7-8, 10, 13-15, 44, 49-50, 54, 58-60, 71, 83, 114-118, 120, 127-128, 130, 134, 147, 171, 233, 272, 307, 334, 356, 373-376, 384-387, 400, 402, 420, 425, 430-431. However, prior to applying for a special use permit, Plaintiff characterized his anticipated use on multiple occasions as a shul indicating that it was synonymous with a synagogue, he named the organization, and he indicated that the group would be led by a rabbi. *See*, Exhibit B.  Upon being advised that he needed an SUP to conduct "a religious place of assembly and/or operation as a shul or synagogue . . .", Plaintiff elected to apply for an SUP and went through the initial hearing required by the code. However, he withdrew his application for an SUP before the Planning Commission could issue a decision.

There is no evidence that anyone from University Heights ever told Plaintiff he was not free to pray at home. Instead, Defendants merely enforced content neutral ordinances at a time when Plaintiff's announced intentions were to conduct a shul or synagogue.

## 2.     Defendants Did Not Deprive Plaintiff of His Right to Assembly.

". . . First Amendment protections as to speech and assembly are not so all-encompassing as to include all activity in which [a religious] idea, goal, or value is promoted." *CLUB v. City of Chicago*, 157 F.Supp.2d 903, 915 (N.D. Illinois 2001), citing *Village of Belle Terre v. Boraas*, 416 U.S. 1 (1974); *see also Leathers v. Medlock*, 499 U.S. 439 (1991).  Based on the foregoing, it is clear the Defendants did not violate Plaintiff's right to freedom of assembly. Plaintiff sought to expand the use of his property to include a shul or synagogue in a residential zone. University

Heights, through its officials, informed Plaintiff that he could apply for an SUP to permit that use - which he did.  However, having applied for the SUP, Plaintiff withdrew his application before it could be acted upon stating that he merely intended to conduct an informal prayer group. The record is devoid of any evidence that University Heights prohibited Plaintiff from engaging in an informal prayer group.

### 3.  University Heights' Ordinances Are Not a Prior Restraint on Religious Exercise.

Plaintiff claims that the University Heights ordinances (presumably UHCO 1274.01) constitute an unconstitutional prior restraint because it allegedly "contains no articulated standards with respect to review by City Council of an application for a SUP for a house of worship in a residential zone . . . ." Pl. Second Am. Compl. ¶ 437. Contrary to this allegation, the express wording of UHCO 1274.01 (d) provides that an SUP "*shall* be issued … after the applicant demonstrates to the Planning Commission by clear and convincing evidence that the provisions of this chapter will be met and that the special use will not impair surrounding property values or uses, vehicular parking and pedestrian or traffic conditions . . . and will not be otherwise contrary to the public health, safety and welfare." (emphasis added).

Zoning ordinances that restrict protected first Amendment activity are analyzed under the test set forth in *United States v. O'Brien*, 391 U.S. 367 (1968), which finds that such an ordinance passes constitutional muster if it:

(1) is within the constitutional power of the government; and

(2) furthers an important or substantial government interest that;

(3) is unrelated to the suppression of free expression; and

(4) the incidental restriction on First Amendment freedoms is no greater than is essential to the furtherance of that interest.

9

*See Dia v. City of Toledo*, 937 F.Supp. 673, 677 (N.D. Ohio 1996), citing *O'Brien*, 391 U.S. at 377. Since zoning requirements obviously satisfy the first two requirements, the test therefore becomes whether the regulation is content-neutral and leaves open adequate alternative avenues of communication. *Dia*, 937 F.Supp. at 677, citing *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48 (1986).

> Although a content-neutral zoning ordinance is analyzed as a "time, place, and manner" regulation, *Renton,* 475 U.S. at 47, and the prior restraint doctrine does not apply to such ordinances, *Christy v. Randlett,* 932 F.2d 502, 504 (6th Cir. 1991), the prior restraint doctrine **does apply to any licensing scheme regulating an entire business that runs the risk of suppressing constitutionally protected expressions**, *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225–26, 110 S.Ct. 596 (1990).

*Dia*, 937 F.Supp. at 677 (emphasis added).

Here, University Heights' zoning ordinances, are clearly content-neutral and do not amount to a prior restraint.  Far from prohibiting expressive activities, UHCO 1274.01 actually *permits* certain religious and other activities that would otherwise be prohibited in residential zones as long as an SUP is obtained.  The criteria for issuance of an SUP are based upon narrowly-tailored legitimate non-discriminatory governmental interests.  Even if it is not considered content-neutral, the ordinance does not attempt to regulate an entire business. Instead, Ordinance 1274.01 prescribes a method for conducting houses of worship and certain other activities in residential zones where they would otherwise be prohibited.

### C.  Defendants Did Not Violate Plaintiff's Fourth Amendment Right to be Free From Unreasonable Searches.

In his fourth cause of action, Plaintiff alleges that Defendants violated his Fourth Amendment right against unreasonable searches by "intrusive video surveillance and surveillance by other means." Pl. Second Am. Compl. ¶¶ 439-440. A search occurs when a **government official**

10

invades an area where a person has a reasonable expectation of privacy. *Katz v. United States*, 389 U.S. 347, 360 (1967) (emphasis added).

Here, Plaintiff's Complaint, and his testimony at deposition, demonstrate that the intrusive video surveillance he allegedly experienced was at the hands of his neighbors, the Porters. Pl. Second Amended Compl., ¶ 426; Depo. of Plaintiff, Ex. A, at 199-202. There is no evidence to which Plaintiff can point that anyone from University Heights monitored him via video camera, or ordered anyone to record Plaintiff or his home. Therefore, any claim for unreasonable search being conducted by intrusive video surveillance fails as a matter of law, as such surveillance upon Plaintiff was conducted by a non-state actor.

In addition to the video surveillance, Plaintiff alleges that surreptitious men waited outside his house and reported his whereabouts to the mayor. Pl. Second Amended Compl., Ex. A ¶¶ 171-172. However, even if this occurred, visual surveillance outside the curtilage of a home is not considered an unreasonable search under Supreme Court doctrine. *Kyllo v. United States*, 533 U.S. 27, 33 (2001); *California v. Ciraolo*, 476 U.S. 207, 213 (1986).

Finally, Plaintiff's wife testified that all building and other inspections of the property at issue in this case occurred with her consent which amounts to an exception to the Fourth Amendment's warrant requirement. Deposition of Rakhel Davidoff, relevant portions attached hereto as Exhibit J, at 11:5-13:25; *Davis v. United States*, 328 U.S. 582, 593-94 (1946).

### D. Defendants Did Not Violate Plaintiff's Fourteenth Amendment Right to Due Process.

In his fifth cause of action, Plaintiff alleges that he was deprived of his right to due process under the Fourteenth Amendment through Defendants' allegedly unlawful application of University Heights' ordinances. Pl. Second Am. Compl. ¶¶ 441-442. It is unclear whether Plaintiff is asserting a procedural or substantive due process claim. In either event, Plaintiff must show that

he or she was deprived of a constitutionally protected liberty or property interest by some form of state action. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431-32 (6th Cir. 2002).

To the extent Plaintiff seeks to bring a procedural due process claim based on his application for an SUP, his claim fails on two grounds. First, Plaintiff has no legitimate expectation in the issuance of the SUP. Therefore, he had no property interest in it and no procedural due process claim had it been denied. *Triomphe Investors v. City of Northwood*, 49 F.3d 198, 202-04 (6th Cir. 1995). Second, Plaintiff was afforded process in the form of the Planning Commission hearing but he withdrew his application before the process was completed and, therefore, he has no claim to a procedural due process violation.  *Harris v. City of Akron*, 20 F.3d 1395, 1402-03 (6th Cir. 1994).

To the extent that Plaintiff intends to pursue a substantive due process claim, the Supreme Court has explained that the "substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). The "substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty'" such as the right to marry, reproductive rights, the right to direct the education of one's children, marital privacy and bodily integrity. *Washington v. Glucksberg*, 521 U.S. 702, 719-720 (1997). Moreover, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994), quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989).

Here, Plaintiff does not identify a fundamental right that was allegedly violated nor does the Second Amended Complaint offer any clue in that regard. Pl. Second Am. Compl. ¶ 441-42. To the extent Plaintiff's substantive due process claim is based on alleged violation of his rights to free exercise, speech, assembly or freedom from unreasonable searches, those claims are subject to the Amendments addressed above rather than substantive due process. To the extent Plaintiff asserts he was deprived of a substantive due process right as a result of an alleged pattern of harassing City Code enforcement actions, that claim fails as a matter of law because there is no cognizable substantive due process claim based on the enforcement or application of building, land use, and zoning regulations. *Richardson v. Twp. of Brady*, 218 F.3d 508, 512-13 (6th Cir. 2000); *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1223 (6th Cir. 1992).

E.     **Defendants Did Not Violate Plaintiff's Fourteenth Amendment Right to Equal Protection.**

1.     **Plaintiff Has Not Alleged or Proven Disparate Treatment in Support of his Equal Protection Claim.**

In his sixth cause of action, Plaintiff alleges that Defendants applied the UHCO in a discriminatory manner based on his religion. To establish his claim when challenging the application of a facially neutral ordnance, Plaintiff must show "(1) that the application had a discriminatory effect, i.e. that similarly situated persons or entities were treated differently, and (2) that the unequal application was motivated by discriminatory purpose." *Farm Labor Organizing Commt. v. Ohio State Hwy. Patrol*, 308 F.3d 523, 533-34 (6th Cir. 2002). Under equal protection, "similarly situated" means the plaintiff and a comparator are "nearly identical" in "all relevant aspects." *Paterek v. Village of Armada*, 801 F.3d 630, 650 (6th Cir. 2015); *Wellons v. Northwest Airlines, Inc.*, 25 Fed.Appx. 214, 220 (6th Cir. 2001).

Plaintiff has not alleged a similarly situated comparator that has been treated more favorably. At his deposition, Plaintiff was unable to name any non-Jewish religious persons or organizations that were required to apply for and were granted an SUP to conduct in-house worship. Depo. of Plaintiff, Ex. A., at 189-193. Accordingly, Plaintiff has failed to demonstrate an unequal application of the ordinances.

**2.     University Heights Has a Rational Basis to Enforce its Ordinances and Plaintiff's Class of One Claim Fails.**

In his seventh cause of action Plaintiff alleges that Defendants are depriving him of equal protection of the laws as a class of one through enforcement of the land use ordinances, based on a perceived personal animus towards Plaintiff. Whenever a plaintiff fails to allege that the government's actions burden a fundamental right or target a suspect class, the claim proceeds under the "class of one" theory and the plaintiff must demonstrate that the government's actions lacked **any rational basis**. *Assoc. of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 549 (6th Cir. 2007) (emphasis added). Reviewing conduct under rational basis scrutiny, governmental action is a constitutional violation only if it "is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational." *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005). Under rational basis analysis, a defendant "has no obligation to produce evidence to sustain the rationality of its actions; its choice is presumptively valid and 'may be based on rational speculation unsupported by evidence or empirical data.'" *TriHealth, Inc. v. Board of Com'rs Hamilton County*, 430 F.3d 783, 790 (6th Cir. 2005).

Here, as argued throughout, University Heights has a rational basis to enforce its reasonable building and zoning codes. To protect its citizens from being exposed to inappropriate uses and potentially life-threatening situations in buildings that do not comply with state and local zoning

and building standards, University Heights requires that deviations from the regulated zoning districts be approved by the Planning Commission through an SUP. *See* UHCO 1274.01.

### F. Defendants Did Not Violate RLUIPA.

In his eighth through eleventh causes of action, Plaintiff alleges numerous violations of the subparts of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.* Pl. Second Am. Compl. ¶¶ 447-454. In pertinent part, RLUIPA provides that:

> [n]o government shall impose or implement a land use regulation in a manner that imposes a *substantial burden on the religious exercise* of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person assembly, or institution –
>
> (A) is in furtherance of a compelling governmental interest; and
>
> (B) is the least restrictive means of furthering that compelling governmental interest.

*Living Water Church of God v. Charter Tp. of Meridian*, 258 Fed.Appx. 729, 733 (6th Cir. 2007), citing 42 U.S.C. § 2000cc(a)(1).  This law applies to three distinct circumstances. Only one of these circumstances is pertinent here, whether a "substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved." 42 U.S.C. § 2000cc(a)(2)(C). Although the Supreme Court has not defined "substantial burden" with regard to RLUIPA claims in the land-use context, the law's legislative history indicates that it was not intended to be given a broader interpretation than the Supreme Court's analysis of substantial burden on religious exercise. *Living Water Church of God*, 258 Fed. Appx. at 733-34.

Plaintiff alleges that his rights under RLUPIA were violated in four ways: (1) Defendants' land use regulations imposed a substantial burden on his religious practices; (2) Defendants'

regulations treated Plaintiff's religious assembly rights on less than equal terms with a nonreligious assembly; (3) Defendant's regulations discriminate against his right to assemble on the basis of religion; and (4) Defendant's regulations totally exclude and/or unreasonably limit religious assembly in the city. Pl. Second Am. Compl. ¶¶ 447-454.

### 1.     University Heights' Ordinances Do Not Impose a Substantial Burden on Religious Exercise.

The Sixth Circuit has made it clear that RLUIPA is not intended to exempt individuals and religious organizations from all land-use laws:

> Congress has cautioned that we are to interpret "substantial burden" in line with the Supreme Court's "Free Exercise" jurisprudence, which suggests that a "substantial burden" is a difficult threshold to cross. If the term "substantial burden" is not to be read out of the statute, RLUIPA cannot stand for the proposition that a construction plan is immune from a town's zoning ordinance simply because the institution undertaking the construction pursues a religious mission. *See Westchester Day Sch. v. Vill. of Mamaroneck,* 417 F.Supp.2d 477, 544 (S.D.N.Y.2006), aff'd, 504 F.3d 338 (2d Cir.2007) ("[C]ourts must ensure that the facts warrant protection under RLUIPA, rather than simply granting blanket immunity from zoning laws."). Although RLUIPA assuredly protects religious institutions in their religious exercise, the statute's language indicates that it is not intended to operate as "an outright exemption from land-use regulations." *Civil Liberties for Urban Believers v. City of Chicago,* 342 F.3d 752, 762 (7th Cir. 2003) ("[N]o such free pass for religious land uses masquerades among the legitimate protections RLUIPA affords to religious exercise.").

*Living Water Church of God*, 258 Fed. Appx. at 736-737. Much like the First Amendment analysis of substantial burden, *supra*, Plaintiff is unable to meet the high threshold in his RLUPIA claim.

In a case similar to the one at bar, the Sixth Circuit reviewed several factors found relevant in other courts of appeals to determine if a plaintiff was substantially burdened under RLUIPA. *See Livingston Christian Schools v. Genoa Charter Twp.*, 858 F.3d 996 (6th Cir. 2017). When Livingston Christian Schools (LCS) leased space at a local church to operate a school on the church's property, Genoa Charter Township required that the school obtain a special use permit that was ultimately denied. The Township was granted summary judgment, which was upheld by

the Sixth Circuit. *Id.* at 999. In determining whether the LCS was substantially burdened, the court focused on (1) whether the religious institution has a feasible alternative location from which to carry on its mission; (2) whether the religious institution will suffer substantial delay, uncertainty, and expense; and (3) whether the plaintiff imposed a burden on itself. *Id.* at 1004-1005 (collecting cases).

Here, applying the factors adopted by the Sixth Circuit, Plaintiff has failed to demonstrate a substantial burden by Defendants' enforcement of their ordinances. Plaintiff has many alternative locations to "carry out his mission" in properly zoned and regulated houses of worship around the city. Although Plaintiff argues the amount of time spent walking to and from a synagogue is a substantial burden on his religious practice, the Sixth Circuit has rejected such claims.

> Likewise, families with especially tight budgets or busy schedules might find burdensome the additional expenses and time constraints of approximately 12.1 more miles of car travel each way, but this does not mean that such additional expense and time is so great to constitute a substantial burden on LCS's religious mission. This is more analogous to a "mere inconvenience" that would not be deemed a substantial burden under *Living Water*.

*Livingston Christian School*, 858 F.3d at 1009. "[T]he Eleventh Circuit has held that walking an additional several blocks would not impose a substantial burden on religious adherents whose beliefs bar motor-vehicle travel on the Sabbath." *Id.*

Finally, Plaintiff here completely imposed the burden on himself. Plaintiff testified in deposition that at his prior residence he had plenty of available places to worship and found no issue with walking to service. Plaintiff's Depo., Ex. A, at 55:22-56:8. Then, while being well versed in building and zoning codes, Plaintiff decided to relocate his residence to a zone which required an SUP, attempted to establish a shul and he failed to carry through with the process to obtain the SUP. To the extent Plaintiff seeks only to conduct informal prayer gatherings, he has never been prohibited from doing so.

**2.      Defendants' Ordinances Did Not Treat Plaintiff on Less Than Equal Terms and Did Not Discriminate on the Basis of Religion.**

Here, as discussed throughout, University Heights' regulations are content-neutral and apply generally to anyone attempting to use a property zoned in the residential zone for another purpose, be it opening a house of worship, a senior care facility, providing behavioral therapy, or any other conceivable use in which large assemblies of people gather. University Heights has a legitimate interest in ensuring the safety and welfare of its citizens when residential property is used contrary to its zoning or building codes. As noted above, Plaintiff has failed to establish that he has been treated less than equally or discriminated against due to his Jewish faith.

**3.      Defendants' Regulations Do Not Totally Exclude or Unreasonably Limit Religious Assembly in the City.**

Defendant himself testified that at his first residence in the city, he had no issue finding a place to worship. *Id.* at at 55:22-56:8. Moreover, University Heights has made provisions in the UHCO for the location of houses of worship even in residential districts subject to several non-discriminatory conditions. Outside of mere conclusory allegations, Plaintiff has failed to demonstrate that University Heights has excluded or unreasonably limited religious assembly, therefore his claim should be dismissed.

**G.      Defendants Did Not Violate the FACE Act.**

In his sixteenth cause of action, Plaintiff alleges Defendants engaged in actions which intimidated Plaintiff from exercising his religion and placed him in apprehension of bodily harm, in violation of the Freedom of Access to Clinic Entrances (FACE) Act. The FACE Act extends protection to people seeking unhindered access to their place of worship. *See* 18 U.S.C. § 248. Specifically, the Act criminalizes and exposes to civil liability, anyone who "**by force or threat of force or by physical obstruction**, intentionally injuries, intimidates or interferes with or

18

attempt to injure, intimidate or interfere with any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship." 18 U.S.C. § 248(a)(2) (emphasis added). A claim under the FACE Act can be brought "only by a person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship or by the entity that owns or operates such place of religious worship." *Id.* at (c)(1)(A). Plaintiff has not alleged nor is there any evidence that Defendants engaged in force, threat of force or physical obstruction or that Plaintiff was exercising his religious rights "at a place of religious worship."

### H.    Plaintiff Cannot Prove Defendants Engaged in Conspiracy.

In his eighteenth cause of action, Plaintiff alleges that Mayor Brennan, Law Director McConville, and Paul Siemborski were involved in a conspiracy to deprive Plaintiff of his constitutional rights. Pl Second Am. Compl. ¶¶ 467-468. To prove a conspiracy actionable under § 1983, Plaintiff must show: (1) a "single plan" existed, (2) defendants "shared in the general conspiratorial objective" to deprive plaintiff of a constitutional right, and (3) "an overt act was committed in furtherance of the conspiracy that cause injury" to plaintiff. *Siefert v. Hamilton County*, 951 F.3d 753, 767-68 (6th Cir. 2020), quoting *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). "A complaint must identify the alleged conspiracy with more than vague and conclusory allegations." *Rudd v. City of Norton Shores, Michigan*, 977 F.3d 503, 517 (6th Cir., 2020) (citation omitted); see also *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003). Plaintiff attempts to allege conspiracy by claiming that Defendants discussed his SUP application with unnamed residents and otherwise make generalized unsupported allegations against the Defendants. Pl. Second Am. Compl. ¶¶ 366-398. Taken together, Plaintiff's allegations merely contain many conclusory statements with no evidentiary basis.

19

Furthermore, it is impossible for members of the same organization to commit a conspiracy with one another under the intra-corporate doctrine. *Jackson v. City of Cleveland*, 925 F.3d 793, 818 (6th Cir. 2019) (holding that "the intracorporate conspiracy doctrine … bar[s] conspiracy claims where two or more employees of the same entity are alleged to have been acting within the scope of their employment when they alleged conspired together to deprive the plaintiff of his rights."). When the intra-corporate conspiracy doctrine is applied, the only outside communications alleged in the Complaint refer to a letter submitted by an unnamed "conspirator" who said she did not want her residential area to be labelled "Jewish"[1] and vague claims that former Defendant Kluznik facilitated unspecified "ex parte" communications between the Planning Commission and the neighbors[2].  Pl. Second Am. Compl. ¶¶ 371, 389.

## I. The Individual University Heights Officials are Entitled to Qualified Immunity.

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity shields government officials from liability regardless of "whether their error was mistake of law, mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. 223 at 231. "If [officials] of reasonable competence could disagree on the issue, immunity should be recognized." *McCloud v. Testa*, 97 F.3d 1536, 1553 (6th Cir. 1996), quoting *O'Malley v. Briggs*, 475 U.S. 335, 341 (1986). Once a defense of qualified immunity has been raised, the plaintiff bears the burden of overcoming it and demonstrating that defendants are not entitled. *Barrett v. Steubenville City Schools*, 388 F.3d 967, 970 (6th Cir. 2004) In order to overcome

---

[1] It is believed that this is a written comment submitted by a member of the public at the Planning Commission hearing but, in any event, there is no evidence that this was submitted on behalf of or at the request of any of the Defendants.
[2] Plaintiff offers no allegation or evidence as to the substance of these alleged communications.

qualified immunity, a plaintiff must show that: (1) the official's conduct violated a constitutional right; and (2) the right was clearly established at the time of the violation – such that a reasonable official in the defendant's position should have known their conduct would violate the constitution. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pray v. Sandusky*, 49 F.3d 1154, 1157 (6th Cir. 1995). The second prong, proving a constitutional right was clearly established, is a heavy burden involving proof that its existence is "beyond debate" and clear to every reasonable official that his or her actions would violate that right. *See White v. Pauly*, 137 S. Ct. 548, 551 (2017); *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

The officials are entitled to qualified immunity because none of Plaintiff's constitutional rights were violated. Assuming arguendo that there was a constitutional violation, no reasonable official under the same circumstances would have understood that his or her conduct violated clearly established law. Thus, the individual officials are entitled to qualified immunity as to causes of action one through eleven, sixteen, and eighteen.

> **J.      Plaintiff Cannot Maintain a Claim Under the Ohio Constitution.**

For his twelfth cause of action, Plaintiff alleges that Defendants violated his rights to worship under the Ohio Constitution Article I, Section 7 through the application of the city's land use regulations. Pl. Second Am. Compl. ¶ 455-456. However, The Supreme Court of Ohio has not recognized the existence of a private cause of action for damages under the Ohio Constitution where that remedy is not supplied in the Constitution itself or enabling legislation. *See Provens v. Stark County Board of Mental Retardation & Development Disabilities*, 64 Ohio St.3d 252, 261 (1992). The Sixth Circuit has repeatedly upheld this holding with different rights included in the Ohio Constitution, such as free speech under Ohio Const. Art. I, Sec. 11, explaining that without sufficient precision providing clear guidance with respect to enforcement, or in the alternative

some enabling legislation, no private right of action exists under the Ohio Constitution. *See e.g.*, *Hagedorn v. Cattani*, 715 Fed.Appx. 499, 508-10 (6th Cir. 2017); *In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.,* 756 F.3d 917, 937 (6th Cir. 2014).

### K.     Ohio Has Not Recognized Common Law Right to Worship.

In his thirteenth cause of action, Plaintiff alleges Defendants have violated his common law right to worship by virtue of enforcing the zoning code to his detriment. Pl. Second Am. Compl. ¶¶ 457-458. Much like Plaintiff's twelfth cause of action, Defendants are unaware of any private cause of action established in Ohio's common law to enforce a right to worship at a place "found in that part of the community where people live." *See Id.* In that Plaintiff is alleging a violation of his First Amendment right to the free exercise of his religion or that the UHCO allegedly encroaches upon that right, Defendants would direct the Court's attention to the relevant sections *supra* – Defendants never placed any prohibition on Plaintiff's right to prayer and they have a right to enforce reasonable building and zoning codes for the health and safety of the community. Defendants repeat those analyses and arguments to the extent applicable to Plaintiff's thirteenth cause of action, which is not based in any authority.

### L.     Venue and Jurisdiction are Improper Under the Ohio Public Records Act.

In his fourteenth cause of action, Plaintiff alleges that University Heights violated the Ohio Public Records Law by failing to provide public records requested by Plaintiff. Pl. Second Am. Compl. ¶ 184-185; 459-460. R.C. 149.43 explains what records are available, how they are to be obtained, and what aggrieved parties may do when and unsatisfactory response is received. In particular, if a response is unsatisfactory, the person allegedly aggrieved may:

(a) File a complaint with the clerk of the **court of claims** or the clerk of the **court of common pleas** under section 2743.75 of the Revised Code;

(b) Commence a mandamus action to obtain a judgment that orders the public office or the person responsible for the public record to comply with division (B) of this section . . . . **The mandamus action may be commenced in the court of common pleas** of the county in which division (B) of this section allegedly was not complied with, **in the supreme court** pursuant to its original jurisdiction under section 2 of Article IV, Ohio Constitution, **or in the court of appeals** for the appellate district in which division (B) of this section allegedly was not complied with pursuant to its original jurisdiction under Section 3 of Article IV, Ohio Constitution.

R.C. 149.43(C)(1)(a-b) (emphasis added). Nowhere does the Act confer jurisdiction on the federal courts.  Finally, damages for violations for public records requests are statutory damages provided by R.C. 149.43(C)(2) and not the generalized damages sought by Plaintiff here.

**M.      Mayor Brennan Did Not Invade Plaintiff's Privacy.**

In his fifteenth cause of action, Plaintiff alleges that Mayor Brennan invaded Plaintiff's privacy by intruding on his solitude and surveilling Plaintiff. Pl. Second Am. Compl. ¶¶ 461-462. Under Ohio law, "[a]n actionable invasion of the right of privacy is the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation of ordinary sensibilities." *Sustin v. Fee*, 69 Ohio St.2d 143 (1982). To recover under the intrusion theory, Plaintiff must show that Mayor Brennan "intentionally intrude[d], physically or otherwise, upon the solitude or seclusion" of his "private affairs or concerns," and that the "intrusion would be highly offensive to a reasonable person." *Id.* at 431. Assuming that Plaintiff is complaining about alleged monitoring of his residence, Ohio courts have found that conduct such as attaching a GPS tracker to a vehicle does not constitute invasion of privacy, as "[t]he mere act of monitoring another's public movements . . . is not, in and of itself, sufficient to state an invasion of privacy claim" and "liability for intrusion into another's seclusion or private affairs does not exist where the defendant observes

23

or records a person in a public place." *Moran v. Lewis*, 2018-Ohio-4423, ¶ 11 (8th Dist), citing *Salupo v. Fox, Inc.*, 2004-Ohio-149, ¶ 25 (8th Dist.). Here, any alleged, unproven, monitoring of Plaintiff's residence to determine if a shul was being operated in violation of the UHCO, constitutes public observation and does not rise to the level of invasion of privacy.

**N.**      **Plaintiff Cannot Prove Intentional Infliction of Emotional Distress.**

In his seventeenth cause of action, Plaintiff alleges that Mayor Brennan intentionally inflicted emotional distress upon him. Pl. Second Am. Compl. ¶¶ 465-466. Under Ohio law, the elements for intentional infliction of emotional distress are: (1) extreme or outrageous conduct; (2) of intentional or reckless character; (3) that causes severe emotional distress. *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374 (1983). Liability for intentional infliction of emotional distress "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities . . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* at 375. Claims of intentional infliction of emotional distress based upon lawful actions of law enforcement officers have consistently failed in the State of Ohio. *See Knox v. Hetrick*, 2009-Ohio-1359 (8th Dist.); *Walls v. Toledo*, 2008-Ohio-4274 (6th Dist.); *Miller v. City of Xenia*, 2002-Ohio-1303 (2nd Dist.); *Durbin v. Ohio State Highway Patrol*, 84 Ohio App.3d 693 (10th Dist.). Here, all actions allegedly undertaken by Mayor Brennan were in pursuit of enforcing the UHCO and the cease and desist delivered to Plaintiff, and his conduct was not outrageous.

Furthermore, "serious emotional distress" goes beyond trifling disturbances, or mere upset or hurt feeling. *Paugh v. Hanks*, 6 Ohio St.3d 72, 78 (1983). The emotional injury suffered by a complainant must be so severe and debilitating that "a reasonable person, normally constituted,

would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Id.* Serious emotional distress is demonstrated by such ailments as traumatically induced neurosis, psychosis, chronic depression, and phobia. *Id.*

Here, Plaintiff himself testified at deposition that he did not seek any type of treatment. Depo. of Plaintiff, Ex. A, at 264-265.

### O.     Defendants Did Not Engage in Abuse of Process or Malicious Prosecution.

In his nineteenth and twentieth causes of action, Plaintiff alleges state common law claims for abuse of process against Mayor Brennan, Law Director McConville, and Paul Siemborski, and malicious prosecution, against Mayor Brennan and Law Director McConville. Pl. Second Am. Compl. ¶¶ 469-472.

An abuse of process claim requires a plaintiff to demonstrate that (1) a legal proceeding was set in motion in proper form and with probable cause; (2) that the proceeding was perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process. *Yaklevich v. Kemp, Schaeffer & Rowe, Co.,* 68 Ohio St.3d 294, 298, 1994-Ohio-503. To maintain an action for a state malicious criminal prosecution in Ohio, a Plaintiff must show: (1) malice in instituting (or continuing) the prosecution, (2) lack of probable cause, and (3) termination of the action in favor of the criminal defendant. *Harris v. Bornhorst*, 513 F.3d 503, 520 (6th Cir. 2008) citing *Trussell v. Gen. Motors Corp.*, 53 Ohio St.3d 142, 559 N.E.2d 732, 735 (1990).

Here, Plaintiff cannot make the necessary evidentiary showings for his abuse of process or malicious prosecution claims as no criminal or other proceedings were ever initiated against him. Although his Complaint is replete with allegations of potential prosecution, and avoiding prosecution, and erroneously states that "[Defendants] prosecuted Plaintiff because of his religious

practice and because of personal animus . . ." no criminal action was ever initiated against Plaintiff for any reason. Pl. Second Am. Compl. ¶ 202. Although he simultaneously complains about a parking ticket issued to a friend, Plaintiff obviously does not have standing to redress the unnamed friend's issues. Pl. Second Am. Compl. ¶¶ 206, 213, 232, 273, 275.

**P.  Defendants are Entitled to R.C. Chapter 2744 Immunity on All State Law Claims.**

**1.  The City of University Heights is Entitled to 2744 Immunity.**

Reviewing political subdivision immunity under R.C. Chapter 2744 involves a three-tiered analysis. *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 557, 2000-Ohio-486.  First, R.C. 2744.02(A)(1) establishes a blanket immunity that political subdivisions are not liable in damages for injury, death, or loss of person or property, for the acts or omissions of the political subdivision or its employees in connection with governmental or proprietary functions. *Id.*  The second tier requires analysis of whether one of five limited immunity exceptions under R.C. 2744.02(B) applies to permit recovery against the political subdivision.  *Id.*  Finally, the third tier operates to recover immunity for the subdivision if any of the defenses under R.C. 2744.03 apply to the alleged conduct.

University Heights is a political subdivision pursuant to R.C. 2744.01 (F), and its officials were engaged in a governmental function with respect to the incident that forms a basis for this lawsuit.  Governmental functions include, among other things, "[t]he enforcement or nonperformance of any law and the provision or non-provision of inspection services of all types.  R.C. 2744.01 (C)(2)(i), (p). Therefore, University Heights is entitled to the broad grant of immunity established under R.C. 2744.02(A)(1).

University Heights' blanket immunity can only be removed if Plaintiff can invoke  one of five limited exceptions under R.C. 2744.02(B)(1)-(5). *Howard v. Miami Twp. Fire Div.*, 119 Ohio

26

St.3d 1, 4 (2008).  These exceptions from immunity are to be narrowly construed and Plaintiff bears the burden of establishing that one of them applies. *Sims v. Cleveland*, 2009-Ohio-4722, ¶ 15 (8th Dist.); *Doe v. Dayton City School Dist. Bd. of Educ.*, 137 Ohio App. 3d 166, 169 (2d Dist. 1999). The five immunity exceptions under R.C. 2744.02 are as follows: 1) negligent operation of motor vehicles; 2) negligent performance of proprietary functions; 3) negligent failure to keep public roads in repair and free of obstructions; 4) negligent acts causing injuries due to physical defects within or on the grounds of buildings used for governmental functions; and 5) where liability is expressly imposed by a section of the Revised Code.  R.C. 2744.02()(1)-(5).

Plaintiff cannot establish any immunity exception in the present case. None of the claims relate to the negligent operation of a motor vehicle; negligent failure to keep roads in repair; or negligence on the grounds of a public buildings due to a physical defect. Also, there are no statutes that expressly impose civil liability in the circumstances of this case.  Moreover, the provision of building and zoning ordinances and the enforcement of these laws are expressly defined as governmental functions and are excluded by definition from the term "proprietary" function.  R.C. 2744.01(C)(2)(i), (p); *Frazier v. City of Kent*, 2005-Ohio-5413 (9th Dist.). Thus, the proprietary function immunity exception does not apply.

Finally, the R.C. 2744.02(B)(1)-(5) exceptions apply only to negligence.  "Relying on this statutory language, Ohio courts have consistently held that political subdivisions are immune from intentional tort claims." *Bell v. City of Cleveland*, 2009 WL 541320, *3 (N.D. Ohio 2009). Therefore, to the extent that Plaintiff is alleging that Defendants' actions were intentional, University Height is entitled to immunity.

### 2.  The Individual University Heights Officials are Entitled to Immunity.

As employees of a political subdivision, Mayor Brennan, Law Director McConville, and Paul Siemborski are entitled to immunity under R.C. 2744.03(A)(6) with only three limited exceptions. "A [governmental employee] cannot be held personally liable for acts committed while carrying out his or her official duties unless one of the exceptions to immunity is established." *Szefcyk v. Kucirek*, 2016-Ohio-171, ¶ 11 (9th Dist.). The [employee's] immunity is presumed, and Plaintiff bears the burden of overcoming that presumption by showing an immunity exception exists. *Maggio v. Warren,* 2006-Ohio-6880 at ¶¶ 37–38, 43 (11th Dist.). Specifically, R.C. 2744.03(A)(6) provides in relevant part:

> In a civil action brought against ... an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, ... **the employee is immune from liability unless one of the following applies**:
>
> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
>
> (c) Liability is expressly imposed upon the employee by a section of the Revised Code."  (Emphasis added.)

Here, Plaintiff could not seek to hold University Heights liable for the alleged actions or its officials had they not been acting within the course and scope of their employment.  Further, Plaintiff has not cited, and Defendants are not aware of section of the Revised Code that expressly imposes civil liability on the individual officials under the circumstances of this case.

The only remaining immunity exception requires that Plaintiff demonstrate that the individual Defendants' actions were with malicious purpose, in bad faith, or were performed in a wanton or reckless manner. R.C. 2744.03(A)(6)(b).  Plaintiff alleges in his Complaint only one

allegation of maliciousness and one allegation of recklessness. These terms are not interchangeable or synonymous. *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, ¶ 31. "Malice is the state of mind under which a person intentionally does a wrongful act without a reasonable lawful excuse and with the intent to inflict injury or under circumstances from which the law will infer an evil intent." *Criss v. Springfield Tp.*, 56 Ohio St.3d 82, 84 (1990). Alternatively, reckless conduct is "characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another which is unreasonable under the circumstances and substantially greater than negligent conduct." *Id.*. at ¶ 34.

Here, the evidence fails to demonstrate any of the heightened levels of culpability necessary to remove political subdivision employee immunity. Maliciousness is alleged in regard to Plaintiff's claim for malicious prosecution, which, as demonstrated above, fails as a matter of law. Additionally, the sole allegation of recklessness is that Mayor Brennan acted recklessly in causing Plaintiff's severe emotional distress. As discussed above, Plaintiff cannot prove that he suffered actionable emotional distress, and Mayor Brennan's conduct was not outrageous. As Plaintiff has failed to prove that any exceptions to immunity apply, the individual officials are statutorily immune from Plaintiff's state law claims.

## V.    CONCLUSION

Based upon the foregoing, Defendants City of University Heights, Michael Brennan, Luke McConville, and Paul Siemborski respectfully request this Court grant summary judgment in favor of Defendants and dismiss all of Plaintiff's claims against Defendants with prejudice.

Respectfully submitted,

MAZANEC, RASKIN & RYDER CO., L.P.A.

*s/Zachary W. Anderson*
JAMES A. CLIMER  (0001532)
STEVEN K. KELLEY  (0023747)
ZACHARY W. ANDERSON  (0095921)
100 Franklin's Row
34305 Solon Road
Cleveland, OH  44139
(440) 248-7906
(440) 248-8861 – Fax
Email:   jclimer@mrrlaw.com
            skelley@mrrlaw.com
            zanderson@mrrlaw.com

*Counsel for Defendants City of University Heights,*
*Michael Dylan Brennan, Luke McConville, Paul*
*Siemborski*

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2024, a copy of the foregoing **University Heights Defendants' Motion for Summary Judgment** was filed electronically.  Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*s/Zachary W. Anderson*
ZACHARY W. ANDERSON  (0095921)

*Counsel for Defendants City of University Heights,*
*Michael Dylan Brennan, Luke McConville, Paul*
*Siemborski*

30