UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL GRAND, | ) | CASE NO.: 1:22-CV-01594 |
| | ) | |
| Plaintiff, | ) | JUDGE: BRIDGET MEEHAN BRENNAN |
| | ) | |
| vs. | ) | **DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| | ) | |
| CITY OF UNIVERSITY HEIGHTS, OHIO, et al., | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |

Now come Defendants, City of University Heights, Michael Dylan Brennan, Luke McConville, and Paul Siemborski, by and through undersigned counsel, and hereby submit their Brief in Opposition to Plaintiff Daniel Grand's Motion for Partial Summary Judgment.

Respectfully submitted,

MAZANEC, RASKIN & RYDER CO., L.P.A.

*s/Zachary W. Anderson*
JAMES A. CLIMER (0001532)
STEVEN K. KELLEY (0023747)
ZACHARY W. ANDERSON (0095921)
100 Franklin's Row
34305 Solon Road
Cleveland, OH 44139
(440) 248-7906
(440) 248-8861 – Fax
Email: jclimer@mrrlaw.com
skelley@mrrlaw.com
zanderson@mrrlaw.com

*Counsel for Defendants City of University Heights, Michael Dylan Brennan, Luke McConville and Paul Siemborski*

## LOCAL RULE 7.1(F) CERTIFICATION

Defendants City of University Heights, Michael Brennan, Luke McConville, and Paul Siemborski certify that the aforementioned case has been placed on the Complex Track per Court Order and that the memorandum adheres to the page limitation specifications of Local Rule 7.1(f) of the U.S. District Court of the Northern District of Ohio.

# TABLE OF CONTENTS


I. INTRODUCTION ....................................................................................1

II. LAW AND ARGUMENT ..........................................................................5

A. Defendants did not deprive Grand of his Free Exercise and Free Assembly rights. ....................................................................................5

1. Defendants did not violate Grand's First Amendment rights. .................... 5

2. Defendants did not violate Grand's rights to free exercise under the Ohio Constitution. ....................................................................... 9

B. Defendants did not deprive Grand of his Fourteenth Amendment rights. ............11

1. Defendants did not violate Grand's procedural due process rights. ......... 11

2. Defendants did not deprive Grand of the equal protection of the law. ......................................................................................... 17

C. Defendants did not violate RLUIPA. ..................................................19

D. Jurisdiction is improper for the Ohio Public Records Act ...........................21

E. Mayor Brennan is entitled to qualified immunity. .......................................21

III. CONCLUSION ........................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Bates v. Spongberg*, 547 F.2d 325, 329-30 (6th Cir. 1976) .......... 14
*Boddie v. Connecticut*, 401 U.S. 371, 379 (1971) .......... 13
*Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001) .......... 13
*Cantwell v. Connecticut*, 310 U.S. 296, 304 (1940) .......... 9
*Catholic Healthcare Intl., Inc. v. Genoa Charter Township*, 82 F.4th 442, 448 (6th Cir. 2023) .......... 15
*City of Los Angeles v. Heller*, 475 U.S. 796 (1986) .......... 7
*DeJonge v. Oregon*, 299 U.S. 353 (1937) .......... 5
*Doswell v. Smith*, No. 94-6780, 1998 WL 110161, at *6 (4th Cir. March 13, 1998) .......... 12
*Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990) .......... 7
*Flaim v. Medical College of Ohio*, 418 F.3d 629, 640 (6th Cir. 2005) .......... 14
*Humphrey v. Lane*, 89 Ohio St.3d 62, 68, 2000-Ohio-435 .......... 10
*John Doe v. Univ. of Cincinnati*, 872 F.3d 393, 407 (6th Cir. 2017) .......... 14
*Johnson v. Morales,* 946 F.3d 911, 921 (6th Cir. 2020) .......... 12
*Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978) .......... 7
*Morrissey v. Brewer*, 408 U.S. 471, 480 (1972) .......... 13
*Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 896 (6th Cir. 1991) .......... 13
*Pakdel v. City & Cnty. of San Fran.*, 141 S. Ct. 2226, 2230 (2021) .......... 15
*Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003) .......... 5
*Paterek v. Village of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) .......... 19
*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) .......... 21
*Prater v. City of Burnside*, 289 F.3d 417, 428 (6th Cir.) .......... 6, 12
*Provens v. Stark County Board of Mental Retardation & Development Disabilities*, 64 Ohio St.3d 252, 261 (1992) .......... 10
*Sause v. Bauer*, 138 S.Ct. 2561, 2563 (2018) .......... 5
*Seguin v. City of Sterling Heights*¸968 F.2d 584, 588 (6th Cir. 1992) .......... 18
*State ex rel. Synod of Ohio of United Lutheran Church in America v. Joseph*, 139 Ohio St. 229 (1942) .......... 11
*Swanson v. Guthrie Indep. Sch. Dist.*, 135 F.3d 694, 701 (10th Cir. 1998) .......... 6
*United States v. Guest* 383 U.S. 745, 770 (1966) .......... 12
*United States v. Lee*, 455 U.S. 252, n. 3 (1982) .......... 7
*United States v. Willard*, 211 F.Supp. 643, 654 (N.D. Ohio June 4, 1962) .......... 9
*Village of Arlington Heights v. Metro Housing Dev. Corp.*, 429 U.S. 252, 268-71 (1977) .......... 18
*Wellons v. Northwest Airlines, Inc.*, 25 Fed.Appx. 214, 220 (6th Cir. 2001) .......... 19
*Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003) .......... 5
*Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186 (1985) .......... 19
*Wolfe v. Vill. of Brice*, 37 F.Supp.2d 1021, 1026 (S.D. Ohio 1999) .......... 4
*Young Israel Org. of Cleveland v. Dworkin*, 133 N.E.2d 174 (8th Dist. 1956) .......... 10
*Zinermon v. Burch*, 494 U.S. 113, 127 (1990) .......... 12

**Statutes**

42 U.S.C. § 2000 .......... 19, 20
R.C. 2506.03 .......... 17
R.C. 3781.06 .......... 20
R.C. 713.13 .......... 13

**Other Authorities**

UHCO § 1250.02 .......... 19
UHCO § 12502.02 .......... 10
UHCO § 1274.01 .......... 6, 7, 19, 20

# BRIEF IN OPPOSITION

## I. INTRODUCTION

In his Motion for Partial Summary Judgment, Grand spends nine pages outlining what he alleges are "Undisputed Material Facts" (Plaintiff's Motion for Partial Summary Judgment, hereinafter "Pl. Motion", pp. 2-12). Grand goes to great lengths to frame the issue in this case as one in which he wanted to pray with a small group of friends in a repurposed room of his home a few times a week so that they would not need to walk outside in the heat or cold. (Declaration of Daniel Grand, attached to Pl. Motion, as Exhibit 1).

The undisputed evidence before the Court demonstrates otherwise. Grand announced the opening of a shul in his home "Shomayah Tefillah Beis Hakeneset" for the next Shabbos that same week, his desire to "introduce to you our rabbi" and that "you will see the shul entrance – keep a look out for the Orange Windows." (Shomayeh Tefillah Invitation, attached hereto as Exhibit B). In his invitation to the shul, Grand encouraged everyone to "[p]lease spread the word to whoever you feel might be interested in coming." (Ben Feldman Facebook Message, attached to Pl. Motion as Exhibit 3). This portion of the invitation is mysteriously absent from the version Grand forwarded to the City on January 21, 2021. (Grand email invitation, attached to Pl. Motion, as Exhibit 2).

Grand presents the "facts" in this case in a manner intentionally distorting and reversing their actual meaning. (*See,* Declaration of Daniel Grand, attached to Pl. Motion, as Exhibit 1). For example: in paragraph 5 of his Declaration, Grand defines a "shul" not only as "a large formal synagogue" but also as "a small residential home where [prayer] groups are held," and also "a room in a larger building where [prayer] groups are held." *Id*. Then in paragraph 12 of his statement, he states his "friends…knew he was converting [his] residential home into a formal

synagogue that would be ready to be inaugurated a few days later." *Id.* Yet in paragraph 14, Grand then declares "At no time did I ever want to convert my home into a formal synagogue. The notion that I can turn my residential home into a formal synagogue is absurd." *Id.*

Commonly the word synagogue has another meaning. The Oxford definition is "the building where a Jewish assembly or congregation meets for religious worship and instruction." *Oxford English Dictionary Online* (3d ed. Dec. 2015). The site vocabulary.com defines synagogue as " . . . a Jewish house of worship. A synagogue, sometimes called a temple or *shul*, is for Jews what a church is for Christians, or a mosque for Muslims, or a temple for Hindus. The word comes from the Greek roots *sun* 'together' and *agein* 'bring' – it's a building where worshippers are brought together." *Synagogue*, Vocabulary.com Dictionary, https:www.vocabulary.com /dictionary/synagogue (emphasis added). Indeed, in his "clarification letter" to neighbors, Grand explained that "the city informed me that zoning ordinances allowed for a 'synagogue' or 'shul' (**same word in Yiddish**) with a "Special Use Permit." (Deposition of Daniel Grand, hereinafter "Plaintiff's Depo.", relevant portions attached hereto as Exhibit A, at 97:3-101:12; March 3, 2021 Letter to Neighbors, attached to Defendant's Motion for Summary Judgment, as Exhibit E (emphasis added)).

These are the ordinary meanings commonly understood. Grand was opening a shul or synagogue, which is of course a house of worship, which of course requires a Special Use Permit ("SUP") under the local ordinance. Grand's reframing in his motion as merely "praying in his home" is contrary to Grand's conduct, Grand's words when taken on their face as commonly understood, and the record.

Similar instances of Grand misrepresenting the records are rife throughout his "Undisputed Material Facts." For example, Grand cites to the deposition testimony of University Heights'

Mayor Michael Brennan to allege that "Brennan did not give Grand the option to host a small prayer group without a SUP while the City determined whether he was opening a synagogue." (Pl. Motion, p. 3). However, Mayor Brennan directly refutes this assertion in that exact same testimony cited by Grand:

> Q: Before we get to that, did you consider telling Mr. Grand either in conversation with him or before this letter went out, that if he kept the prayer on Shabbos to a small group of people, he would not need a special-use permit?
> A: No, I don't - - no, I did not.
> Q: And do you believe if he had kept - - if he were to keep Shabbos prayer at his - - in a room at his home to ten or so people, that he would not need a special-use permit?
> A: Yeah, I would agree with that, **I would agree that a small prayer gathering, even a small regular prayer gathering is not the same as a shul** or a synagogue, and not the city's business at that point.

(Deposition of Michael Brennan, hereinafter "Mayor Brennan Depo.", relevant portions attached hereto as Exhibit C, at 89:10-24 (emphasis added)).

Similarly, Grand continuously mentions that he was unaware an SUP would be required to host a shul within his home, and the process to obtain one by University Heights deprived him of certain rights. However, Grand was present at a previous Planning Commission meeting wherein another "residential shul" was attempting to obtain an SUP to permit a shul within a home on University Parkway. (*Id.* at 34:11-35:1).

Grand also mischaracterizes the testimony of members of the community at the March 4 Planning Commission meeting and claims that they're attributable to people affiliated with Gesu. For example, Grand cites testimony of Adrenne Yelsky, claiming that she was suspicious of Grand when he invited her and her husband to Sabbath – in an overt attempt to make it look like Mrs. Yelsky is suspicious of Grand's religious practices. (Pl. Motion, p. 7). In fact, Mrs. Yelsky was expressing concern that Grand had been planning on converting his home into a synagogue for

some time, and she did not want anyone turning their residential block into a business area. (Transcript of March 4, 2021 Planning Commission Meeting, attached to Pl. Motion as Exhibit 12, 94:14-97:22).

> I have a few concerns, and that is that we have been living here waiting to see what is going to happen across the street from us for over two years and I'm very sympathetic, of course, that there were problems with contracts, et cetera, et cetera, but as neighbors, we have all lived through this and basically almost had like bets going as to what is going to go in this place.
>
> Particularly, we had some suspicions early on when literally two years ago when the Grands moved in and we were trying to be welcoming and walked across the street, as did our next door neighbor, and introduced ourselves and upon finding that were both Jewish, Mr. Grand at that point said, well, when we're all finished, you know, maybe you guys will come over here to Sabbath. That was two years ago, people.
> ***
> This is a project. This is not something that he woke up two weeks ago, as he said in this paper – now it will be four weeks ago – and went, dang, that's what I should do, is cut down on the walking.

*Id.* Grand takes similar liberties with the testimony of other people in order to present his selective version of the facts.

The Court should not require that the City or its officials to have first determined the secret meaning that Grand alone assigned to his words when those words have common meanings that everyone else understands. Likewise, Grand cannot be allowed to create an issue of fact from his own contradictory statements, which are made not only from his invitation to his new synagogue in his residence, to his special use permit application, to the testimony he adduced at the hearing on his application, to the very contradictions that lie within the declaration he made and submitted in support of his dispositive motion. "Self-serving affidavits, alone, are not enough to create an issue of fact sufficient to survive summary judgment." *Wolfe v. Vill. of Brice*, 37 F.Supp.2d 1021, 1026 (S.D. Ohio 1999).

Although Grand attempts to establish the facts as he sees fit as "undisputed" in his prayer for summary judgment, the fact that the parties filed cross-motions for summary judgment does not mean that summary judgment for either party in inappropriate. *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003). "When reviewing cross-motions for summary judgment, [the Court] must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003).

For these reasons and the reasons more fully set forth below, Grand's motion for summary judgment should be overruled.

## II. LAW AND ARGUMENT

### A. Defendants did not deprive Grand of his Free Exercise and Free Assembly rights.

#### 1. Defendants did not violate Grand's First Amendment rights.

Grand argues that the First Amendment protects a person's right to pray in their home, which the City does not dispute. University Heights has never attempted to prohibit Grand from praying in his home. However, notwithstanding Grand's attempt to reframe his opening of a shul or synagogue in his home as "praying in his home," even the case law Grand cited demonstrates that the right to pray in one's home is subject to restriction. In the case cited by Grand – *Sause v. Bauer*, 138 S.Ct. 2561, 2563 (2018) – involving a woman's attempt to pray whilst being arrested in her home, the Court held that "[t]here can be no doubt that the First Amendment protects the right to pray . . . . At the same time, there are clearly circumstances in which a police officer may lawfully prevent a person from praying at a particular time and place." Grand's citation to *DeJonge v. Oregon*, 299 U.S. 353 (1937) in an unclear attempt to loop the right to assembly into this analysis is unpersuasive, as it dealt with a public meeting of the Communist party which was raided by

police based on a statute criminalizing syndicalism. Extending this holding to a religious assembly in a private home, in violation of zoning ordinances, is not persuasive.

"The Free Exercise Clause . . . does not entitle a religious organization to special benefits." *Prater v. City of Burnside*, 289 F.3d 417, 428 (6th Cir.), citing *Swanson v. Guthrie Indep. Sch. Dist.*, 135 F.3d 694, 701 (10th Cir. 1998). Grand quotes the January 21, 2021 cease and desist order stating he was prohibited from using his home "as a place of *religious assembly and/or in operation of a shul or synagogue*" (emphasis added) in a misguided attempt to claim that the City prevented him from praying in his home. (Pl. Motion, p. 13).

The University Heights Codified Ordinances ("UHCO") require that a special permit ("SUP") be obtained from the Planning Commission to use a building located in a residential zoning district as a house of worship, one of many uses that is subject to this requirement. UHCO § 1274.01(b). Grand's published intentions prior to issuance of the "cease and desist order" through the point of the Planning Commission hearing indicated that he intended to open a shul[1] in his home – "the inauguration of the Shomayah Tefilah Beis Hakeneset" – with a rabbi presiding over the regular gathering, was clearly an act to create a place of religious assembly (i.e. a house of worship) in his home. (Shomayeh Tefillah Invitation, Exhibit B).

Despite these express intentions, Grand argues that he merely wanted to have a prayer group in his music room, and he tries to use the First Amendment as a sword to extract special treatment under the law. The proper standard, completely ignored by Grand, in determining whether the Free Exercise clause was violated under these circumstances, first requires that the court determine whether the applicable law, UHCO § 1274.01, is neutral and of general

[1] According to Grand's own published statements the words for synagogue and shul are the same in Yiddish. Plaintiff's Depo, Exhibit A, at 97:3-1-101:12; March 3, 2021 Letter to Neighbors, attached hereto as Exhibit B. See also Merriam-Webster Dictionary, online edition.

applicability. *See Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990). "[T]he right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religious prescribes (or proscribes).'"" *Id.* at 879, quoting *United States v. Lee*, 455 U.S. 252, n. 3 (1982). "We have never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate." *Id*. at 878-79.

As argued in Defendants' Motion for Summary Judgment, the UHCO are both facially neutral and generally applicable. (ECF 79, pp.6-8). The UHCO is clear, whenever a building within the residential zoning district is used as a house of worship (or for that matter numerous other religious and secular uses)[2], an SUP must be obtained. UHCO § 1274.01 (b). Furthermore, far from prohibiting these uses in residential areas, the ordinance actually *permits* these uses under certain circumstances when they would otherwise be prohibited. Therefore, Defendants need not demonstrate a compelling state interest that is narrowly tailored to survive this Court's scrutiny.

In a transparent attempt to avoid the *Smith* standard above, Grand attempts to argue that the actions of Mayor Brennan, through *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978), establish First Amendment violations. However, *Monell* is beside the point here because Plaintiff has not established an underlying Constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796 (1986).

Throughout his brief, Grand claims that the city prohibited him from conducting casual prayer meetings in his house. This is belied by the evidence that Grand himself cites. Grand sent a

[2] These include houses of worship, physical, behavioral or mental health care or education facilities, nurseries, day care centers, orphanages, senior housing and care facilities, certain condominium conversions, certain office, research and high-tech production facilities and any other use that can be reasonably effectuated.

communication that reached the Mayor which expressed every intention of starting a house of worship rather than a casual prayer group. (Ben Feldman Facebook Message, attached to Pl. Motion, as Exhibit 3). Having done so, the Law Director forwarded to Grand a letter indicating that the use of the premises "as a *place of religious assembly* and/or in operation as a *shul or synagogue* is not permitted under the City's ordinances." (January 21, 2021 Cease and Desist Letter, attached to Defendant's Motion for Summary Judgment, as Exhibit C) (emphasis added). Grand cites Mayor Brennan's testimony concerning a telephone conversation he had with Grand and implies that he told Grand he could not conduct an informal prayer group at his home. (Pl. Motion, p. 14). This seriously miscasts Mayor Brennan's testimony. In fact, Mayor Brennan testified that he told Grand:

> And I made clear to him that we have requirements in the City of University Heights, that one seek and obtain a special-use permit before operating a **house of worship**, yeah, in our city.

(Mayor Brennan Depo., Exhibit C, at 82:4-8) (emphasis added). Having received the letter, Grand elected to apply for an SUP consistent with the announced intentions in his letter to open a shul. (Plaintiff's Depo., Exhibit A, at 113:9-116:3). Grand went through the SUP hearing process *then* elected to withdraw his application claiming that he merely intended to conduct an informal prayer group. *Id.* at 135:3-138:22; (March 23, 2021 Withdrawal Email, attached hereto as Exhibit D). He then cites statements by Mayor Brennan at what was to be the continued hearing informing the persons present that they were free to report activities "consistent with those of a *house of assembly*." (Pl. Motion, pp. 10-11).

In short, Plaintiff has not cited a single instance in which he was told that he could not conduct informal prayer gatherings in his home without an SUP nor has he presented any evidence

whatsoever that the SUP process violated his First Amendment rights to freedom of assembly or free exercise of his religion.

Finally, insofar as Grand frames the City's alleged restrictions on him praying in his home as a prior restraint, this also fails. "Under the First Amendment of our Constitution, freedom to believe in and to adhere to one's chosen form of religion cannot be restricted by law, but freedom to act in accordance with one's religious beliefs necessarily 'remain subject to regulation for the **protection of society**.'" *United States v. Willard*, 211 F.Supp. 643, 654 (N.D. Ohio June 4, 1962), quoting *Cantwell v. Connecticut*, 310 U.S. 296, 304 (1940). Land use regulations that require a permit to operate in a residential district operate to the benefit and protection of society, as having many more people inside a residence than anticipated or intended necessitates additional safety measures. Indeed, when Mayor Brennan was invited to another residential shul in University Heights, he witnessed upwards of 130 people in a single room. (Mayor Brennan Depo., Exhibit C, at 55:11-14). The City, wanting to ensure that property safety measures are considered and utilized, through review by the Planning Commission and issuance of an SUP, is a necessary regulation for the protection of society. Enforcing the City's neutral and generally applicable ordinances in the name of public safety do not infringe upon Grand's religious rights and therefore summary judgment is inappropriate on his First Amendment claims.

**2. Defendants did not violate Grand's rights to free exercise under the Ohio Constitution.**

Grand also argues that rights granted to him under the Ohio Constitution have been violated. (Pl. Motion, p. 19). First of all, as noted in Defendants' Motion for Summary Judgment, Ohio's Constitution provides no private right of action for damages absent authorization in the Constitution or enabling legislation. See *Provens v. Stark County Board of Mental Retardation &*

*Development Disabilities*, 64 Ohio St.3d 252, 261 (1992). Plaintiff has provided no authority permitting him to pursue this claim under the Ohio Constitution or any enabling statute.

"To state a prima facie free exercise claim, the plaintiff must show that his religious beliefs are truly held and that the government enactment has a coercive affect against him in the practice of his religion." *Humphrey v. Lane*, 89 Ohio St.3d 62, 68, 2000-Ohio-435. In *Humphrey*, a Native American prisoner expressed his religiously held belief of maintaining long hair, which was at odds with the Ohio Department of Rehabilitation and Correction ("ODRC") grooming policies. Under the Ohio Constitution, a state enactment must serve a compelling state interest and be the least restrictive means of furthering that interest. *Id.* at 68. The Supreme Court of Ohio found that ODRC had a compelling interest in maintaining the length of prisoner's hair, but an accommodation existed by allowing prisoners to tuck their hair into and under their uniform, therefore an outright ban was not narrowly tailored. *Id*. at 70-71.

In support of his claim, Grand argues that merely preventing him from hosting "a prayer group in his home" has a coercive effect against him in the practice of his religion. (Pl. Motion, p. 19). As noted above, Grand has not provided any evidence whatsoever that Defendants prohibited him from conducting private prayer gatherings in his home with or without an SUP.

Grand cites two cases to support his position that Ohio courts have a strong history of sensitivity to orthodox Judaism through the need to walk on the Shabbos. However, those cases can be distinguished from the instant case. In *Young Israel Org. of Cleveland v. Dworkin*, 133 N.E.2d 174 (8th Dist. 1956) the court looked at the undeveloped nature of the proposed site of the synagogue and surrounding area, the amount of other possible land uses in the residential district by right, and the community's need at that time for a place of worship. *Id.*

In contrast, UHCO § 12502.02 merely permits: one-family dwellings, buildings owned by University Heights, and planned one-family residential areas in a residential zone. All other uses require some type of permit to operate within a U-1 residential district. Additionally, University Heights has many places where Orthodox Jews can worship and Grand is free to pick where he chooses to attend. (Plaintiff's Depo., Ex. A, at 46:10-47:4). Unlike the cases cited, wherein the plaintiffs were attempting to build houses of worship in undeveloped parts of town, Grand is attempting to turn his single-family residence into a shul so that he can hold worship services there.

The seminal case on which all of these cases rely is *State ex rel. Synod of Ohio of United Lutheran Church in America v. Joseph*, 139 Ohio St. 229 (1942), wherein the Supreme Court of Ohio held:

> 2. A municipal zoning ordinance which provides that "in class I districts, single family dwelling houses only***shall be permitted ***provided that***churches, schools, public libraries***may be erected and used within such district by special permit granted by the zoning commission and the village council' permits churches to be erected in class I districts but subject to the imposition of reasonable restrictions.

*Id.* at paragraph 2 of the syllabus (emphasis in original). This is precisely what happened here, however Grand withdrew his application for an SUP before it was ever reviewed. Plaintiff's Depo., Exhibit A, at 135:3-138:22; March 23, 2021 Withdrawal Email, Exhibit D). The actions of Defendants were reasonable in light of the circumstances and applicable law; therefore, their decisions did not have a coercive effect on Grand's practice of religion and summary judgment is inappropriate.

**B. Defendants did not deprive Grand of his Fourteenth Amendment rights.**

**1. Defendants did not violate Grand's procedural due process rights.**

Grand next argues that the City's policies and the actions of Defendants deprived him of procedural due process. (Pl. Motion, pp. 20-26). In support of his allegation, Grand cites *United*

*States v. Guest* to allege that "[i]t cannot be disputed that Grand's freedom to pray and assemble in his home is a protected liberty interest." 383 U.S. 745, 770 (1966); (Pl. Motion, p. 20). There is no question that the rights to pray and assemble are protected liberty interests. However, there is no evidence that Grand was denied these rights at all, much less without being afforded procedural due process.

Where a plaintiff fails to prove the Constitutional claim underlying his procedural due process allegation, the due process claim similarly fails. *See Prater v. City of Burnside*, 289 F.3d 417, 431-32 (6th Cir. 2002). "[P]laintiff's procedural due process claim, based upon on the deprivation of his liberty interests under the Free Exercise Clause, was 'subsumed' within his free exercise claim because 'if the [free exercise] claim failed, so must the due process claim ….'" *Id.*, quoting *Doswell v. Smith*, No. 94-6780, 1998 WL 110161, at *6 (4th Cir. March 13, 1998).

Here, as demonstrated above, Grand has failed to establish a valid First Amendment violation by the Defendants. He claims that he was denied the right to pray and conduct informal prayer gatherings in his home without an SUP but this is belied by his own evidence. Therefore, his procedural due process claim fails as well.

Grand then launches into a fundamental fairness analysis and argues that the process afforded by the March 4 Planning Commission meeting was inadequate. (Pl. Motion, pp. 21-26). Grand argues that depriving him of the right to operate a shul out of his home without providing a hearing until the next Planning Commission meeting alone constituted a violation of procedural due process and entitles him to summary judgment. (Pl. Motion, p. 21). In support of this, Grand cites to *Johnson v. Morales* and an excerpt that "it is a general rule that due process 'requires some kind of a hearing *before* the State deprives a person of liberty or property.'" 946 F.3d 911, 921 (6th Cir. 2020), quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). This presupposes, however,

that Grand had a legitimate right to operate a shul or synagogue in his home without an SUP – he did not.

In response to information that Grand intended to open a synagogue or shul in his home, Mayor Brennan pointed out that an SUP was necessary. (January 21, 2021 Cease and Desist Letter, attached to Defendant's Motion for Summary Judgment, as Exhibit C). Grand elected to apply for the permit and eventually decided to withdraw his application before the process was complete. Furthermore, Mayor Brennan's actions were appropriate in light of the imminent violation of the UHCO under Ohio law.

> No person shall erect, construct, alter, repair, or maintain any building . . . in violation of any zoning ordinance or regulation enacted pursuant to sections 713.06 to 713.12, inclusive, of the Revised Code, or Section 3 of Article XVIII, Ohio Constitution. In the event of any such violation, or imminent threat thereof, the municipal corporation . . . in addition to any other remedies provided by law, may institute a suit for injunction to prevent or terminate such violation.

R.C. 713.13. Therefore, Mayor Brennan acted within the dictates of his duties as a mayor and Ohio law when issuing the cease and desist to immediately enjoin Grand's opening of his shul.

Grand next alleges that improper notice and an unfair hearing also violated his due process rights. (Pl. Motion, p. 21). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). "The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971). The Sixth Circuit has held that in the context of administrative zoning decisions, "the process must provide sufficient notice to affected landowners and an opportunity to be heard in opposition." *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001), quoting *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 896 (6th Cir. 1991). Here, Grand complains about the public response to his request and how the law requires notice to the community.

However, University Heights and Mayor Brennan are not responsible for the words or actions of private citizens.

Grand does not allege that he was denied a hearing, instead he argues that the hearing on his application for an SUP was unfair. (Pl. Motion, p. 22). First Grand argues that he was not apprised of the quasi-judicial nature of the hearing, and therefore he was deprived of his substantive due process rights, citing to *John Doe v. Univ. of Cincinnati*, 872 F.3d 393, 407 (6th Cir. 2017). However, the holding in *John Doe*, an expanded version of the quote that Grand included, limits its decision to schools – "[a] **school's** departure from its own hearing rules amounts to a due process violation only when the departure 'results in a procedure which itself impinges on due process rights." *Id.*, citing *Flaim v. Medical College of Ohio*, 418 F.3d 629, 640 (6th Cir. 2005) (another school case). Indeed, in the same context, the Sixth Circuit has stated:

> It is not every disregard of its regulations [or assurances] by a public agency that gives rise to a cause of action for violation of constitutional rights. Rather, it is only when the agency's disregard of its rules [or assurances] results in a procedure which itself impinges upon due process rights that a federal court should intervene in the decisional processes of state institutions.

*Bates v. Spongberg*, 547 F.2d 325, 329-30 (6th Cir. 1976).

Here, Grand argues that the City's failure to notify him of the nature of the hearing violated his rights. However, based on the evidence before the Court, Grand was accompanied at the hearing by counsel and was able to present his case and enter evidence at his discretion. Once he rested his case, other members of the community were afforded their opportunity to present their own information. At the end of the March 4 hearing the Planning Commission tabled the decision on Grand's SUP and he later withdrew it prior to any determination being made. (Plaintiff's Depo., Exhibit A, at 135:3-138:22; March 23, 2021 Withdrawal Email, Exhibit D). Having failed to carry through with the hearing process, Plaintiff cannot say that he was denied due process. *See Catholic*

*Healthcare Intl., Inc. v. Genoa Charter Township*, 82 F.4th 442, 448 (6th Cir. 2023) (holding that "[i]n land-use cases, the necessary event is simply that the government has adopted a "definitive position" as to "how the regulations at issue apply to the particular land in question.", citing *Pakdel v. City & Cnty. of San Fran.*, 141 S. Ct. 2226, 2230 (2021) (cleaned up)). Here, Grand is free to reapply for the SUP and no determination was ever made as to his application, therefore University Heights has not adopted a "definitive position." *Id.*

Additionally, if Grand was eventually denied the SUP, he could have appealed the decision to court under R.C. Chapters 2505 and 2506. In short, Grand has failed to demonstrate how the quasi-judicial nature of the hearing affected his rights and ability to present his SUP permit request.

Second, Grand alleges that the hearing he was provided was unfair for a number of reasons. (Pl. Motion, p. 23). Chief amongst these claims is the allegation that Mayor Brennan was biased and did not believe Grand. This ignores the fact that Brennan does not hold plenary power over the Planning Commission and each member is entitled to vote as they see fit. Indeed, each Planning Commission member that provided testimony in this case had a different opinion of the matter, separate and apart from what Mayor Brennan allegedly believed. Deposition of April Urban, relevant portions attached hereto as Exhibit E, at 34:2-35:9; Deposition of Paul Siemborski, relevant portions attached hereto as Exhibit F, at 52:3-56:22.

Additionally, Grand cites to deposition testimony of Mayor Brennan to support this argument but fails to further expound on why the Mayor made the statements. (Pl. Motion, pp. 23-24). Based on Grand's previous attempt at bribing the mayor, along with his prior interactions with the Planning Commission and the Board of Zoning Appeals, Mayor Brennan found that Grand was not forthcoming and would constantly attempt to game the system in his favor. Mayor Brennan Depo., Exhibit C, at 81:6-83:10; 92:8-93:24.

Grand argues at length that he was not afforded assistance in preparing his application and certain items were not included in evidence. First of all, Grand has provided no legal authority for the claim that he is entitled to assistance in preparing his application. Furthermore, Grand fails to mention that he has extensive experience with zoning matters from his employment in New York and had in fact been before the Planning Commission and Board of Zoning Appeals in University Heights numerous times. (Plaintiff's Depo., Exhibit A, at 9:6-21:13; Mayor Brennan Depo., Exhibit C, at 52:3-53:13).

Grand's failure to receive assistance from University Heights with his SUP application is attributable solely to him. Typically, Kelly Thomas, Clerk of Council, will assist applicants on an as-requested basis. (Deposition of Kelly Thomas, relevant portions attached hereto as Exhibit G, 12:18-25). Additionally, if a matter is tabled for deficiencies that need to be remedied, applicants can follow-up with Ms. Thomas for assistance regarding how to correct their issues. (*Id.* at 51:3-52:22). Here, Grand alleges that he had "repeated requests for assistance." (Pl. Motion, p. 25). In support, Grand cites to his Exhibits 7 and 8 – the email to Mayor Brennan requesting an SUP (Exhibit 7) and his SUP application (Exhibit 8). He concludes both of these messages with statements that if he forgot something, to please let him know. This is not the type of assistance that Ms. Thomas mentioned in her deposition. Grand has provided no evidence that after filing his application he ever reached out to the City regarding any deficiencies. Instead, he requested an SUP through an email to Mayor Brennan and paid the filing fees, hoping to expedite the approval process. Grand did not seek to meet with the City on a pre-administrative basis or seek any input or instruction. Instead, he attended the Planning Commission meeting with his attorney and presented his application as he sought fit, undoubtedly relying on his wealth of experience with

zoning boards. Requesting assistance with preparing and pursuing an application is a responsibility of the applicant, not the City.

Finally, Grand's arguments that certain evidence was either excluded or not entered into evidence and considered by the Planning Commission are baseless. Despite his claim that Mayor Brennan precluded any further introduction of evidence or kept items out, the Mayor does not have unilateral authority to accept or reject additional evidence when the Commission is not in session. Instead, the Planning Commission, as a body, during a publicly convened meeting, determines what is in the record and to be considered in rendering a decision. Indeed, in the next sentence after what Grand cites, Mayor Brennan wrote: "The Planning Commission may discuss whether additional materials are needed to make the decision on the merits. If such materials are deemed necessary, **you will be given sufficient time to provide them**." (March 17, 2021 Rosenfeld email to Grand, attached to Pl. Motion, Exhibit 27) (emphasis added). Here, Grand failed to attend the second Planning Commission meeting on March 23 and instead decided to withdraw his application. Furthermore, any issue with a refusal to introduce or consider evidence before the Planning Commission would have created an issue for appeal and could have been addressed there. *See* R.C. 2506.03. Therefore, any argument regarding evidence that was impermissibly excluded is unfounded and not established in fact. Grand was not deprived of procedural due process and his request for summary judgment should be denied.

**2. Defendants did not deprive Grand of the equal protection of the law.**

In arguing that his equal protection rights were violated, Grand string cites a number of cases in an attempt to demonstrate that he was discriminated against. However Grand fails to mention the applicable standard to establish an equal protection claim, let alone demonstrate that there is no genuine issue of material fact.

A number of the cases cited by Grand merely deal with the Fair Housing Act or other laws prohibiting discrimination, without any mention of equal protection. Additionally, the cases which mention equal protection establish that a showing of discriminatory impact is insufficient, instead discriminatory motive must be shown. *See Village of Arlington Heights v. Metro Housing Dev. Corp.*, 429 U.S. 252, 268-71 (1977).

Here, Grand claims that "it is undeniable that the record contains strong evidence that the City's decision to shut down Grand's prayer gorup (sic) was at least partially motivated by the fact that Grand is Jewish." (Pl. Motion, p. 27). However, the action which prohibited Grand from operating a shul in his home, the cease and desist letter sent by Mayor Brennan advising Grand to terminate such behavior, has absolutely no discriminatory motivation whatsoever. Additionally, the quotes Grand attempts to attribute to the Planning Commission or City are from items submitted by members of the community or otherwise and cannot be attributed to any actions taken by the City, as discussed in the Introduction, *supra*. Indeed, at the depositions for the Planning Commission members that testified, Grand attempted to root out any evidence of discriminatory motivation and each member denied relying on any such items. Deposition of April Urban, Exhibit E, at 35:3-9; Deposition of Paul Siemborski, Exhibit F, at 74:12-23; 94:17-95:22. Grand's repeated attempts to demonstrate that he was treated differently due to his religion do not pass muster and do not entitle him to summary judgment.

Additionally, when challenging a zoning regulation "as applied" in an equal protection claim, plaintiffs must prove that they were injured by a final decision. *See Seguin v. City of Sterling Heights*¸968 F.2d 584, 588 (6th Cir. 1992) ("absent an application for a variance and a final decision on that application, we are unable to determine, at this juncture, whether the city will ultimately deny plaintiffs the equal protection of the laws", citing *Williamson County Regional*

*Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186 (1985)). This is axiomatic, as the plaintiff must demonstrate that they were treated less than equally in the denial of his or her application for an SUP. Here, Grand withdrew his application prior to any determination being made, therefore this Court is unable to determine whether he was treated unequally or not.

Similarly, Grand has failed to prove that anyone similarly situated was treated differently than him. (Plaintiff Depo. Exhibit A, at 189:12-193:25). Establishing a comparator is a necessary element of an equal protection claim that Grand entirely ignores. *Paterek v. Village of Armada*, 801 F.3d 630, 650 (6th Cir. 2015); *Wellons v. Northwest Airlines, Inc.*, 25 Fed.Appx. 214, 220 (6th Cir. 2001). Defendants' argument on this subject is more fully addressed in their Motion for Summary Judgment and is incorporated herein by reference. Therefore, Grand was not deprived equal protection and summary judgment in his favor should be denied.

**C. Defendants did not violate RLUIPA.**

The Religious Land Use and Institutionalized Persons Act ("RLUIPA") requires, in relevant part, that the court review with strict scrutiny any governmental land use regulation that places a substantial burden on the religious exercise of any person. 42 U.S.C. § 2000cc *et seq.* In arguing that he is entitled to summary judgment under RLUIPA, Grand provides language from the law and then summarily concludes that University Heights' policies substantially burdened his exercise of religion. Grand argues that UHCO § 1250.02(b) permits the building of municipal buildings within a residential zone as a right, whereas houses of worship, under UHCO § 1274.01(b)(1) requires that houses of worship require a special use permit.

First, Grand fails to mention that under UHCO § 1274.01(b)(1), senior care facilities, behavioral therapy centers, and many other uses also require an SUP, not just houses of worship. Second, this Court can plainly see that buildings constructed for use by a municipality in a

residential neighborhood are likely to comply with building codes and other safety measures. Meanwhile, when a private organization is using a building in a residential zone for purposes other than residential use, the municipality cannot assume that the organization is following the proper building code to ensure the safety of its patrons. Stated otherwise, there is a compelling interest in the city scrutinizing uses beyond residential use in a residential zone to ensure that code enforcement, safety and other measures that apply to other zoning districts are followed when applied elsewhere.

Grand's argument that University Heights permitted him to build a music room, but once he decided to use that same room for a prayer group, an SUP was required, precisely illustrates this point. (Pl Motion, p. 29). As noted above, the City never denied Grand the right to use his house for informal prayer groups. However, more intensive assembly uses such as places of worship trigger important safety and quality of life concerns regarding the effect on neighboring properties, number of exits, fire safety measures, and many other safety features. Use of a building as a place of assembly additionally demands application of additional regulations and requirements under the Ohio Building Code. *See* R.C. Chapter 3781 ("Any building that may be used as a place of . . . assembly . . . shall be so constructed, equipped, and maintained that they shall be safe and sanitary for their intended use and occupancy." R.C. 3781.06).

Insofar as RLUIPA's antidiscrimination provision under 42 U.S.C. § 2000cc(b)(2) applies the equal protection analysis under the Fourteenth Amendment, Grand fails to establish that he was treated less than equally or discriminated against due to his Jewish faith, as provided above. Finally, while Grand argues that UHCO § 1274.01(f) unreasonably limits religious assemblies, he fails, again, to mention that this section also applies to mental healthcare facilities, senior housing, residential behavioral healthcare facilities, offices, etc. *See* UHCO § 1274.01(b). Furthermore,

UHCO § 1274.01(f) is not a restriction at all. The fact of the matter is that it *permits* under certain circumstances uses that would not otherwise be allowed in residential districts.

**D. Jurisdiction is improper for the Ohio Public Records Act**

As addressed in Defendants' Motion for Summary Judgment, this Court is not the proper venue in which to bring an action for an alleged violation of the Ohio Public Records Act. (ECF 79, pp. 22-23). In order to maintain that action, a mandamus action must be filed within a court of common pleas, court of appeals, or the Supreme Court of Ohio. R.C. 149.43(C)(1)(a-b). Therefore, this Court is without jurisdiction to provide Grand any relief and summary judgment should be granted in favor of Defendants with regard to this claim.

**E. Mayor Brennan is entitled to qualified immunity.**

In his Motion, Grand fails to articulate why Mayor Brennan is not entitled to qualified immunity, barring his federal claims. Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). As mentioned in Defendants' Motion for Summary Judgment, incorporated herein by reference – Mayor Brennan is entitled to qualified immunity by virtue of being a government official. (Defendants' Motion, pp. 20-21). None of Grand's constitutional rights were violated. Assuming arguendo that a violation did take place, Plaintiff has not carried his burden to come forward with case law demonstrating that Mayor Brennan or any reasonable official under the same circumstances would have understood that his or her conduct violated clearly established law. Therefore, Mayor Brennan is immune from Grand's federal causes of actions.

## III. CONCLUSION

Grand has failed to establish that he is entitled to judgment in his favor as a matter of law for the select causes of action upon which he moved for summary judgment, and the Court should deny his Motion for Partial Summary Judgment in its entirety.

Respectfully submitted,

MAZANEC, RASKIN & RYDER CO., L.P.A.

*s/Zachary W. Anderson*
JAMES A. CLIMER (0001532)
STEVEN K. KELLEY (0023747)
ZACHARY W. ANDERSON (0095921)
100 Franklin's Row
34305 Solon Road
Cleveland, OH 44139
(440) 248-7906
(440) 248-8861 – Fax
Email: jclimer@mrrlaw.com
skelley@mrrlaw.com
zanderson@mrrlaw.com

*Counsel for Defendants City of University Heights, Michael Dylan Brennan, Luke McConville and Paul Siemborski*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2024, a copy of the foregoing ***Defendants' Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment*** was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/Zachary W. Anderson*
ZACHARY W. ANDERSON (0095921)

*Counsel for Defendants City of University Heights, Michael Dylan Brennan, Luke McConville and Paul Siemborski*