UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL GRAND, | ) | CASE NO.:  1:22-CV-01594 |
| | ) | |
| Plaintiff, | ) | JUDGE:  BRIDGET MEEHAN BRENNAN |
| | ) | |
| vs. | ) | **DEFENDANTS' REPLY IN SUPPORT** |
| | ) | **OF MOTION FOR SUMMARY** |
| CITY OF UNIVERSITY HEIGHTS, | ) | **JUDGMENT** |
| OHIO, et al., | ) | |
| | ) | |
| Defendants | ) | |

Now come Defendants, The City of University Heights, Michael Brennan, Luke McConville, and Paul Siemborski, by and through counsel, Mazanec, Raskin and Ryder Co., L.P.A., and hereby submit their Reply in Support of their Motion for Summary Judgment. Defendant reasserts they are entitled to summary judgment pursuant to Federal Rule of Civil Procedure 56(c) as there exists no genuine issues of material fact and Defendants are entitled to summary judgment as a matter of law. The Reply is supported by the attached Reply in Support which is fully incorporated herein.

Respectfully submitted,

MAZANEC, RASKIN & RYDER CO., L.P.A.

*s/Zachary W. Anderson*
JAMES A. CLIMER  (0001532)
STEVEN K. KELLEY  (0023747)
ZACHARY W. ANDERSON  (0095921)
100 Franklin's Row
34305 Solon Road
Cleveland, OH  44139
(440) 248-7906
(440) 248-8861 – Fax
Email:   jclimer@mrrlaw.com
            skelley@mrrlaw.com
            zanderson@mrrlaw.com

*Counsel for Defendants City of University Heights, Michael Dylan Brennan, Luke McConville and Paul Siemborski*

## **<u>TABLE OF CONTENTS</u>**

I.      RELEVANT FACTS ........................................................................................................2

II.     SUMMARY JUDGMENT STANDARD.........................................................................5

III.    LAW & ARGUMENT.....................................................................................................5

      A.      Summary Judgment is Appropriate on Grand's First Amendment Claims. ...........5

      B.      Summary Judgment is Appropriate on Grand's Fourth Amendment
              Unreasonable Search Claim.....................................................................................9

      C.      Summary Judgment is Appropriate on Grand's Fourteenth Amendment
              Claims. ...................................................................................................................10

           1.      Defendants did not violate Grand's right to due process. ......................... 10

           2.      Defendants did not deny Grand Equal Protection of the Law. ................. 12

      D.      Summary Judgment is Appropriate on Grand's RLUIPA Claims.........................13

      E.      The FACE Act does not apply and Summary Judgment is Appropriate for
              Grand's Claim........................................................................................................18

      F.      Summary Judgment is Appropriate for Grand's Conspiracy Claim......................19

      G.      Summary Judgment is Appropriate for Grand's Public Records Act Claim.........20

      H.      Defendants are Entitled to Immunity on Grand's Claims.....................................21

IV.     CONCLUSION..............................................................................................................22

# **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)................................................... 5

*Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) ...................................... 19

*Boddie v. Connecticut*, 401 U.S. 371, 379 (1971) ........................................ 11

*Bowen v. Roy*, 476 U.S. 693, 703 (1986)............................................................................. 6

*Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001) ........................................ 11

*Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Commission*, 768 F.3d 183, 198 (2d Cir. 2014) ..................................................................................... 17

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531-532 (1993) .... 6, 7, 8, 9

*Civil Liberties for Urban Believers*, 342 F.3d 752, 762 (7th Cir. 2003) ..................................... 13

*Davis v. United States*, 328 U.S. 581, 593-94 (1946)............................................................ 10

*Doswell v. Smith*, No. 94-6780, 1998 WL 110161, at *6 (4th Cir. March 13, 1998)................... 12

*Employment Division, Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 884 (1990)................................................................................................................................ 8

*Farm Labor Organizing Commt. v. Ohio State Hwy. Patrol*, 308 F.3d 523, 533-34 (6th Cir. 2002)........................................................................................................................... 12

*Fulson v. City of Columbus*, 801 F.Supp. 1, 4 (S.D. Ohio 1992) ................................................... 2

*Gillette v. United States*, 401 U.S. 437, 452 (1971) ............................................................... 6

*Harsco Corp. v. Tracy*, 86 Ohio St.3d 189, 193, 1999-Ohio-155 ................................................ 12

*Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 148 (1987)............................. 6

*Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991) ..................................................................................................................... 19

*Jackson v. City of Cleveland*, 925 F.3d 793, 818 (6th Cir. 2019)........................................ 19

*Katz v. United States*, 389 U.S. 347, 360 (1967) ................................................................... 10

*Living Water Church of God v. Charter Tp. of Meridian*, 258 Fed.Appx. 729, 733 (6th Cir. 2007) ................................................................................................................................ 13

*Livingston Christian Schools v. Genoa Charter Twp.*, 858 F.3d 996, 1004-05 (6th Cir. 2017) ............................................................................................................................... 14

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ................... 5

*Morrissey v. Brewer*, 408 U.S. 471, 480 (1972) ................................................................... 11

*Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 896 (6th Cir. 1991)......... 11

*Paterek v. Village of Armada*, 801 F.3d 630, 650 (6th Cir. 2015)............................................... 12

*Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431-32 (6th Cir. 2002) ........................... 11, 12, 14

*Pray v. Sandusky*, 49 F.3d 1154, 1157 (6th Cir. 1995)................................................................ 21

*Rapanos v. United States*, 547 U.S. 715, 738 (2006)................................................................ 15

*Reichle v. Howards*, 566 U.S. 658, 664 (2012) ...................................................................... 21

*Rudd v. City of Norton Shores, Michigan*, 977 F.3d 503, 517 (6th Cir., 2020)........................... 19

*Santoli v. Village of Walton Hills*, No. 1:12CV1022, 2014 WL 1093093, *2 (N.D. Ohio Mar. 18, 2014) ................................................................................................................ 20

*Saucier v. Katz*, 533 U.S. 194, 201 (2001) ......................................................................... 21

*Sause v. Bauer*, 138 S. Ct. 2561, 2563 (2018) ...................................................................... 14

*Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) ................................................................ 10

*Siefert v. Hamilton County*, 951 F.3d 753, 767-68 (6th Cir. 2020) ............................................. 19

*Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) .......................................................... 19

*Taylor v. City of Saginaw*, 933 F.3d 328, 332 (6th Cir. 2019) ....................................................... 9

*Wellons v. Northwest Airlines, Inc.*, 25 Fed.Appx. 214, 220 (6th Cir. 2001) ............................. 12

*White v. Pauley*, 137 S. Ct. 548, 551 (2017) ............................................................................... 21

*Wolfe v. Vill. of* Brice, 37 F.Supp.2d 1021, 1026 (S.D. Ohio 1999) .............................................. 5

## Statutes

18 U.S.C. § 248 ............................................................................................................................. 18

42 U.S.C. § 1983 ........................................................................................................................... 19

42 U.S.C. §2000 ............................................................................................................................ 13

Fed. R. Civ. P. 56(a) ....................................................................................................................... 5

R.C. 149.43 ................................................................................................................................... 20

R.C. 3781.06 ................................................................................................................................. 17

## Other Authorities

UCHO 1274.01(d) ............................................................................................................................ 9

UHCO 1274.01 ........................................................................................................................... 6, 17

UHCO 1274.01(b) ............................................................................................................................ 7

## LOCAL RULE 7.1(F) CERTIFICATION

Defendants City of University Heights, Michael Brennan, Luke McConville, and Paul Siemborski certify that the aforementioned case has been placed on the Complex Track per Court Order and that the memorandum adheres to the page limitation specifications of Local Rule 7.1(f) of the U.S. District Court of the Northern District of Ohio.

## **REPLY IN SUPPORT**

### I.   RELEVANT FACTS

In a recurrent attempt to create a genuine issue of material fact to survive summary judgment, Grand repeatedly misrepresents the facts and cites to self-serving statements. These statements follow some general trends and are addressed below. The attempt to create a genuine issue through distorting the facts does not survive review, as "[t]he non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts." *Fulson v. City of Columbus*, 801 F.Supp. 1, 4 (S.D. Ohio 1992).

First, Grand repeatedly alleges that his only intention was to host a "small" prayer group, and there is no evidence that he ever intended to establish a formal house of worship in his home. (Plaintiff's Brief in Opposition, hereinafter "Pl. Brief in Op.", p. 1). This statement is always qualified as a "few," a "small group," or "a prayer group" to minimize his initial intention to create and operate a shul in his residential home on Miramar Boulevard in University Heights. However, in his Declaration, attached to his Motion for Partial Summary Judgment as Exhibit 1, Grand states that he sent his email to approximately 12 people. (Plaintiff's Appendix of exhibit, hereinafter "Pl. Appx.", p. 3, ¶ 8; ECF 82). Further, while Grand repeats that it was sent to a few friends, the Facebook message forwarded to Mayor Brennan from Ben Feldman, clearly demonstrates that Grand's invitation states "And Please spread the word to whomever you feel might be interested in coming." (Pl. Appx, p. 9). Mysteriously, this portion, and others claiming that "you will see the **shul** entrance" and "The **shul** is being put together . . . .", are absent from the invitation when Grand himself forwarded it to Mayor Brennan. (Pl. Appx., p. 7) (emphasis added). Although Grand has consistently downplayed the prospective attendance at his shul, his own written words

2

establish that he was hoping to have the largest gathering possible. Tellingly, the email he sent to this "small group" of friends has never been produced and is not included in the record.

Second, Grand consistently alleges that Defendants have produced no evidence that he intended to do anything other than host a prayer group in his home. (Pl. Brief in Op., p. 11). However, the previously mentioned invitation clearly invites members of the community to "the inauguration of the Shomaya Tefiillah Beis Hakeneset" and introducing "our Rabbi – Rabbi Rosskam". (Pl. Appx., p. 9). Additionally, in Grand's own Declaration, he explains that "I know that the intended recipient of my email understood what I meant because they are my friends and they knew that **I was converting my residential home into a formal synagogue that would be ready to be inaugurated a few days later**." (Pl. Appx., p. 3, ¶ 12) (emphasis added). In his "clarity letter" to neighbors, Grand claims that "we are not proposing a 'shul'" and explains that a synagogue or shul is the same word in Yiddish. (Pl. Appx., p. 198). However, in his initial invitation to the orthodox community, Grand explicitly describes Shomayah Tefiliah Beis Hakeneset as a shul. (Pl. Appx., p. 9). While Grand was careful to subsequently refer to the proposed operation in his home as a prayer group, the initial intention to establish a shul and/or synagogue is evident from the record. Other such revisions can be seen in the record, such as Grand's SUP application stating he wanted to have "periodic religious gatherings" and representing at the March 4 Planning Commission meeting that he "wants to use the space in his house to host men's only prayer services for a prayer group **once a week** and on certain high holidays." (Pl. Appx., pp. 94; 140) (emphasis added). However, as can plainly be seen from Grand's initial invitation, he proposed praying at least three times during the Shabbos – Friday evening, Saturday morning, and again on Saturday night. (Pl. Appx., p. 7).

3

Third, Grand continually alleges that the Defendants prohibited him from praying within his home, depriving him of his rights. However, the cease-and-desist letter at the base of his complaint clearly states that "[t]he City hereby notifies you that the use of the Premises as a place of religious assembly and/or in operation of a shul or synagogue is prohibited." (Pl. Appx., p. 89). Indeed, by Grand's own admission, the cease-and-desist applied to the conduct which Grand had explained in his invitation – "Defendants pursued a policy of ordering Grand to cease-and-desist **any activity consistent with what was described in Grand's invitation unless he obtained a SUP to operate a synagogue**." (Pl. Brief in Op., p. 4) (emphasis added). Even Mayor Brennan's statement after Grand withdrew his application displays this exact intent: "let there be no question, there is no permission granted here to operate … a house of assembly or conduct activities consistent with one at 2343 Miramar Boulevard. (Pl. Brief in Op., p. 6). On the contrary, Grand cannot cite to any evidence that Defendants ever told him that he was not free to pray within his home. Indeed, Mayor Brennan testified that if Grand kept the Shabbos prayer at his house to ten or so people, that it would not be the business of the City and would not require an SUP. (Mayor Brennan Depo. 89:16-24). Grand's repeated claims that Defendants prohibited his ability to pray in his home are unfounded and develop a false narrative not supported by evidence.

Finally, Grand places much stock in the fact that his prayer group was only going to take place in one room of his home. However, by his own admission, a shul can range from the cabin of an airplane to an entire stadium. (Pl. Brief in Op., p. 8). Clearly, the size of the space has no bearing on the intended scope of the shul – as Mayor Brennan testified that once while visiting another residential shul that he observed at least 120 or 130 in the basement of a home. (Mayor Brennan Depo., 55:4-20). Grand's reliance on the size or character of the single room in his home is not persuasive and provides no support for his position, as the prayer in a church or synagogue

4

typically takes place in a single room where a congregation is addressed by a religious leader. Similarly, Grand's claim that a dispute over the word shul prevents summary judgment in favor of Defendants is misplaced, as the context, established herein, demonstrates Grand's intentions, despite his subsequent efforts to rebrand the shul as a small prayer gathering of a few friends in a single room of his home.

## II.      SUMMARY JUDGMENT STANDARD

Summary Judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is therefore, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Material facts are those which are necessary to apply the substantive law. *Id.* at 248. In reviewing a motion for summary judgment, the court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Self-serving affidavits, alone, are not enough to create an issue of fact sufficient to survive summary judgment." *Wolfe v. Vill. of Brice*, 37 F.Supp.2d 1021, 1026 (S.D. Ohio 1999). Here, there are no issues of material fact. Defendants are entitled to summary judgment because Grand's claims fail on the merits, Defendants are entitled to qualified immunity on the federal claims and political immunity on the state law claims, and Defendants undisputedly did not violate Grand's constitutional rights.

## III.     LAW & ARGUMENT

### A.      Summary Judgment is Appropriate on Grand's First Amendment Claims.

In determining whether a municipal body has deprived the free exercise of religion, "the general proposition that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531-532 (1993). A review of the law is therefore necessary to determine whether it is neutral and generally applicable. "A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context." *Id*. at 533. Beyond facial neutrality, "[t]he [Free Exercise] Clause 'forbids subtle departures from neutrality,' and 'covert suppression of particular religious beliefs.'" *Id.* at 534, quoting *Gillette v. United States*, 401 U.S. 437, 452 (1971); *Bowen v. Roy*, 476 U.S. 693, 703 (1986).

Meanwhile, general applicability, "protect[s] religious observers against unequal treatment." *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 148 (1987). "[I]nequality results when a legislature decides that the governmental interest it seeks to advance are worthy of being pursued only against conduct with a religious motivation." *Church of Lukumi Babalu Aye, Inc.*, 508 U.S. at 542-43. "The principle that government, in pursuit of legitimate interests, cannot in a selective manner impose burdens only on conduct motivated by religious belief is essential to the protection of the rights guaranteed by the Free Exercise Clause." *Id.* at 543.

There is no genuine issue of material fact that the relevant portions of the University Heights Codified Ordinances (UHCO) are neutral and generally applicable. As established in Defendants' Motion for Summary Judgment and Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment, UHCO 1274.01 permits for expanded uses of properties within U-1 residential zones when certain conditions are met and an SUP has been approved by the Planning

6

Commission. The Ordinance, and the need for an SUP extends to houses of worship, facilities for the physical, behavioral, or mental health care of citizens, senior housing and care facilities, residential behavioral health care facilities, conversions to condominiums, and office, research, and high-tech production facilities. UHCO 1274.01(b)(1-7). Here, Grand was seeking to expand the use of his home into a shul to host religious services, therefore the UHCO requires he apply for an SUP.

In an attempt to demonstrate that UCHO 1274.01 is not neutral nor generally applicable, Grand argues that it regulates religious use and provides a system of individualized exemptions. In support of these arguments Grand relies heavily on two cases: *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) and *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021). These cases do not support the broad claims that Grand makes and can be differentiated from the instant case.

In *Church of Lukumi Babalu Aye, Inc.*, 508 U.S. at 524-27, the Church at issue involved congregants who practiced the Santeria religion, who believed in the ritual sacrifice of animals as part of their religious practice. After leasing land and obtaining all necessary licensing, inspection, and zoning approvals, the City of Hialeah, Florida, began passing ordinances directly aimed at this practice in response to community concern, including a statement that anyone practicing animal sacrifice would be prosecuted, along with forbidding the practice of killing or sacrificing animals "in a public or private ritual or ceremony . . . ." *Id.* at 527-28. The Court, in finding that Hialeah's ordinances were not neutral or generally applicable found that "[t]he record in this case compels the conclusion that suppression of the central element of the Santeria worship service was the object of the ordinances." *Id*. at 534. Because the City's position was based on public health and the disposal of carcasses, while not extending to regulate hunters' disposals or restaurants improper

disposal, it could not be said to be generally applicable. *Id*. at 545-46. "It is a necessary conclusion that almost the only conduct subject to Ordinances 87-40, 87-52, and 87-71 is the religious exercise of Santeria church members." *Id*. at 535.

Similarly, in *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021), the action of the government was directly targeted at the religious practices of the plaintiff. In *Fulton*, Catholic Social Services (CSS) was a Catholic foster agency with a longstanding contractual relationship with the City of Philadelphia to provide foster services. *Id*. at 1875. After discovering that CSS would not foster children to same-sex couples, Philadelphia informed CSS it would no longer refer children to the agency (claiming that they violated contractual non-discrimination provisions) and would not enter into a foster care contract with CSS unless it agreed to certify same-sex couples. *Id*. at 1875-76. The Court based its ruling on an exception included within the non-discrimination provision which Philadelphia relied upon in alleging that CSS breached its contract.

> <u>Rejection of Referral</u>. Provider [CSS] shall not reject a child or family including, but not limited to,…prospective foster or adoptive parents, for Services based upon…their…sexual orientation.. **unless an exception is granted by the Commissioner or the Commissioner's designee, in his/her sole discretion**.

*Id*. at 1878 (emphasis added). In finding that this law was not generally applicable, the Court held:

> The creation of a formal mechanism for granting exceptions renders a policy not generally applicable, regardless whether any exceptions have been given, because it "invite[s]" the government to decide which reasons for not complying with the policy are worthy of solicitude, here, at the Commissioner's "sole discretion."

*Id*. at 1879 (internal citations omitted), quoting *Employment Division, Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 884 (1990). Finally, because Philadelphia could not demonstrate a compelling reason why it has a particular interest in denying an exception to CSS while making them available to others, it could not survive strict scrutiny. *Id*. at 1882.

8

Here, unlike the particularized and targeted actions of the cities in *Lukumi* and *Fulton*, Defendants are merely attempting to enforce the zoning regulations which apply to every individual and entity in the City. Although Grand quoted the relevant holding in *Fulton*, he mischaracterizes a special use permit as a mechanism for individualized exceptions. (Pl. Brief in Op., p. 14). Grand's argument is more akin to the hypothetical situation if UHCO allowed for some individual or body to operate a house of worship, facility for the physical, behavioral, or mental health care of citizens, senior housing and care facilities, residential behavioral health care facilities, etc. covered by 1274.01 in a U-1 residential district without obtaining an SUP. However, this is not the case, 1274.01 is the sole mechanism for operating a property contrary to a residential use, and "[a] Special Use Permit for any use described in [2741.01] **shall be applied for and shall be issued** on the recommendation of the Planning Committee" upon a showing that the provisions of the UHCO will be met and will not endanger the public health, safety, and welfare. UCHO 1274.01(d). As the Ordinances are neutral and generally applicable, there is no genuine issue that they did not violate Grand's rights, and therefore summary judgment is appropriate.

Assuming, arguendo, that the UHCO is not neutral and generally applicable, Defendants can still satisfy a strict scrutiny review, and therefore summary judgment is appropriate. A discussion regarding strict scrutiny is included under the section addressing RLUIPA, *infra* and is incorporated here by reference

## B. Summary Judgment is Appropriate on Grand's Fourth Amendment Unreasonable Search Claim.

Whether or not summary judgment is appropriate on an alleged Fourth Amendment violation requires a review of whether government conduct constitutes a search and whether the search was reasonable. *Taylor v. City of Saginaw*, 933 F.3d 328, 332 (6th Cir. 2019). A search

occurs when a government official invades an area in which a person has a constitutionally protected reasonable expectation of privacy. *Katz v. United States*, 389 U.S. 347, 360 (1967).

In a brief defense of his claim, Grand argues that Mayor Brennan urged members of the public to monitor Grand's home and the Mayor failed to prohibit a neighbor from pointing cameras toward his home. (Pl. Brief in Op., pp. 19-20). First, none of the actions taken by Defendant amount to a search under Fourth Amendment case law. A review of the coordinated monitoring Grand claims to be a victim of is enforcement action in light of neighbor complaints and previous discrepancies with representations to the City. (P. Appx. 228-236). In his own self-serving Second Declaration, Grand provides no proof that any actions were driven by City officials or were anything other than the City addressing numerous complaints regarding Grand. (Second Declaration of Daniel Grand, 2/23/21, attached to Pl. Brief in Op. as Exhibit 41).

Finally, despite Grand's conclusory statement that housing inspectors conducted searches into his home against his privacy interests, his wife testified that all inspections of Grand's home were done with her consent, as she would willingly admit the inspectors. (Deposition of Rakhel Davidoff, D. Motion for Summary Judgment, Exhibit J, at 11:5-13:25). While it is well settled that a search of property without warrant is illegal, "[i]t is equally well settled that one of the specifically established exceptions to the requirement of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973), citing *Davis v. United States*, 328 U.S. 581, 593-94 (1946). Here, there is no dispute that Grand's wife permitted any actual inspection of the home voluntarily, therefore Defendants did not violate Grand's Fourth Amendment rights and summary judgment is appropriate.

## C. Summary Judgment is Appropriate on Grand's Fourteenth Amendment Claims.

### 1. Defendants did not violate Grand's right to due process.

Violation of due process rights must be demonstrated by proof of the deprivation of a constitutionally protected liberty or property interest by some form of state action. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431-32 (6th Cir. 2002). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). "The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971). The Sixth Circuit has held that in the context of administrative zoning decisions, "the process must provide sufficient notice to affected landowners and an opportunity to be heard in opposition." *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001), quoting *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 896 (6th Cir. 1991).

Grand alleges that he is entitled to summary judgment on his due process claim since he had a liberty interest in "hosting a prayer group and assembling with friends in his home." (Pl. Brief in Op., p. 20). While Grand certainly has a liberty interest in worshiping his god, his supporting authority does not extend the interest so far as to be outside any regulation. Instead, restrictions of these rights are subject to due process, which was provided here in the form of a hearing before the Planning Commission. While Grand cites to the record to argue that this was the first time that a quasi-judicial format was used for the Planning Commission in the City's history, that is not supported. (Pl. Brief in Op., p. 21; Pl. Appx., p. 219). Instead, it is plain from the record that Grand was provided procedural protections and he failed to follow-through with the hearing. Grand was permitted the ability to present his application in the manner he saw fit and the Planning Commission then permitted comment by those interested in doing so. Although Grand argues that Mayor Brennan prohibited him from presenting any evidence ahead of the

11

March 23, 2021 hearing, Grand did not attend that hearing or attempt to introduce any additional evidence. (Pl. Brief in Op., p. 21).

Finally, Grand's due process claim fails because it is based on a First Amendment claim that is unsupported. Where a plaintiff fails to prove the Constitutional claim underlying his procedural due process allegation, the due process claim similarly fails. *See Prater v. City of Burnside*, 289 F.3d 417, 431-32 (6th Cir. 2002). "[P]laintiff's procedural due process claim, based upon on the deprivation of his liberty interests under the Free Exercise Clause, was 'subsumed' within his free exercise claim because 'if the [free exercise] claim failed, so must the due process claim ….'" *Id.*, quoting *Doswell v. Smith*, No. 94-6780, 1998 WL 110161, at \*6 (4th Cir. March 13, 1998). Based on the above, Grand was provided due process, which he failed to participate in, subsequently withdrawing his application, therefore summary judgment in appropriate and Grand's claim should be dismissed.

## 2.    Defendants did not deny Grand Equal Protection of the Law.

To establish a violation of equal protection rights, the alleged victim must demonstrate that application of a law has a discriminatory effect, i.e. the similarly situation entities were treated differently, and that the unequal application of the law was motivated by a discriminatory purpose. *Farm Labor Organizing Commt. v. Ohio State Hwy. Patrol*, 308 F.3d 523, 533-34 (6th Cir. 2002). "If persons are dissimilarly situated, they are not in the same class, and the Equal Protection Clause does not shelter them." *Harsco Corp. v. Tracy*, 86 Ohio St.3d 189, 193, 1999-Ohio-155. Under equal protection, "similarly situated" means the plaintiff and a comparator are "nearly identical" in "all relevant aspects." *Paterek v. Village of Armada*, 801 F.3d 630, 650 (6th Cir. 2015); *Wellons v. Northwest Airlines, Inc.*, 25 Fed.Appx. 214, 220 (6th Cir. 2001).

In response to this clear standard, Grand only argues that his religion was a motivating factor in insisting that his purposed shul comply with the SUP process. (Pl. Brief in Op., p. 21). While Defendants agree this is undisputed, they also realize that it is immaterial. Grand announced the opening of his shul in violation of the UHCO and was immediately advised to cease operation by the City. Grand has failed, pursuant to the applicable authority, to demonstrate that any other person or entity was treated differently than Grand under the same circumstances. Instead, Grand engages in a selective reading of the record to show one Planning Commission member was confused by the format of the meeting, but this does not establish that Grand was treated differently than someone who was "nearly identical" in "all relevant aspects." (*Id.*). Because Grand patently fails to demonstrate that he was treated unequally, this claim fails, and summary judgment is appropriate in Defendants' favor.

### D.    Summary Judgment is Appropriate on Grand's RLUIPA Claims.

The Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §2000cc *et seq*. prohibits governments from imposing or implementing land use regulations in a manner that imposes a substantial burden on the religious exercise of a person, unless they can demonstrate such use is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. *Living Water Church of God v. Charter Tp. of Meridian*, 258 Fed.Appx. 729, 733 (6th Cir. 2007), citing 42 U.S. § 2000cc (a)(1). "Although RLUIPA assuredly protects religious institutions in their religious exercise, the statute's language indicates that it is not intended to operate as 'an outright exemption from land-use regulations.'" *Id.* at 736-37, quoting *Civil Liberties for Urban Believers*, 342 F.3d 752, 762 (7th Cir. 2003) ("[N]o such free pass for religious land uses masquerades among the legitimate protections RLUIPA affords to religious exercise."). In determining whether a plaintiff was substantially burdened, the courts focus on (1)

13

whether the religious institution has a feasible alternative location from which to carry on its mission; (2) whether the religious institution will suffer substantial delay, uncertainty, and expense; and (3) whether the plaintiff imposed a burden on itself. *Livingston Christian Schools v. Genoa Charter Twp.*, 858 F.3d 996, 1004-05 (6th Cir. 2017) (collecting cases).

Grand argues that all factors establishing a substantial burden are in his favor. (Pl. Brief in Op., p. 23-24). Grand premises his entire argument on the allegation that Defendants have prohibited him from praying in his home, but this is clearly not the case. Instead, Defendants advised Grand that any attempt to establish a shul and operate a house of worship out of his home in a residential neighborhood required an SUP. Grand is free to pray in his home with other individuals of his own faith, which is exactly what Mayor Brennan advised. (Mayor Brennan Depo. at 89:10-24) ("I would agree that a small prayer gathering, even a small regular prayer gathering is not the same as a shul or a synagogue, and not the city's business at that point."). Grand argues some plenary right to pray in his home however he sees fit with absolutely no restriction whatsoever. However, this proposition is contradicted by the relevant authority. *See Sause v. Bauer*, 138 S. Ct. 2561, 2563 (2018); *Prater v. City of Burnside*, 289 F.3d 417, 428 (6th Cir. 2002).

Regarding the factors establishing a substantial burden, none are in Grand's favor. He testified that he is free to worship in many other locations and did so prior to moving to his Miramar address. Plaintiff's Depo., at 55:22-56:8. In dispute of this Grand claims that "Grand has nowhere other than his own home to pray in his home." (Pl. Brief in Op., p. 23). This is clearly not the analysis that any court has undertaken. The second two factors – whether the institution will suffer expense or delay, and whether the burden is self-imposed, similarly are not in Grand's favor. Insofar as Grand just wants to pray in his home with other Orthodox Jews, he is free to do so without interruption by the City. However, in establishing a shul, if Grand and followed the proper

14

procedures and applied for the SUP prior to attempting to establish his house of worship, then there would not have been a delay. He would have gotten approval and would have begun his services. Instead, Grand only applied for an SUP once he was caught preparing to violate the UHCO and all subsequent delay is attributable to himself. Grand's arguments that he had to pay money for the application and wait for the next hearing of the Planning Commission applies to all applicants, regardless of additional criteria, and does not establish a substantial burden on his religious exercise.

Even if, arguendo, Grand can establish his religious exercise was substantially burdened, Defendants have a compelling governmental interest in enforcing building and zoning codes. Scrutinizing the use of residential property for a purpose other than residential use serves the public by ensuring that the alternative use is in compliance with the relevant portions of the building and zoning codes. Indeed, zoning is generally thought to be an area of "traditional state authority." *Rapanos v. United States*, 547 U.S. 715, 738 (2006). Grand argues that enforcement of the regulations for these exact purposes is not the least restrictive means in which to achieve the City's interest, as Defendants could have "taken less draconian action against Grand such as giving him guidance as to how he could conduct a prayer group without a SUP." (Pl. Brief in Op., p. 17). This completely negates the fact that the record is replete with community members and Mayor Brennan who do not trust Grand's intentions, due to prior misrepresentations and falsehoods:

> A: My recollection is that Mr. Grand tried to minimize what he was doing, and tried to characterize it as something different than what I saw in the invitation.
>
> Q: Well, you said he was trying to minimize what he was doing. It sounds like your mind was already made up; is that fair?
>
> A: No, I wouldn't quite put it like that, but I would say that I didn't find Mr. Grand credible.
>
> ***

A: Well he was describing that he was just trying to get some people together at his house to pray, but he was withholding that he had invited the community to come over to the opening of the synagogue, to come meet the rabbi and be a part of an ongoing concern with regular weekly services.

***

A: Mr. Grand's credibility is informed to me by how he had conducted himself in his meeting with me back at city hall, when, you know, followed by that inappropriate gift he sent over.

It was informed by the bazaar request to be my intern.

It is the - - the way he behaved at the planning commission meeting with Aleksander Shul, and the overall way that he conducted himself with regard to the expansion of his home, especially in proceedings before the board of zoning appeals, where he took a very antagonistic approach to our BZA and its board, and was dishonest in representing how - - what he was doing in the expansion.

He was - - he had misrepresented with regard to the use in pouring of concrete at the home, and the - - and the overall dealings that we had had with the city had - - he had built a reputation for himself as not being honest or credible with regard to matters that he was bringing before the city.

And this, when I called Mr. Grand, I was less interested in having a conversation about what he may or may not be claiming to be doing, because he generally claimed various things before the board of zoning appeals which proved not to be true, than I was trying to convey to him simply, at this point, I don't care how you're characterizing this, if you are attempting to open a synagogue here in your home, that requires a special-use permit. Don't try to call it something else.

(Mayor Brennan Depo. 81:25-82:25; 92:16-93:24). Based on this context, requiring that Grand proceed with the process of obtaining an SUP, like anyone else who would attempt to operate a house or worship, or any other special use permitted by UHCO 1274.01, is narrowly tailored to effectuate the compelling interests outlined above.

For the same reasons established above outlining why Grand's Equal Protection argument fails, the same reasons defeat his claim under RLUIPA's equal protection provisions. *See Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Commission*, 768 F.3d 183, 198 (2d

16

Cir. 2014). As established above, Grand failed to demonstrate that any similarly situated comparator was treated in any different fashion, and therefore he cannot establish unequal protection. Therefore, Grand's equal protection claim under RLUIPA should be dismissed on summary judgment.

Next, Grand argues that religious institutions in residential districts are treated on less than equal terms as nonreligious assembly or institutions, while completely ignoring the rest of UHCO 1274.01. Grand merely cites to the portion of that ordinance that benefits him, but a complete reading of the ordinance is illuminating. Indeed, UHCO 1274.01 is entitled "Houses of Assembly and Social Service Uses" and explains the need for an SUP for houses of worship, facilities for the physical, behavioral, or mental health care of citizens, senior housing and care facilities, residential behavioral health care facilities, conversions to condominiums, office, research, and high-tech production facilities, and the catch-all "[a]ny other use not otherwise specified or authorized in this Planning and Zoning Code, to the extent that the requirements hereinafter set forth can be reasonably effectuated." UHCO 1274.01(b)(1-7). Therefore, far from treating religious institutions any differently than secular uses, they are all included in the same provision.

Finally, Grand argues that his mere desire to "host a private prayer group in his home" would have required him to obtain multiple variances at Defendants' discretion, in violation of RLUIPA's unreasonable limitations provision. (Pl. Brief in Op., p. 26). Grand cites no evidence to support this allegation and misrepresents his stated intention with his property. In establishing a shul on Miramar, Grand would be elevating his residence to a place of assembly under the Ohio Building Code. *See* R.C. Chapter 3781. Such a designation necessarily requires greater safeguards against dangerous incidents and requires inspection to ensure compliance. R.C. 3781.06. Grand's allegations that a proposed small prayer group in his home would have triggered Defendants'

17

imposition of "multiple variances" is unfounded and self-serving. As there is no genuine issues of material fact regarding Grand's RLUIPA claims, summary judgement should be granted in Defendants' favor.

### E. The FACE Act does not apply and Summary Judgment is Appropriate for Grand's Claim

The Freedom of Access to Clinic Entrances (FACE) Act creates a buffer zone around certain institutions and provides unhindered access to places of worship. *See* 18 U.S.C. § 248. The Face Act criminalizes and exposes to civil liability, anyone who "by force or threat of force or by physical obstruction, intentionally injuries, intimidates or interferes with or attempt to injure, intimidate or interfere with any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom **at a place of religious worship**." 18 U.S.C. § 248(a)(2) (emphasis added). A claim under the FACE Act can be brought "only by a person lawfully exercising or seeking to exercise the First Amendment right of religious freedom **at a place of religious worship or by the entity that owns or operates such place of religious worship**." *Id.* at (c)(1)(A).

Here, without addressing whether he is operating a place of religious worship, Grand argues that the FACE Act applies to prayer in residential homes, without providing any supporting authority. Next, Grand engages in a convoluted argument that since the City was on notice for potential UHCO violations at his address, anyone visiting the address was intimidated by the threat of arrest. (Pl. Brief in Op., p. 26). However, as established above, Grand was not lawfully exercising or seeking to exercise his First Amendment freedom at a place of worship, as his private residence was not properly zoned for a place of worship. Furthermore, there is no reasonable basis to believe that anyone who had a parking infraction at his residence would be arrested. (*Id.*). Based

on the foregoing evidence, there is no material issue of genuine fact regarding the FACE Act – it does not apply to Grand's situation and therefore summary judgment is appropriate.

### F. Summary Judgment is Appropriate for Grand's Conspiracy Claim.

42 U.S.C. § 1983 provides a remedy for civil conspiracy when (1) a "single plan" existed, (2) defendants "shared in the general conspiratorial objective" to deprive plaintiff of a constitutional right, and (3) "an overt act was committed in furtherance of the conspiracy that cause injury" to plaintiff. *Siefert v. Hamilton County*, 951 F.3d 753, 767-68 (6th Cir. 2020), quoting *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). "A complaint must identify the alleged conspiracy with more than vague and conclusory allegations." *Rudd v. City of Norton Shores, Michigan*, 977 F.3d 503, 517 (6th Cir., 2020) (citation omitted); see also *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003). Finally, members of the same organization cannot commit conspiracy under the intra-corporate doctrine. *Jackson v. City of Cleveland*, 925 F.3d 793, 818 (6th Cir. 2019). "Because the intracorporate conspiracy doctrine follows from the legal definition of 'person,' which includes local governments, the doctrine has been developed to deal with the question whether there are two separate persons to form a conspiracy." *Id.* at 819, citing *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991).

Grand does not respond to Defendants' immunity to this claim, instead arguing that emails between the Planning Commission members demonstrate an actionable conspiracy to deprive him of his rights. (Pl. Brief in Op. 27). However, a review of Grand's other arguments, and a review of the record, demonstrates that Defendants had their own reasons to potentially deny his SUP application, if he had not withdrawn it. Since Grand never went forward with the SUP application, we do not know if it would have been denied, and whether his rights would have been violated.

Regardless, Defendants are immune to this claim under the intra-conspiracy doctrine, and therefore summary judgment and dismissal is appropriate.

### G.     Summary Judgment is Appropriate for Grand's Public Records Act Claim.

As addressed in Defendants' Motion for Summary Judgment, this Court is not the proper venue in which to bring an action for an alleged violation of the Ohio Public Records Act. (ECF 79, pp. 22-23). In order to maintain that action, a mandamus action must be filed within a court of common pleas, court of appeals, or the Supreme Court of Ohio. R.C. 149.43(C)(1)(a-b). Therefore, this Court is without jurisdiction to provide Grand any relief and summary judgment should be granted in favor of Defendants with regard to this claim.

In response to this argument, Grand cites to several cases and argues that federal courts exercise supplemental jurisdiction over these claims consistently. (Pl. Brief in Op., p. 28). However, the cases cited by Grand undermine his point. In *Santoli v. Village of Walton Hills*, No. 1:12CV1022, 2014 WL 1093093, *2 (N.D. Ohio Mar. 18, 2014) the court, after having reviewed the applicable standard, found that the plaintiff in that matter did not request the records via a writ of mandamus as required. *Id.* Therefore – defendants were granted summary judgment. *Id.*

> Plaintiff does not dispute that his remedy against Defendants to compel them to produce the desired public records must come via a Petition for Writ of Mandamus. Therefore, Defendants are entitled to summary judgment on Plaintiff's Public Records Production claim under Ohio law because Plaintiff has not sought the records through such a petition.

*Id.* Here, Grand has not filed a writ of mandamus seeking the requested documents. Instead, he included a complaint for damages under the Ohio Public Records Act for the alleged failure to produce documents. This is contrary to the explicit language of R.C. 149.43 and does not entitle Grand to relief, therefore summary judgment should be granted for the Defendants.

### H.        Defendants are Entitled to Immunity on Grand's Claims.

Once qualified immunity is raised, the plaintiff bears the burden of overcoming it and demonstrating that defendants are not entitled. *Barrett v. Steubenville City Schools*, 388 F.3d 967, 970 (6th Cir. 2004). In order to overcome qualified immunity, a plaintiff must demonstrate that: (1) the official's conduct violated a constitutional right; and (2) the right was clearly established at the time of the violation – such that a reasonable official in the defendant's position should have known their conduct would violate the constitution. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pray v. Sandusky*, 49 F.3d 1154, 1157 (6th Cir. 1995). Proving that a constitutional right was clearly established is a heavy burden involving proof that its existence is "beyond debate" and clear to every reasonable official that their actions would violate the right. *See White v. Pauley*, 137 S. Ct. 548, 551 (2017); *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

In arguing that Defendants are not subject to qualified immunity, Grand rattles off how his rights were violated before claiming that "the rights in question are fundamental constitutional or statutory rights clearly established at the time that every reasonable official is presumed to know . . . ." (Pl. Brief in Op., pp. 28-29). Unfortunately, the standard is much more exact, requiring that existence of the right be "beyond debate" and clear to every reasonable official that their actions would violate the claimed right. *See See White v. Pauley*, 137 S. Ct. 548, 551 (2017); *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Grand has failed to identify any authority that would put Defendants on notice that their actions in enforcing the valid ordinances of University Heights would deprive Grand of his constitutional and statutory rights. Therefore, qualified immunity applies and Defendants are immune for Grand's lawsuit.

IV.     **CONCLUSION**

Based upon the foregoing, Defendants City of University Heights, Michael Brennan, Luke McConville, and Paul Siemborski respectfully request this Court grant summary judgment in favor of Defendants and dismiss all of Plaintiff's claims against Defendants with prejudice.

Respectfully submitted,


MAZANEC, RASKIN & RYDER CO., L.P.A.

*s/Zachary W. Anderson*
JAMES A. CLIMER  (0001532)
STEVEN K. KELLEY  (0023747)
ZACHARY W. ANDERSON  (0095921)
100 Franklin's Row
34305 Solon Road
Cleveland, OH  44139
(440) 248-7906
(440) 248-8861 – Fax
Email:    jclimer@mrrlaw.com
skelley@mrrlaw.com
zanderson@mrrlaw.com

*Counsel for Defendants City of University Heights, Michael Dylan Brennan, Luke McConville and Paul Siemborski*

22

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2024, a copy of the foregoing **Defendants' Reply in Support of Motion for Summary Judgment** was filed electronically.  Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*s/Zachary W. Anderson*
ZACHARY W. ANDERSON  (0095921)

*Counsel for Defendants City of University Heights, Michael Dylan Brennan, Luke McConville and Paul Siemborski*