# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

GRAND,                                      )
                                            )
v.                                          )          Case No. 1:22-cv-1594
                                            )
UNIVERSITY HEIGHTS, et al.                  )          JUDGE BRIDGET M. BRENNAN
_____         )

## PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Eden P. Quainton, Esq.
QUAINTON LAW PLLC
2 Park Ave., 20th Fl.
New York, NY 10016
(212) 419-0575
eden.quainton@quaintonlaw.net

Jonathan S. Gross, Esq.
BAR ID:  MD 1912170138
2833 Smith Ave, Suite 331
Baltimore, MD 21209
(443) 813-0141
jonathansgross@gmail.com

*Counsel for Plaintiff Daniel Grand*

**TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT ................................................................................. 1

II.  LEGAL ARGUMENT ......................................................................................... 4

A. THE CITY'S HEAVY STRESS ON GRAND'S CREDIBILITY UNDERSCORES THAT SUMMARY JUDGMENT IN DEFENDANTS' FAVOR CANNOT BE GRANTED. ....... 4

B. THE CITY IGNORES THE UNCONSITUTIONALITY OF THE MAYOR'S MARCH 23, 2021 EDICT BANNING ANY "CONGREGATING" OR ANY ACTIVIES "CONSISTENT" WITH THOSE CONDUCTED IN A HOUSE OF WORSHIP. ............... 5

C. UHCO § 1274.01 IS NOT A NEUTRAL LAW OF GENERAL APPLICABILITY AND DEFENDANTS' ACTIONS FAIL STRICT SCRUTINY. ................................................... 7

D. DEFENDANTS VIOLATED GRAND'S DUE PROCESS RIGHTS ............................... 10

E. DEFENDANTS VIOLATED RLUIPA............................................................................ 10

      1. Substantial Burden .......................................................................................... 11

      2. Nondiscrimination............................................................................................ 12

      3. Equal Terms ...................................................................................................... 14

      4. Exclusion and Limits ...................................................................................... 14

F. THE COURT HAS JURISDICTION OVER THE OPEN RECORDS ACT CLAIM........ 15

G. DEFENDANTS ARE NOT ENTTITLED TO QUALIFIED IMMUNITY ....................... 15

III. CONCLUSION............................................................................................................. 15

i

## TABLE OF AUTHORITIES

**Cases**

*Arlington County Repub. Committee v. Arlington County, Va.*,
    983 F.2d 587, 594 (4th Cir. 1993) ................................................................ 13

*Bigelow v. Virginia*,
    421 U.S. 809 (1975) ........................................................................................ 8

*Bikur Cholim, Inc. v. Village of Suffern*,
    664 F. Supp. 2d 267, 292 (S.D.N.Y. 2009) ................................................... 11

*Bowden v. Town of Cary*,
    754 F. Supp. 2d 794, 807 (E.D.N.C. 2010) ................................................... 12

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
    508 U.S. 520, 531–32 (1993) ......................................................................... 9

*City of Cleburne v. Cleburne Living Ctr.*,
    473 U.S. 432 (1985) ....................................................................................... 14

*Deja Vu of Nashville v. Metropolitan Government of Nashville*,
    274 F.3d 377, 391 (6th Cir.2001) ................................................................. 10

*Dimmitt v. City of Clearwater*,
    985 F.2d 1565, 1570 (11th Cir. 1993) ........................................................... 13

*Fehribach v. City of Troy*,
    412 F. Supp. 2d 639, 646 (E.D. Mich. 2006) ................................................ 13

*Fulton v. City of Philadelphia, Pennsylvania*,
    593 U.S. 522, 533 (2021) ............................................................................ 8, 9

*Haight v. Thompson*,
    763 F.3d 554, 562 (6th Cir. 2014) ................................................................. 12

*Hassan v. City of Atlanta*,
    Civil Action 1:21-cv-4629, at *20 (N.D. Ga. June 1, 2022) ........................... 15

*In re Julien Co.*,
    171 B.R. 307, 309 (W.D. Tenn. 1992) ............................................................ 5

*Islamic Soc'y of Basking Ridge v. Twp. of Bernards*,
    226 F. Supp. 3d 320, 344 (D.N.J. 2016) ....................................................... 13

*Jesus Christ Is the Answer Ministries, Inc. v. Balt. Cnty.*,
    915 F.3d 256, 259 (4th Cir. 2019) ............................................................ 13, 14

ii

*Keweenaw Bay Indian Cmty. v. Rising*,
    477 F.3d 881, 886 (6th Cir.2007) ...................................................................... 5

*Livingston Christian Sch. v. Genoa Charter Twp.*,
    858 F.3d 996, 1004 (6th Cir. 2017) ................................................................ 12

*Masterpiece Cakeshop, Ltd. v. Colorado C.R. Comm'n*,
    584 U.S. 617, 638, (2018) ................................................................................ 8

*Muslim Cmty. Ass'n of Ann Arbor v. Pittsfield Charter Twp.*,
    947 F. Supp. 2d 752, 765 (E.D. Mich. 2013) ................................................ 11

*Ohio Citizen Action v. City of Mentor-On-The-Lake*,
    272 F. Supp. 2d 671, 681 (N.D. Ohio 2003)................................................... 10

*Rhoden v. Morgan*,
    846 F. Supp. 598, 608 (M.D. Tenn. 1994)........................................................ 8

*Rocky Mountain Church v. Com'rs of Boulder County*,
    612 F. Supp. 2d 1157, 1159 (D. Colo. 2009).................................................. 11

*Santoli v. Vill. of Walton Hills*,
    No. 1:12-cv-1022, at *4-5 (N.D. Ohio Mar. 18, 2014)................................... 15

*Shuttlesworth v. Birmingham*,
    394 U.S. 147, 150–151 (1969)........................................................................ 10

*Triplett Grille, Inc. v. City of Akron*,
    40 F.3d 129, 135 (6th Cir. 1994) ...................................................................... 7

*United States v. Currency $11,331*,
    482 F. Supp. 2d 873, 884 (E.D. Mich. 2007)................................................... 5

*Whiting v. Trew*,
    No. 3:20-cv-54, 2021 WL 6618480 (E.D. Tenn. Dec. 22, 2021), *aff'd*, No. 22-5448, 2023
    WL 5352133 (6th Cir. Aug. 21, 2023)............................................................ 6

*Whitton v. City of Gladstone, Mo.*,
    54 F.3d 1400, 1408 (8th Cir.1995) ................................................................ 12

**Statutes and Ordinances**

42 U.S.C. 2000cc…………………………………………………………………*passim*

UHCO Chapter 1274……………………………………………………………………*passim*

UHCO Chapter 1250………………………………………………………………...9, 14, 15

UHCO Chapter 1280………………………………………………………………………15

## I.    PRELIMINARY STATEMENT

The Opposition (Dkt. 88 or the "Opp.") of the City of University Heights and Michael Brennan (the "Mayor") to the Motion for Partial Summary Judgment of Plaintiff Daniel Grand provides a masterclass in misdirection and omission. In stunning fashion, the Opp. ignores entirely the announcement of the Mayor on March 23, 2021, that conducting any activities "consistent" with those conducted in a house of worship, *i.e.*, praying, singing, or even quietly meditating, without a special use permit were barred by the City and that City residents should not hesitate to report individuals engaging in such illegal activity. No reasonable public official should have thought that such a patently overbroad edict could comport with the Free Exercise Clause of the First Amendment. Perhaps for this reason, Defendants duck the issue entirely.

Then, attempting to clinch their case with a reference to the Oxford Dictionary, the City ignores Plaintiff's undisputed statement to the Mayor, **before** Defendants issued a cease-and-desist order, that all Plaintiff intended was to have a prayer group for a minyan of Jews in a single room of his home. Defendants disparage Plaintiff's direct statement as a "secret" intention they could not possibly have known about when he could not have expressed his desires more clearly to the Mayor. Having once used the word "shul," Plaintiff – a Jew with far greater appreciation for the nuances of Yiddish than the Catholic Mayor and law director[1] – forfeited his right to explain his aims in converting a music room in his home to a prayer room that could accommodate a minyan of ten Jews.

While the word "shul" **can** be a synonym for a formal synagogue, in colloquial parlance among Orthodox Jews, a "shul" can also designate any place where Jews can meet to pray. For example, spaces near the kosher hot dog stand at Nationals Park in Washington D.C. and at Yankee

---

[1] *See* Ex. 4, Excerpts from Deposition of Michael Brennan ("Brennan Dep."), at 86:2-4, 96:12-15; Ex. 5, Deposition of Luke McConville ("McConville Dep."), at 21

Stadium in New York are referred to openly as a "shul" on the public "GoDaven.com" website. Ex. 1, Declaration of Daniel Grand, March 8, 2024 ("Grand Decl."). Likewise, a prayer room at New York's Rockefeller Center is publicly advertised as a "shul." *Id*. There are "cool shuls," that meet in private homes and "ski shuls" that meet by ski lodges in Aspen. There are shuls at hospitals and law firms, even shuls in courthouses and municipal buildings. *Id.* This colloquial use of the word "shul" is attested to by Plaintiff's wife and by the Rabbi who planned to lead the minyan in prayer. *See* Ex. 2, Declaration of Rakhel Grand; Ex. 3, Declaration of Aharon Rosskamm. The Mayor himself admitted that he knew the word "shul" meant many things to many people and could be anything from a "small gathering" to a "great shtetl." Brennan Dep., at 55:2-10. The Mayor even admitted in his deposition, long after the events at issue in the present litigation, that a "shul" for a small number of people would likely not require a SUP. Brennan Dep., at 89:16-20. And yet, when Grand expressly told the Mayor that he only intended to have a small group of Jews meet in his former music room, the Mayor dismissed Grand's explanation as an attempt to "minimize" what the Mayor had decided were Grand's true intentions, without telling Grand that a shul limited to a "small gathering" would be permissible.  Brennan Dep., 81:2-25, 82:1-3.

Rather than attempting to work out a solution or even an interim plan with Grand, the Mayor dismissed Grand's explanation of his intentions as not "credible." Brenan Dep., 82: 13-14 ("I didn't find Mr. Grand credible"). The Mayor did not attempt to contact the Rabbi who was to lead the prayer group, Brennan Dep., 96:24-25, 97:1-15; he did not seek to contact any of the recipients of Grand's invitation to determine what the recipients had understood to be the purpose of the invitation, Brennan Dep., 83:11-22; he did not indicate to Grand what he claimed during his deposition, namely, that a "Shabbos shul" limited to a small group of people would not require a SUP. Brennan Dep., 89:10-15. Rather, in stark contrast to his approach with a prior situation

involving allegations that a Rabbi was using his home as a synagogue, where the Mayor investigated for over a year before taking any formal action, Brennan Dep., 44:10-18, the Mayor **immediately** authorized the issuance of a cease-and-desist letter as a matter of urgency, specifically to prevent Grand from hosting any sort of prayer group in his home on the upcoming Sabbath without a special use permit. Brennan Dep., 83:21-25, 84:1-4. The Mayor admitted unambiguously that he intended to stop the opening of a "shul" in Mr. Grand's home, however small, and that if it turned out that what Mr. Grand intended was ***"not a synagogue, then that was something that could be determined later."*** Brennan Dep., 85:16-17. This is the very definition of an impermissible prior restraint, none of which figures in Defendants' version of the facts.

The best Defendants can do is insinuate that the Mayor was justified in disbelieving Grand and ignoring the constitutional prohibition on prior restraints of religiously protected activity because Grand was not "credible" and had allegedly tried to "bribe" the Mayor by giving him a $100 bottle of wine, when the limit on gifts was $75. Dkt. 88. at 20; Brennan Dep. 28:9-71; 175:14-24. Obviously, credibility determinations cannot be made on summary judgment, so Defendants are only arguing against themselves with this line of reasoning.

Defendants' Alice-in-Wonderland characterization of the facts reaches its apex when, despite the Mayor's admission that a "shul" means different things in different contexts – from a permissible small gathering to a "shtetl"-scale congregation – and despite Grand's express statement to the Mayor that he intended only to inaugurate a small prayer group in a single room in his home, Defendants claim that City officials were being asked to determine "the secret meaning that Grand alone assigned to his words when those words have common meanings that everyone else understands." Dkt. 88 at 9. Defendants first present Grand as freely choosing to apply for a SUP, *id.* at 13, when the facts are plain that he did so only under duress in response to

a cease-and-desist letter, and then portray Grand as proposing to "turn his [entire] single-family residence into a shul so that he can hold worship services there," *id.* at 16, when there is not a single piece of evidence indicating that Grand intended to use anything other than one room in his large home as a prayer room, whether or not called a "shul."[2]

Defendants' through-the-looking glass version of facts continues throughout the Opp. and fatally mars their legal argument. In attempting to show that Grand was not harmed by the un-noticed "quasi-judicial" nature of the March 4, 2021 hearing, Defendants contend that Grand could simply have appealed an adverse decision, Dkt. 88, at 20, when Defendants elsewhere admit that the purpose of instituting the use of a "quasi-judicial" proceeding was precisely to limit Grand's rights on appeal. McConville Dep., at 43:10-15; Dkt. 82-1, Ex. 26, at 215.  Obviously, if Grand had known that the purpose of the never-before used "quasi-judicial" proceeding was to create a trial-like "record," Grand would have approached the proceeding very differently. *See* Dkt. 82-1, Ex. 27, at 219-221. Defendants even flatly misrepresent the facts, claiming that "if a matter is tabled for deficiencies that need to be remedied, applicants can follow up with Ms. Thomas for assistance regarding how to correct their issues." Dkt. 88, at 21. This assertion flies in the face of the Mayor's unambiguous statement that any evidence presented by Grand would **not** be considered at the March 23 hearing. Dkt. 82-1, Ex. 27, at 219-221. By taking such a counterfactual approach to the evidence, Defendants undermine their credibility and render their legal arguments, based as they are on tendentious misrepresentations of the facts, particularly unpersuasive.

## II.    LEGAL ARGUMENT

## A. DEFENDANTS' STRESS ON GRAND'S CREDIBILITY UNDERSCORES THAT SUMMARY JUDGMENT IN DEFENDANTS' FAVOR CANNOT BE GRANTED.

---

[2] Defendants uncritically present Adrienne Yelsky's "suspicion" of Grand because he invited her for a Shabbos meal as legitimate evidence that Grand had some grand "project" that he was concealing from his neighbors. Dkt. 88. at 9.

4

It is axiomatic that courts may not resolve credibility issues on summary judgment. *United States v. Currency $11,331*, 482 F. Supp. 2d 873, 884 (E.D. Mich. 2007) (citing *Keweenaw Bay Indian Cmty. v. Rising,* 477 F.3d 881, 886 (6th Cir.2007). Indeed, "the district court errs by granting summary judgment for the defendant where issues of credibility are determinative of the case." *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). *See also In re Julien Co.*, 171 B.R. 307, 309 (W.D. Tenn. 1992) (reversing and remanding where bankruptcy court considered credibility of testimony). The thrust of Defendants' argument is that Grand's statement that he intended to host a small prayer gathering in his home on Shabbos and High Holidays was not "credible." *See supra* at 2. Defendants offer various theories as to why Grand was not "credible," ranging from his gift of a $100 bottle of wine to the Mayor, *supra* at 3, to the graveling of his driveway. Brennan Dep., 164:22, 166:4-15. But none of these examples is relevant to the narrow issue before the Court at summary judgment: to the extent Grand's credibility is at issue, and the Mayor and other City officials did not believe him when he stated emphatically that he intended to host a minyan of Jews on the Sabbath and High Holidays, the Court cannot determine, as a matter of law, that Grand intended to open a formal synagogue when he states he did not have this intention. *See* Ex. 1; Ex. 2; *see also Whiting v. Trew*, No. 3:20-cv-54, 2021 WL 6618480, at *12 and n. 9 (E.D. Tenn. Dec. 22, 2021), *aff'd,* No. 22-5448, 2023 WL 5352133 (6th Cir. Aug. 21, 2023). By effectively foregrounding the question of credibility in opposing Grand's motion for summary judgment, Defendants shoot themselves in the foot in their own motion, which obviously cannot be granted in their favor to the extent an issue of credibility must be decided.

## B. DEFENDANTS IGNORE THE UNCONSITUTIONALITY OF THE MAYOR'S MARCH 23 EDICT BANNING ANY "CONGREGATING" OR ANY ACTIVIES "CONSISTENT" WITH THOSE CONDUCTED IN A HOUSE OF WORSHIP.

Stunningly, Defendants offer no argument whatsoever to justify the Mayor's March 23, 2021 edict banning **any** activities merely **consistent** with those conducted in a house of worship.

Defendants elect to duck the issue entirely, leaving unopposed one of Plaintiff's core First Amendment claims. Plaintiff argues that when the Mayor publicly announced that the City would not tolerate any conduct consistent with that carried out in a house of worship, he was announcing a municipal policy in stark violation of the First Amendment. The pertinent parts of the Mayor's statement make clear both that he was announcing official policy and that this policy forbade conducting any activities in a private residence that were "consistent" with those of a house of worship.

> Let there be no confusion, congregating at 2343 Miramar Boulevard or any other address located in a residence zoned U-1 without a special-use permit is a violation of city law. I'm hopeful that the wording of the withdrawal is not intended to suggest that congregating weekly at a residence to conduct activities consistent with those in a house of assembly does not require a special-use permit. . . To the community members who are here, let there be no question, there is no permission granted here to operate – there is no permission granted here to operate a house of assembly or conduct activities consistent with one at 2343 Miramar Boulevard.

Brennan Dep., 247:1-9, 14-19. This statement of policy is both facially overbroad and unconstitutional as applied to Grand. The policy prohibits "congregating," and "conducting activities consistent with those in a house of assembly." The ban on "congregating" needs little analysis. "Congregating" has a religious connation but can also be used in secular sense that has nothing to do with UHCO Chapter 1274 ("UHCO 1274"). For example, one might "congregate" regularly at a home for purposes of organizing political activity, such as opposing or supporting candidates. Under the plain language of the statement of policy, this kind of "congregating" would be unlawful. Even the purely religious component of the edict sweeps far too broadly. Christian services feature meditation or collective singing. Muslims pray five times a day. Jews assemble to pray and read the Torah in a minyan. All of these activities are central activities at a house of worship but can also be practiced at home in small groups. While the Mayor would later say at deposition that a small prayer gathering would not violate UHCO 1274, he did not say this at any

time before or during the March 4 or March 23 hearings. Grand could not have known of the Mayor's secret intentions when the Mayor ordered him to cease any collective prayer activity before he had obtained a SUP. The Mayor's edict constitutes a quintessentially overbroad policy. *Triplett Grille, Inc. v. City of Akron*, 40 F.3d 129, 135 (6th Cir. 1994).

!      The rule is also unconstitutional as applied to Grand. First, the Mayor expressly targeted Grand himself with the ban, by specifically referencing Grand's residence at 2343 Miramar Boulevard. Second, Grand testified at his deposition that he saw the video of the Mayor announcing the policy. Dkt. 80, at 276:16-21. He has further stated that he believed the ban prohibited him from gathering a minyan in his home for prayer or, indeed, praying with other Jews in his home under any circumstances, as such prayer would be consistent with activity conducted at a synagogue. *See* Grand Decl. ¶ 18. Moreover, the Mayor not only made clear that Grand was expressly targeted by his ban, but also encouraged neighbors to report activity "consistent" with conduct of a house of worship—such as a group of men in the distinctive black hats of Orthodox Jews arriving at 2343 Miramar on a Saturday morning. Even if Grand had not heard of the policy, by intimidating others, it would have limited his associational and religious rights. *See* Rosskamm Decl. ¶¶ 12-17; *Rhoden v. Morgan*, 846 F. Supp. 598, 608 (M.D. Tenn. 1994) (citing *Bigelow v. Virginia,* 421 U.S. 809 (1975)). But Grand did hear of the policy, and it did target him, thus chilling his exercise of his religious liberty and causing direct, redressable injury.

## C.  UHCO § 1274.01 IS NOT A NEUTRAL LAW OF GENERAL APPLICABILITY AND DEFENDANTS' ACTIONS FAIL STRICT SCRUTINY.

Leaving aside Defendants' mischaracterization of the facts, the core of the Opp.'s First Amendment analysis is that UHCO § 1274.01 is a "neutral law" of "general applicability." Dkt. 88, at 10-14. Defendants misapprehend and misapply the concepts of neutrality and general applicability in the First Amendment context. First, these two concepts are not identical. A law is

not "neutral" if it is "intolerant of religious beliefs or restricts practices because of their religious nature." *Fulton v. City of Philadelphia, Pennsylvania*, 593 U.S. 522, 533 (2021) (citing *Masterpiece Cakeshop, Ltd. v. Colorado C.R. Comm'n*, 584 U.S. 617, 638, (2018)). UHCO § 1274.01(b)(1) expressly restricts religious bodies, such as "Houses of worship or religious education, including churches, temples, synagogues, religious organizations, parish houses and parochial schools" by requiring these entities to obtain a special use permit. UHCO § 1274.01(b)(1) thus on its face plainly restricts practices because of their religious nature. Defendants attempt to argue that the restriction on "houses of worship or religious education" is neutral because the law also requires special uses permits for certain other entities, such as senior care facilities and orphanages. Dkt. 88, at 12 and n. 2. This is wrong. If a test beyond the plain language of the provision were required, the proper test would be not whether some other unrelated activity may also be **<u>restricted</u>**, but whether a similar non-religious activity is **<u>permitted</u>**, showing that the restriction is based on the activity's religious nature. Here, UHCO § 1250.02(b) shows that activities restricted in §1274.01(b)(1) are restricted precisely **<u>because</u>** of their religious character. UHCO § 1250.02(b) provides that buildings belonging to a board of education do not require a SUP, while §1274.01(b)(1) clearly states that buildings for "religious education" or "parochial schools" do. The only difference between the two types of buildings is that one is religious, and one is not, demonstrating that UHCO § 1274.01(b)(1) is not neutral.

Separately, although relatedly, a law is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions. *Fulton*, 593 U.S. at 533. UHCO § 1274.01(a) expressly invites individualized exemptions by referencing "special circumstances and conditions" and "special uses authorized under special permits recommended by the Planning Commission as approved by

Council." None of this is to say that the City cannot regulate houses of worship or impose permitting requirements upon such bodies. But because UHCO § 1274.01(b)(1) is neither neutral nor of general applicability, as these concepts have been articulated by the Supreme Court, the application of UHCO § 1274.01(b)(1) is subject to **strict scrutiny** and therefore the City must articulate a compelling state interest and must narrowly tailor its action to carry out that interest. *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531–32 (1993).

Thus, when the Mayor and the Law Director applied UHCO § 1274.01(b)(1) by first instructing Grand to "cease and desist" from holding a prayer group before the group had even met, it was required to articulate a compelling state interest and use the least restrictive means in furtherance of that interest. Even if the City has a compelling state interest in regulating houses of worship, issuing a flat "cease and desist" letter before trying other alternatives was **not** the least restrictive means of achieving that objective. The Mayor could easily have cautioned Grand that although he was free to have a minyan of Jews praying in his home and even to call such a minyan a "shul," he would need a permit before formally opening a synagogue. The Mayor could also have warned Grand not to advertise his prayer group widely or could have simply said that any gathering in excess of ten people (or some other number) would require a permit. The Mayor did none of this. He simply discounted Grand's expressed intention and prohibited any use of the Grand residence for religious prayer, leaving the determination of whether Grand was actually opening a synagogue to a later date—the very essence of a prior restraint. *See Ohio Citizen Action v. City of Mentor-On-The-Lake*, 272 F. Supp. 2d 671, 681 (N.D. Ohio 2003) (citing *Deja Vu of Nashville v. Metropolitan Government of Nashville,* 274 F.3d 377, 391 (6th Cir.2001)). Moreover, "when a regulation inflicts a prior restraint on speech by requiring a speaker to obtain a license, register, or perform other duties as a condition precedent to their being allowed to exercise their

First Amendment rights, in addition to meeting the appropriate level of scrutiny, it must contain "narrow, objective, and definite standards to guide the licensing authority." *Id.* (citing *Shuttlesworth v. Birmingham,* 394 U.S. 147, 150–151 (1969)). Here, the standards being applied were vague, subjective and indefinite, with even the Mayor later admitting that a "Shabbos shul" would likely be permitted without a special use permit but a larger shul would require such a permit. Brennan Dep. 95:7-19. At the March 4 hearing, the subjective standards being used to judge Grand's SUP application were on full display, with overtly antisemitic objections being tolerated by the PC, and community opposition to Grand's proposal appearing to drive consideration, thus leaving the door open for community prejudice, bias, and even racism. The standards, or lack thereof, applied at the March 4 hearing make clear strict scrutiny should apply to Defendants' conduct towards Grand—a standard Defendants cannot meet on the record before the Court.

### D.  DEFENDANTS VIOLATED GRAND'S DUE PROCESS RIGHTS

The process applied to Grand was fundamentally unfair, including but not limited to (1) issuance of a cease-and-desist order without a hearing; (2) notice to Grand's neighbors deceptively mischaracterizing his application; (3) deliberations of the PC *ex parte*; (4) conduct of the hearing in an unprecedented quasi-judicial format without notice; and (5) preclusion of Grand from presenting new evidence at the March 23, 2021 hearing. *See* Dkt. 81, at 25-31. Defendants make only a half-hearted attempt to justify the violations of due process, and Grand respectfully directs the Court to the relevant portions of his motion, which are effectively unopposed.

### E.  DEFENDANTS VIOLATED RLUIPA

RLUIPA has four provisions, and each provision constitutes a separate cause of action. *See Rocky Mountain Church v. Com'rs of Boulder County*, 612 F. Supp. 2d 1157, 1159 (D. Colo. 2009); *Bikur Cholim, Inc. v. Village of Suffern*, 664 F. Supp. 2d 267, 292 (S.D.N.Y. 2009). Grand

alleges separate violations of all four provisions, but Defendants wrongly conflates all four into one. Dkt. 88, at 24-26. *See Muslim Cmty. Ass'n of Ann Arbor v. Pittsfield Charter Twp.*, 947 F. Supp. 2d 752, 765 (E.D. Mich. 2013) ("Defendants do not cite a case setting forth the elements of a claim under this subsection, referring instead to cases discussing the equal terms provision and conflating the two provisions."). Defendants' Opp. lacks citation to authority, and utterly fails to show why Grand should not be granted summary judgment on each of his RLUIPA claims.

### 1. Substantial Burden

Under RLUIPA, a burden is substantial if a plaintiff experiences significant pressure to "modify its behavior," including the imposition of substantial delay, uncertainty, and expense. *Livingston Christian Sch. v. Genoa Charter Twp.*, 858 F.3d 996, 1004 (6th Cir. 2017) (*LCS*). Grand was pressured to cancel plans to host a religious gathering in his home, was required to pay hundreds of dollars in application fees and appear at a public hearing, and he had to wait at least nine weeks before he could expect a decision.[3] As with Plaintiff's constitutional claims, Defendants' actions must survive strict scrutiny, 42 U.S.C. § 2000cc(a)(2), which they do not, for the reasons stated above. *See supra* at 9. Conceding, as they must, that RLUPA claims are subject to strict scrutiny, Defendants struggle to articulate a compelling state interest. The best they can do is to raise an abstract concern about "safety." Dkt. 88, at 24-25. However, this is not sufficient to survive strict scrutiny. *Haight v. Thompson*, 763 F.3d 554, 562 (6th Cir. 2014) (holding that "cloud-level" abstract "security" concerns do not establish a compelling interest); *Whitton v. City of Gladstone, Mo.*, 54 F.3d 1400, 1408 (8th Cir.1995) ("[A] municipality's asserted interests in

---

[3] Defendants never informed Grand that a "Shabbos Shul" might be permitted. The City demanded that Grand cancel his plans and seek a SUP in the face of his insistence that his intention was only to host a prayer group in his home on Shabbos. Any argument that Grand's predicament was "self-imposed," is akin to a City demanding that a Jewish family obtain a permit before lighting Shabbos candles in the privacy of their home because the choice to light the candles is "self-imposed."

traffic safety and aesthetics, while significant, have never been held to be compelling."); *Bowden v. Town of Cary*, 754 F. Supp. 2d 794, 807 (E.D.N.C. 2010) (citing *Arlington County Repub. Committee v. Arlington County, Va*., 983 F.2d 587, 594 (4th Cir. 1993); *Dimmitt v. City of Clearwater*, 985 F.2d 1565, 1570 (11th Cir. 1993)); *Fehribach v. City of Troy*, 412 F. Supp. 2d 639, 646 (E.D. Mich. 2006). Defendants assert in conclusory fashion that municipal buildings are more likely to be "safe" and code-compliant than private structures, without any supporting evidence or specificity, remaining at the impermissible "cloud-level height of abstraction." *Haight,* 763 F.3d at 562. Moreover, even if Defendants could articulate a compelling interest, they have clearly not used the least restrictive means in their limitations on Grand's proposed religious activities. *See supra* at 9. Because there is no genuine issue of material fact that Plaintiff's exercise of religion was substantially burdened and Defendants cannot satisfy strict scrutiny, summary judgment under 42 U.S.C. § 2000cc(a) must be entered for Plaintiff.

### 2. Nondiscrimination

There is a split among circuits as to whether Nondiscrimination claims require the Plaintiff to show that a similarly situated comparator was treated more favorably. *Compare Jesus Christ Is the Answer Ministries, Inc. v. Balt. Cnty.*, 915 F.3d 256, 259 (4th Cir. 2019) (*JCIA*) *with Islamic Soc'y of Basking Ridge v. Twp. of Bernards*, 226 F. Supp. 3d 320, 344 (D.N.J. 2016). Even among those circuits that generally require a comparator, no comparator is required "where a government expressly discriminates on the basis of religion" as is the case here. *Islamic Soc*, 226 F. Supp. 3d at 344. Express discrimination under RLUPA extends beyond a display of active bias and encompasses situations in which Government officials allow themselves to be influenced by community bigotry or prejudice. *See JCIA,* 915 F.3d at 263 ("a government decision influenced by community members' religious bias is unlawful, even if the government decisionmakers display no bias themselves"). It was clear that community opposition to Grand exercised substantial

influence on the PC, with the Mayor preparing a map of opposing residents and Siemborski declaring peremptorily his opposition based on nothing more community opposition. Dkt. 82-1, 171, 180, 203. There was a strong current of prejudice, and April Urban highlighted numerous examples of troubling antisemitic rhetoric in an email to other PC members. Dk. 82-1, 193-94.

Had the procedure that followed been unimpeachable, the Defendants could perhaps rebut an inference of discrimination. But the opposite occurred. After the March 4 hearing, in a sharp departure from uniform practice, and the express language of the hearing's tabling resolution, the Mayor prohibited Grand from presenting additional information to the council at its follow-up hearing on March 23, demonstrating that the community animus had penetrated official decision makers, and resulting in an inference of discrimination. As the Fourth Circuit has held: "impermissible influence may be inferred where expressions of community bias are followed by irregularities in government decision-making." *JCIA,* 915 F.3d, at 263. The community's hostility to Grand, infused at least in part with antisemitism, the unprecedented use of a "quasi-judicial" proceeding, the willingness of PC members to bow to community pressure, and the serious procedural irregularities following a hearing at which one member brought troubling antisemitic rhetoric to the attention of her colleagues, all suffice to raise a *prima facie* claim of discrimination. Once a plaintiff has established a *prima facie* claim of religious discrimination, the defendant bears the burden of persuasion on all elements of the claim. *Id.* (citing 42 U.S.C. 2000cc-2(b)).

Defendants spectacularly fail to meet their burden. Defendants only response to Grand's Nondiscrimination claim is "Grand fails to establish that he was treated less than equally or discriminated against due to his Jewish faith, as provided above." Dkt. 88, at 25. But this response only goes to whether Grand has met his *prima facie* burden and provides no basis for refuting the inference of discrimination. Thus, because the record suffices to set forth a *prime facie* claim of

discrimination and Defendants have made no effort to meet their burden in opposing this claim, summary judgment for Plaintiff must be entered as to 42 U.S.C. 2000cc-2(b) .

### 3.  Equal Terms

UHCO 1274.01(b)(1) specifically targets religious use for a SUP requirement, while UHCO 1250 allows similar nonreligious uses as of right. On its face this is a violation of RLUIPA's Equal Terms provision. Defendants argue that municipal buildings are not appropriate comparators because "buildings constructed for use by a municipality in a residential neighborhood are likely to comply with building codes and other safety measures," whereas religious buildings are somehow inherently less likely to comply with code requirements.  Dkt. 88, at 24-25. Defendants offer no evidence for this conclusory assertion, which itself smacks of prejudice. Moreover, Defendants do not explain why "buildings structures and grounds owned by a board of education, municipality, or by a library board" may operate anywhere in the residential zone regardless of lot size, setbacks, or landscaping, whereas a residential shul requires a three-acre lot, 150-foot setback, and landscape buffers. Further, Defendants gloss over entirely UHCO § 1250.02(c), which permits, as of right, any "home occupations" so long as they conform with UHCO § 1280.11. Accordingly, Grand could operate a recording studio business in his music room and he would not be subject to the standards and restrictions imposed by UHCO § 1274. But if he were to use the same room as a "shul" for private prayer gatherings he would be subject to the full force of UHCO § 1274 and all its requirements. Thus, on its face, UHCO § 1274 violates RLUIPA's Equal Terms provision by specifically targeting religious use for a higher standard than similarly situated secular uses.

### 4.  Exclusion and Limits

UHCO § 1274.02(f) makes it nearly, if not entirely impossible to operate a "shul" in a residential home. Dkt. 81, at 34. Although the Mayor acknowledged during his deposition, after

14

the harm to Grand had been done, that a "Shabbos Shul" might be permissible without a permit, Defendants' violent response to Grand's invitation mentioning the word "shul" clearly conveyed the message that any "shul" in a residential home required special authorization. The community's and the PC's response to Grand's application left little doubt that such authorization would never be forthcoming. This response operated as a *de facto* exclusion of religious assembly within the residentially zoned areas of University Heights.  Defendants simply ignore these issues, on which summary judgment must therefore be entered for Plaintiff.

### F.  THE COURT HAS JURISDICTION OVER THE OPEN RECORDS ACT CLAIM.

Federal courts routinely exercise supplemental jurisdiction over state open records claims when they relate to the underlying claims, as they do here.[4]

### G.  DEFENDANTS ARE NOT ENTTITLED TO QUALIFIED IMMUNITY

Brennan deprived Grand of several established rights which a reasonable official should have been aware. In fact, he knew the proper procedure to follow when religious liberty is at stake, as he demonstrated in his year-long evaluation and use of a non-adversarial hearing process for the Alexander Shul, an approach at the polar opposite of his rush to judgment with Grand, his use of a "quasi-judicial" hearing, and his refusal to allow Grand to address any of the concerns raised after the tabling of the March 4 hearing. Accordingly, qualified immunity is not applicable.

### III.    CONCLUSION

For the aforementioned reasons, and all those in Plaintiff's other briefs, Plaintiff's Motion for Partial Summary Judgment (Dkt. 81) should be granted in its entirety.

---

[4] Plaintiff requested mandamus in his prayer for relief. *See* Second Amended Complaint, Prayer for Relief J.

Dated March 11, 2024                              Respectfully submitted,

                                                  Eden P. Quainton, Esq.
                                                  QUAINTON LAW PLLC
                                                  2 Park Ave., 20th Fl.
                                                  New York, NY 10016
                                                  (212) 419-0575
                                                  eden.quainton@quaintonlaw.net

                                                  Jonathan S. Gross, Esq.
                                                  BAR ID:  MD 1912170138
                                                  2833 Smith Ave, Suite 331
                                                  Baltimore, MD 21209
                                                  (443) 813-0141
                                                  jonathansgross@gmail.com

                                                  *Counsel for Plaintiff Daniel Grand*

## CERTIFICATION OF PAGE LIMITATION

I hereby certify, pursuant to LCvR 7.1(f), that the foregoing memorandum adheres to the 15-page limitation set forth in LCvR 7.1(f) for "memoranda relating to all other motions."

/s/ Jonathan Gross

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2024, a copy of the foregoing Reply to Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment was filed electronically. Notice of this filing will be sent to allregistered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Jonathan Gross